UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

ALL FUNDS ON DEPOSIT WITH R.J.
O'BRIEN & ASSOCIATES, HELD IN THE
NAME OF BRIDGE INVESTMENT, S.L.,
BEARING ACCOUNT NUMBERS XXX-
X3931 AND XXX-X1784, MAINTAINED
AT HARRIS BANK, ACCOUNT NUMBER
XXX-171-6,

          Defendant.

No. 11 C 4175

Judge Matthew F. Kennelly

### UNITED STATES' MEMORANDUM IN OPPOSITION TO WRONGFUL DEATH/PERSONAL INJURY PLAINTIFFS' MOTION TO INTERVENE AND IN SUPPORT OF UNITED STATES' MOTION TO STRIKE ANSWER

This is a civil forfeiture action in which individuals, collectively representing themselves as "Wrongful Death and Personal Injury Plaintiffs in *In Re Terrorist Attacks* on September 11, 2001" (hereinafter, the "proposed intervenors") seek to intervene to protect an alleged, prospective interest in the defendant funds that are the subject matter of this suit, as well as a claimed, contingent interest to share in those same funds if awarded to other claimants. R. 33, 39.[1] The proposed intervenors, however, lack statutory, constitutional and prudential standing to advance these arguments. In a forfeiture case in which the government is the plaintiff and the property is the defendant, only a party with an interest in the *specific property* to be forfeited may intervene in the action to defend against the proposed forfeiture, and then, only if it files a

---

[1] Citations to the record in this matter are referenced by an "R." notation, followed by the relevant document number and, if appropriate, a page or paragraph number. Citations to the record in other cases are identified by case name, number and "R." notation followed by the particular docket entry referenced.

timely verified claim and answer that adhere to the requirements of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").  The proposed intervenors have no such interest and have never filed the required claim.  The government therefore respectfully submits that the Court should deny their motion to intervene and strike their proposed answer pursuant to Supplemental Rule G(8)(c).  Fed. R. Civ. P. Supp. G(8)(c)(i)(A) & (B).

### *Background* [2]

On June 19, 2011, the United States filed a verified complaint for forfeiture seeking the forfeiture of certain "defendant funds" then on deposit with R.J. O'Brien & Associates ("RJO") at Harris Bank pursuant to 18 U.S.C. § 981(a)(1)(G)(i) and (iv).[3]  R. 1.  As set forth in greater detail in the complaint, the "defendant funds" of approximately $6,200,000, while maintained by RJO, constituted assets of an al-Qaeda associate and were therefore subject to forfeiture.  *Id.*; *see* 18 U.S.C. § 981(a)(1)(G)(i) & (iv).  After filing its complaint, the government published notice of its forfeiture action pursuant to Supplemental Rule G(4).  *See* Fed. R. Civ. P. Supp. G(4)(a). The deadline for filing a timely claim in order to intervene and contest the government's forfeiture was August 23, 2011.  *See* Fed. R. Civ. P. Supp. G(5).  Prior to the expiration of that deadline, on August 19, 2011, claimants comprised of three different insurance company groups filed claims asserting an alleged interest in the defendant funds based on a default judgment that they, along with a number of other insurance industry plaintiffs, had obtained against al-Qaeda in

---

[2]  A more detailed background of the factual allegations supporting the government's forfeiture action is set forth in the government's Memorandum in Support of its Motion to Strike Verified Claims and Answers, *see* R. 43 (hereinafter, the government's "initial memorandum"), which is incorporated herein by reference.

[3]  In particular the "defendant funds" were identified as all funds on deposit with R.J. O'Brien & Associates, held in the name of Bridge Investment, S.L., bearing account numbers XXX-X3931 and XXX-X1784, maintained at Harris Bank, account number XXX-171-6.  R. 1, ¶ 2.

an action pending in the United States District Court for the Southern District of New York.[4]  *See* R. 10-12; *see also In Re: Terrorist Attacks Upon the United States*, 03-MD-1570, R. 1756 & 1797 (S.D.N.Y. Apr. 7, 2006 & May 12, 2006) ("*In Re: Terrorist Attacks*").  The government has subsequently moved the Court to strike those claims based on the claimants' lack of constitutional and prudential standing to contest the government's forfeiture.  *See* R. 42.

Despite knowledge of the government's forfeiture action, the proposed intervenors did not timely file a claim to the defendant funds.  Instead, on November 7, 2011 – seventy-six (76) days after the deadline for filing a claim and fifty-five (55) days past the deadline for filing an answer in this case – the proposed intervenors filed a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure (hereinafter, "Rule 24").  *See* R. 39.[5]  Although the proposed intervenors have also filed an answer to the government's complaint, *see* R. 35, they have not filed an actual claim to the defendant funds.  Nevertheless, the proposed intervenors argue that they should be allowed to participate in this action as *de facto* claimants.  R. 33 at 2-3.

---

[4]  The three groups of insurance company claimants are: (1) Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, and Great Northern Insurance Company (the "Vigilant Companies"); (2) American Alternative Insurance Company, the Princeton Excess & Surplus Lines Insurance Company, and Great Lakes UK Insurance Company ("AAIC," "PESLIC" and "GLUK"); and (3) OneBeacon Insurance Group ("One Beacon" and, collectively, the "claimants").  R. 10-12.

[5]  Although the proposed intervenors did not file their motion to intervene until November 10, 2011, *see* R. 39, they filed a memorandum in support of their then-anticipated motion on November 7, 2011.  R. 33.  For simplicity, the government has referred to the filing of the proposed intervenors' supportive memorandum as the effective date of their subsequently-filed motion.  In addition, for ease of reference, the government herein refers to the proposed intervenors' motion and supporting memorandum, collectively, as the proposed intervenors' "motion."

### *Argument*

The government respectfully submits that the Court should deny the proposed intervenors' motion and strike their answer because they lack statutory, constitutional and prudential standing. The proposed intervenors seek to gain entrée to this case purportedly to "protect" their own direct claim to the defendant funds and what they characterize as a related, contractually-obtained interest in the Vigilant Companies' claims to the same money. In particular, the proposed intervenors claim an interest in the defendant funds based on non-compensatory default judgments obtained in litigation against al-Qaeda. *See* R. 33 at 2-3. They further claim an interest in the defendant funds pursuant to a contractual arrangement with the Vigilant Companies with whom they have allegedly agreed to share any award of the defendant funds by and between their counsel. *See id.*

The proposed intervenors, however, failed to file a claim or a timely answer to the complaint as required by the Supplemental Rules, which establish the threshold criteria for intervention in civil forfeiture litigation. They therefore lack statutory standing to proceed in this case. The Court should further deny the proposed intervenors' motion because they do not have an ownership or other cognizable interest in the defendant funds and therefore lack constitutional standing. Finally, the proposed intervenors' interest in the Vigilant Companies' claims does not justify the exercise of the Court's jurisdiction. The proposed intervenors therefore also lack prudential standing. For these multiple, independent reasons, the Court should deny the proposed intervenors' motion and strike their answer.

I.  **THE PROPOSED INTERVENORS LACK STATUTORY STANDING TO CHALLENGE THIS FORFEITURE ACTION.**

A.  **The Proposed Intervenors Have Failed To Comply With The Pleading Requirements of Supplemental Rule G.**

The procedure for filing a claim to property that is the subject of a civil forfeiture case, and thereby intervening as a party in that action, is governed by Supplemental Rule G.  Fed. R. Civ. P. Supp. G(1) ("This rule governs a forfeiture action in rem arising from a federal statute."). Accordingly, a party that wants to appear in a forfeiture action to assert an interest in the defendant property and challenge the government's forfeiture complaint must adhere to Supplemental Rule G's filing requirements.  *See United States v. All Funds in Account Nos. 747.034/278 (Banco Espanol de Credito),* 295 F.3d 23, 25 (D.C. Cir. 2002); Fed. R. Civ. P. Supp. G(5).  A failure to assert a timely verified claim to the property and answer to the complaint as required by the Supplemental Rules deprives a party of statutory standing to intervene in the forfeiture case.  *United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket*, 326 F.3d 36, 41-42 (1st Cir. 2003); *United States v. $103,387.27*, 863 F.2d 555, 560-61 (7th Cir. 1988).  Strict compliance with both filing prerequisites is therefore typically required.  *See, e.g., United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 598 (7th Cir. 2000); *United States v. 8136 S. Dobson St.,* 125 F.3d 1076, 1082 (7th Cir. 1997) (a putative claimant who files an answer, but not a claim, lacks statutory standing and is not a party to the action).

The requirement that a proposed intervening party file a timely verified claim to the property sought for forfeiture "is no mere procedural technicality."  *United States v. $23,000*, 356 F.3d 157, 163 (1st Cir. 2004).  Civil forfeiture proceedings are actions *in rem* against property associated with criminal activity.  In order for a claimant to invoke the court's

jurisdiction to preclude the criminally-connected property's forfeiture, the claimant must make a threshold showing, under oath, that it possesses a legally cognizable interest in the specific property to be forfeited. Fed. R. Civ. P. Supp. G(5)(a)(i)(B); *United States v. $2,857.00*, 754 F.2d 208, 213 (7th Cir. 1985). In particular, a party must file a claim: (1) signed under penalty of perjury, (2) identifying the claimant, and (3) articulating its interest in the defendant property. *See* Fed. R. Civ. P. Supp. G(5)(a)(i)(B) & (C). A party that fails to submit a claim adhering to these pleading requirements lacks statutory standing to intervene in the action to challenge the forfeiture.

The proposed intervenors have not filed such a verified claim. Although they have filed a motion to intervene and an answer, those filings do not satisfy the Supplemental Rules' pleading requirements.[6] First, the proposed intervenors' answer and motion were filed on November 7, 2011, well past the August 23, 2011 deadline for the filing of claims. R. 35. Delinquency alone is a sufficient basis to deny a proposed claimant statutory standing to challenge a forfeiture action. *See United States v. Union Bank for Sav. & Inv. (Jordan)*, 487 F.3d 8, 24 (1st Cir. 2007); *United States v. $100,348*, 354 F.3d 1110, 1117-18 (9th Cir. 2004). Moreover, these filings do not identify the individual, proposed intervenors or the basis for their interest in the specific

---

[6] The filing of an answer without a preceding verified claim is often grounds for striking the answer. *See, e.g.*, *United States v. $23,000*, 356 F.3d 157, 163 (1st Cir. 2004); *United States v. $31,852.38*, 183 Fed. Appx. 237, 240-41 (3d Cir. 2006); *United States v. 35 Firearms*, 123 Fed. Appx. 204, 206 (6th Cir. 2005); *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir. 1986); *United States v. $5,565.00*, No. 09-CV-02212, 2010 WL 4222047 (D. Colo. Oct. 20, 2010), *adopting Report and Recommendation*, 2010 WL 4256211, at *2-3 (D. Colo. Sept. 20, 2010); *United States v. $96,822.00*, No. 06-2028, 2010 WL 728506, at *7 (D.P.R. Feb. 26, 2010); *United States v. $10,000*, No. 8:07CV437, 2008 WL 1944562, at *4 (D. Neb. Apr. 30, 2008); *United States v. $11,918.00*, No. 1:03-CV-05679, 2007 WL 3037307, at *7 (E.D. Cal. Oct. 17, 2007); *United States v. $13,970.00*, No. 5:06-CV-386, 2007 WL 1231659, at *3 (M.D. Ga. Apr. 26, 2007); *United States v. $19,020.00*, No. Civ. 05-1139ADMJB, 2005 WL 3464979, at *2 (D. Minn. Dec. 19, 2005); *United States v. 27 Assorted Firearms*, No. SA-05-CA-407-XR, 2005 WL 2645010, at *2-4 (W.D. Tex. Oct. 13, 2005).

defendant funds.[7] Although the proposed intervenors state that they have "direct, substantial, and protectable interests" in the defendant funds as a result of their litigation against al-Qaeda, *see* R. 35, Affirmative Defenses, ¶ 3; R. 33 at 8-9, this naked assertion is insufficient to satisfy the Supplemental Rules' pleading requirement. *See* Fed. R. Civ. P. Supp. G(5)(a)(i)(B); *$100,348*, 354 F.3d at 1118-19 (Forfeiture "demand[s] more than conclusory or hearsay allegations of some 'interest' in the forfeited property") (quoting *Baker v. United States*, 722 F.2d 517, 519 (9th Cir. 1983)); *United States v. $39,557.00*, 683 F. Supp. 2d 335, 339 (D.N.J. 2010) (claim deficient because it contained only a "bald assertion of ownership"). The proposed intervenors' similar assertion that they have a confidential agreement that provides them an interest in the Vigilant Companies' claims (as opposed to the defendant funds themselves) is also insufficient. The proposed intervenors' motion and answer also fail to satisfy Rule G because they are not verified. The requirement that proposed claimants sign a claim "under penalty of perjury," *see* Fed. R. Civ. P. Supp. G(5)(a)(i)(C), is, again, "not a mere technical requirement . . . easily excuse[d]." *Commodity Account No. 549 54930*, 219 F.3d at 597. The Supplemental Rules' verification requirement has been characterized as an important tool to ferret out illegitimate claims. *Id.*

---

[7] Supplemental Rule G(5)(a)(i)(C) specifically requires that a claim be signed by the *claimant* under penalty of perjury, as opposed to being signed by the claimant's attorney. *See* Fed. R. Civ. P. Supp. G(5)(a)(i)(C). This differs from Supplemental Rule C(6)(a), which governed forfeiture actions prior to the adoption of Supplemental Rule G. *See* Fed. R. Civ. P. Supp. C (2005). The prior rule afforded attorneys the authority to file a statement of interest on behalf of a claimant, but only if the attorney stated his authority to file such a statement. Fed. R. Civ. P. Supp. C(6)(a) (2005); *see $100,348*, 354 F.3d at 1118-19 (stating that an attorney's mere assertion that she was authorized to file a claim on behalf of a claimant was deficient); *United States v. Commodity Account No. 549 54930*, No. 96 C 8423, 1999 WL 91910, at *3 (N.D. Ill. Feb. 11, 1999), *aff'd*, 219 F.3d 595 (7th Cir. 2000) (attorney purporting to represent numerous investors failed to indicate authorization to file claim as required under then-applicable Supplemental Rule C(6)(a)). The proposed intervenors' answer and motion have not been signed by any putative claimants; instead the pleadings have been presented through the "representatives on the Wrongful Death and Personal Injury Plaintiffs' Executive Committee" in the *In Re: Terrorist Attacks* litigation. R. 33 at 1; R. 35 at 7.

A party's noncompliance with the Supplemental Rules' pleading requirements can be excused only in unusual circumstances. *See $103,387.27*, 863 F.2d at 561. In particular, a claimant's failure to file a timely, verified claim will only be overlooked if a claimant establishes its excusable neglect. *See id.*; *United States v. $10,000.00*, 863 F. Supp. 812, 814 (S.D. Ill. 1994); *Commodity Account No. 549 54930*, 1999 WL 91910, at *3 n.8 ("Failure to file a verified claim does not . . . automatically preclude the claimant from establishing standing, but failure to show any reason for excusing this default properly results in a finding of lack of standing"). Here, the proposed intervenors have not provided any reason for their failure to adhere to the filing prerequisites of Rule G(5). In fact, they have not acknowledged a need to comply with the Supplemental Rules at all. Rather, the proposed intervenors seek to completely sidestep the Supplemental Rules' filing requirements and instead intervene pursuant to Federal Rule of Civil Procedure 24. *See generally* R. 33.

### B. The Proposed Intervenors Cannot Use Rule 24 To Circumvent The Supplemental Rules.

The proposed intervenors attempt to bypass the pleading requirements of the Supplemental Rules by arguing that they are intervening not only to assert a direct interest in the defendant funds, but to protect an alleged contractually-obtained contingent stake in the Vigilant Companies' claims. Rule 24, however, does not provide the proposed intervenors the alternate entrance to the courthouse that they seek.

Rule 24(a)(2) provides that a party shall be permitted to intervene in a pending action if it "claims an interest relating to the property . . . that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Alternatively, Rule 24(b) provides that a court may permit a party to intervene if it

"has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Once admitted to on-going litigation, a Rule 24 intervenor "participates on [an] equal footing with the original parties to [the] suit." *Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). Thus, if granted intervention, the proposed intervenors would not appear as mere observers, but as actual litigants, which, in a forfeiture action, is as claimants who assume the position of defendants and demand redelivery of the arrested property. *See One-Sixth Share*, 326 F.3d at 40.

Despite the proposed intervenors' suggestion to the contrary, it is Supplemental Rule G and not Rule 24 that governs admission to a civil forfeiture action. Forfeiture actions brought pursuant to 18 U.S.C. § 981(a) are subject to the procedural provisions of 18 U.S.C. § 983. Section 983(a)(4)(A) provides that:

> In any case in which the Government files . . . a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims.

18 U.S.C. § 983(a)(4)(A).[8] Supplemental Rule G, itself, provides that it "governs a forfeiture action in rem arising from a federal statute." Fed. R. Civ. P. Supp. G(1). Accordingly, to the extent that Supplemental Rule G provides the necessary procedural framework, the Rules of Civil Procedure do not apply. *See United States v. Contents of Accounts,* 629 F.3d 601, 608 (6th Cir. 2011) ("[O]nly where Rule G does not address an issue [may] . . . the Civil Rules set the

---

[8]    Similarly, Section 987(a) provides that "[a]n owner of property that is confiscated under any provision of law relating to the confiscation of assets of suspected international terrorists, may contest that confiscation by filing a claim in the manner set forth in the Federal Rules of Civil Procedure (Supplemental Rules for Certain Admiralty and Maritime Claims)." 18 U.S.C. § 987(a).

procedure governing forfeiture actions.").[9]   Because the Supplemental Rules establish the

particular manner in which a party may appear in a forfeiture action, it is Supplemental Rule G

and not Rule 24 that governs the procedure for intervening to contest a forfeiture complaint.  *See*

*generally* Fed. R. Civ. P. Supp. G.

Prior to the enactment of Supplemental Rule G in 2006, Supplemental Rule C(6)

governed interventions in civil forfeiture actions.  Fed. R. Civ. P. Supp. C(6) (2005).  Although

Rule C(6), like Rule G today, contained specific requirements for the filing of a claim and

answer for a party to intervene in a forfeiture action, it did not contain a supremacy clause like

the provision set forth in Rule G(1).[10]   *Id.*   Nevertheless, even then, courts insisted on strict

compliance with Rule C to permit intervention in a civil forfeiture action and rejected attempts at

intervention pursuant to Rule 24.  *See, e.g., United States v. $104,674.00,* 17 F.3d 267, 269 (8th

Cir. 1994) ("[i]t is not an abuse of discretion for the district court to require strict compliance

with Supplemental Rule C(6)") (citation omitted).  For example, in *United States v. 2171-73*

*Bennett Road,* a judgment creditor of the prior owner of the defendant property moved to

intervene in a forfeiture proceeding pursuant to Rule 24(a).  *2171-73 Bennett Road*, No. 91-4896,

1991 WL 236893, at *1-2 (E.D. Pa. Oct. 31, 1991).  Relying on 18 U.S.C. § 981(b)(2), the court

held that the Supplemental Rules were the exclusive means by which a party could intervene in a

forfeiture action and denied the proposed intervenor's motion. *2171-73 Bennett Road*, 1991 WL

236893, at *2 (Petitioner's Rule 24 motion "would circumvent the procedures established by

Congress for asserting a claim in a forfeiture proceeding.").  Similarly, in *United States v. One*

---

[9]   Rule G, itself, provides that to the extent that it does not address a particular procedural issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure should govern the action.  Fed. R. Civ. P. Supp. G(1).

[10]   As previously noted, subsection 1 of Rule G provides that it is Rule G that "governs a forfeiture action in rem arising from a federal statute."  Fed. R. Civ. P. Supp. G(1).

*Silicon Valley Bank Account*, victims who had not filed timely claims and answers as required by

Supplemental Rule C(6) attempted to intervene in a civil forfeiture action pursuant to Rule 24.

The court rejected the proposed claimants' motion, holding that they lacked standing to intervene

because they had failed to comply with Rule C(6). *One Silicon Valley Bank Account*, No. 1:05-

cv-295, 2007 WL 1594484, at *2 (W.D. Mich. June 1, 2007). Since the adoption of

Supplemental Rule G, additional courts have similarly rejected Rule 24 motions to intervene on

the ground that the Supplemental Rules provide the exclusive means for intervention in a

forfeiture case. *See, e.g., United States v. 8 Gilcrease Lane,* 641 F. Supp. 2d 1, 4-6 (D.D.C.

2009) (failure to comply with Rule G(5) deprived a proposed Rule 24 intervenor of statutory

standing); *United States v. 3039.375 Pounds of Copper Coins*, No. 1:08CV230, 2009 WL

1096480, at *1 (W.D.N.C. Apr. 22, 2009) (same); *cf. DSI Associates v. United States*, 496 F.3d

175, 183-84 (2d Cir. 2007) (denying Rule 24 intervention in criminal forfeiture proceeding);

*United States v. Rashid,* No. 95-7396, 2009 WL 723382, at *3 (E.D. Pa. 2009) (same). *But see,*

*e.g., United States v. One Parcel of Real Property,* 942 F.2d 74, 78-79 (1st Cir. 1991) (allowing

*pro se* claimant who had not received notice of forfeiture proceeding and its deadlines to

intervene pursuant to Rule 24).

Thus, to the extent that the proposed intervenors predicate their motion to intervene on a

claimed interest in the defendant funds, the Court must deny their motion because the proposed

intervenors have failed to comply with any of the substantive and procedural requirements of

Supplemental Rule G(5) and therefore lack statutory standing.

## II.     THE PROPOSED INTERVENORS' ALLEGED INTEREST IN THE VIGILANT COMPANIES' CLAIMS IS INSUFFICIENT TO CONFER THE COURT'S JURISDICTION.

The proposed intervenors state that they seek authorization to proceed in this case, in

part, to protect an alleged interest in the Vigilant Companies' claims. In particular, the proposed

intervenors claim an interest "in the judgment asserted by the [Vigilant Companies]" based on what they describe as "a confidential agreement among the parties litigating in the *In re: Terrorist Attacks* litigation" to share any recovery by the claimants among their collective counsel. R. 33 at 3. The proposed intervenors, however, lack both constitutional and prudential standing to advance this claimed interest.

A.     **The Proposed Intervenors Lack Constitutional Standing.**

1.     **Neither the Proposed Intervenors Nor The Claimants Have A Legally Cognizable Interest In The Defendant Funds.**

To intervene in existing litigation whether pursuant to Rule 24 or the Supplemental Rules, a party must establish that it has a stake in the case's outcome that satisfies constitutional standing requirements. *See Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009) ("'[At] some fundamental level the proposed intervenor must have a stake in the litigation' in order to satisfy Article III") (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)); *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006) ("[T]he applicant's interest must be one on which an independent federal suit could be based, consistent with Article III's requirement that only a case or controversy can be litigated in a federal court"); *$103,387.27*, 863 F.2d at 560 n.10 ("To contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing, otherwise there is no 'case or controversy.'").[11] In their motion, the proposed intervenors request authorization to appear in

---

[11] Some Courts have questioned whether a party seeking permissive intervention pursuant to Rule 24(b) must demonstrate its own, independent standing before being allowed to partake in the litigation. Although the Seventh Circuit has never resolved this issue, in *Bond v. Utreras*, the court suggested, in dicta, that a permissive intervenor need not establish standing if the party with which its interests were aligned had standing. *Utreras*, 585 F.3d. at 1070. *But see Flying J, Inc. v. J.B. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (stating without discussion that a Rule 24 intervenor must establish Article III standing). However, as set forth in the government's initial memorandum and as explained herein, the claimants to which the proposed intervenors wish to attach their interests also lack standing and, accordingly, cannot support the proposed intervention.

this case to "support" the claims made by the Vigilant Company claimants and to further their own interests if the Vigilant Companies' representation of their collective interests become "inadequate." R. 33 at 3, 11.

The proposed intervenors do not have constitutional standing to intervene in this forfeiture action because neither they, nor the Vigilant Companies upon whose claims they rely, have a colorable ownership or other cognizable interest in the defendant funds. In order to invoke the court's jurisdiction in a forfeiture case, a claimant must not only establish that it has statutory standing to present its claim, but that it also possesses constitutional standing, *i.e.*, a genuine stake in the outcome of the case; otherwise, there is no "case or controversy" for the court to adjudicate as required by Article III of the Constitution. *See* U.S. Const. art. III, § 2; *$103,387.27*, 863 F.2d at 560 n.10. In order to establish constitutional standing, a party to a forfeiture action must demonstrate that it has an actual interest in the particular property to be forfeited. *United States v. $38,000*, 816 F.2d 1538, 1543 n.12 (11th Cir. 1987).

The proposed intervenors are *prospective* unsecured al-Qaeda creditors who do not have an interest in the specific defendant funds that the government seeks to forfeit. In their motion, the proposed intervenors allege an interest in the defendant funds predicated on default judgments that they have obtained against al-Qaeda in the *In Re Terrorist Attacks* litigation. R. 33 at 2-3; *see In Re: Terrorist Attacks*, 03-MD-1570, R. 1756 & 1797 (S.D.N.Y. Apr. 7, 2006 & May 12, 2006). In particular, they claim an interest in the defendant funds to the extent those funds are necessary "to support fulfillment of prospective damages assessments" in that same litigation. R. 33 at 3. As set forth in the government's initial memorandum, a party can establish constitutional standing to intervene in a forfeiture action only if it can demonstrate a cognizable interest in the *particular property* to be forfeited. *See, e.g., United States v. One Sixth Share*, 326

F.3d at 41. A general, unsecured creditor does not have the requisite ownership interest in a debtor's various assets to confer standing sufficient to challenge the forfeiture of items in the debtor's estate.[12]

Neither the proposed intervenors nor the Vigilant Companies possess an ownership or other cognizable interest in the defendant funds. Although the proposed intervenors obtained default judgments against al-Qaeda in the *In Re: Terrorist Attacks* litigation, those judgments lack compensatory damage determinations and are therefore not final. *See generally In Re: Terrorist Attacks*, 03-MD-1570 (S.D.N.Y.). As explained in the government's initial memorandum, under Illinois law, a default judgment creditor cannot begin the process of transforming its judgment into an interest in property in the debtor's estate until the judgment creditor obtains a final, compensatory judgment award. *See Bianchi v. Savino Del Bene Int'l Freight Forwarders, Inc.*, 770 N.E.2d 684, 694 (Ill. App. Ct. 2002) (supplemental enforcement proceedings are not available to a creditor until after a final judgment capable of enforcement has been entered in its favor); *Djikas v. Grafft*, 799 N.E.2d 887, 893 (Ill. App. Ct. 2003) ("A judgment 'is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with execution of the judgment.'") (quoting *In re Guzik*, 617 N.E.2d 1322, 1325 (Ill. App. Ct. 1993)).[13]

Although the claimants obtained a final judgment against al-Qaeda in the *In Re: Terrorist Attacks* litigation on December 22, 2011, *see In Re: Terrorist Attacks*, 03-MD-1570, R. 2514

---

[12] In fact, the applicable forfeiture statutes define an "owner" as a party with "an ownership interest in *the specific property* sought to be forfeited," and further exclude a "general unsecured" creditor from the definition of "owner." *See* 18 U.S.C. §§ 983(d)(6)(A) & (B)(i) (emphasis added).

[13] Under federal forfeiture law, a claimant's alleged interest in the property to be forfeited is determined under the laws of the state in which the property resides. *See, e.g., United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).

(S.D.N.Y. Dec. 22, 2011), that award also does not provide an interest in any particular al-Qaeda assets located in Illinois. The claimants therefore also remain unsecured, general creditors. Under Illinois law, judgment creditors, like the claimants, must seek to enforce their judgment in order to obtain a lien or other interest against the debtor's property.[14] A general judgment will not become an irrevocable lien against a debtor's property until the judgment is registered and a writ of execution is delivered. *See* 735 ILL. COMP. STAT. ANN. 5/12-111 (West 2011); 28 U.S.C. § 1963 (requiring the registration of judgments obtained in a different district). The claimants have, of course, not yet taken any action to enforce their newly-obtained judgment.[15] Accordingly, like the proposed intervenors, the claimants remain unsecured general creditors of al-Qaeda.

As explained in the government's initial memorandum, unsecured general creditors like the proposed intervenors and the claimants lack constitutional standing to contest the forfeiture of a debtor's property. *See, e.g., One-Sixth Share*, 326 F.3d at 44 (person with an *in personam* judgment against a property owner has no secured interest in any specific asset, and therefore lacks standing to contest forfeiture of specific property); *United States v. Hu*, No. 08-CR-425, 2011 WL 5884918, at *5 (E.D.N.Y. Nov. 23, 2011) (default judgment creditor is a general creditor that lacks standing to contest forfeiture). The proposed intervenors' and Vigilant Companies' judgments against al-Qaeda are, by definition, insufficient to provide them constitutional standing to intervene in this forfeiture case.

---

[14] The procedure for the enforcement of a federal judgment is by writ of execution pursuant to the state law in which enforcement is sought. *See* Fed. R. Civ. P. 69(a).

[15] In particular the claimants have not filed their judgment for enforcement, sought to initiate a citation proceeding pursuant to ILCS S.Ct. Rule 277 and 735 ILL. COMP. STAT. ANN. 5/2-1402 (West 2011), or undertaken any other process that could, in theory, create a lien against property. *See Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997).

15

Moreover, even if the Vigilant Companies had constitutional standing to contest the government's forfeiture action, the proposed intervenors' contractual relationship with them would not provide the Court a jurisdictional hook permitting the proposed intervenors' appearance in this case. The proposed intervenors' alleged contractually-obtained, contingent interest does not provide them with an independent ownership or other possessory interest in the defendant funds. *Cf. United States v. All Funds in the Account of Property Futures, Inc.,* __ F.Supp.2d __, 2011 WL 5084319, at *13-16 (S.D. Fla. 2011) (derivative equitable interests held by limited liability corporation member shareholders do not suffice as interests in companies' property so as to confer standing). At best, it may provide the proposed intervenors a right to demand that the Vigilant Companies share any recovery they may acquire with the proposed intervenors' lawyers. Similarly, the proposed intervenors cannot appear in this case merely to "support" the Vigilant Companies' claims. This is a forfeiture action in which parties with an ownership or other cognizable interest in the subject property can intervene as claimants to assert a claim, not to observe or support others' efforts to litigate their own interests. Thus, despite the proposed intervenors' suggestion to the contrary, there is no jurisdictionally permitted role for them to participate in this action as mere observers or as a champions for another's cause.[16]

## 2. TRIA Does Not Confer An Interest In The Defendant Funds.

In their motion, the proposed intervenors argue that their interest in the defendant funds "is backed by . . . the language and intent of Section 201 of TRIA." R. 33 at 9; *see also* R. 35,

---

[16] To the extent that the proposed intervenors' motion could be read as a petition to appear as amicus curiae, that request too should be denied. The proposed parties to this litigation, namely, the claimants, can adequately represent the same arguments that the proposed intervenors would advance. *See Voices For Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (denying motions for leave to file amicus curiae briefs due, in part, to the adequacy of the existing litigants' representation of issues).

Affirmative Defenses ¶ 6. As set forth in the government's initial memorandum, Section 201(a) of the Terrorism Risk Insurance Act (hereinafter, "TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, does not lower, let alone clear, the jurisdictional, substantive and procedural hurdles inherent in federal forfeiture actions.[17] TRIA similarly does not provide a means to salvage the defective claims of the proposed intervenors here.

TRIA Section 201(a) provides that victims of terrorist-related harm may pursue blocked assets to satisfy a judgment *after* they have received an award of *compensatory damages*. *See* 116 Stat. at 2337. Prior to the award of such damages, the statute is simply inapplicable and can provide no relief. *See Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006) (requiring the receipt of an award of compensatory damages prior to any execution against blocked assets); *Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003) (TRIA "confers no entitlement on victims who have not yet obtained judgments."). Moreover, TRIA cannot "be read to mandate that terrorist assets be blocked in perpetuity" in order to make them available for the execution of a final judgment obtained in the future. *Id.* at 270-71. As explained *supra*, while the proposed intervenors have obtained default judgments against al-Qaeda, they do not have final, compensatory damage awards. They therefore do not have constitutional standing to assert a claim to any particular al-Qaeda assets and TRIA does not provide a means by which they may intervene in this case to try and attach the defendant funds.[18]

---

[17] The government incorporates by reference the arguments set forth in its initial memorandum concerning the inapplicability of TRIA to provide a viable claim in this case.

[18] Moreover, if the proposed intervenors had actually obtained compensatory damage awards, for the reasons set forth in the government's initial memorandum, TRIA Section 201 would not support their claims. In particular, the relation back doctrine codified in 18 U.S.C. § 981(f) would preclude the proposed intervenors' use of TRIA because, pursuant to that doctrine, title to the defendant funds had

### B.     The Proposed Intervenors Lack Prudential Standing.

The Court should further deny the proposed intervenors' motion to appear in this case because they lack prudential standing to litigate the Vigilant Companies' claims.  Under the prudential standing doctrine, a court should refuse to exercise its jurisdiction when the alleged aggrieved party's claim is derived solely from another, more immediate victim's actual injury. *See Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007) (prudential standing precludes courts from exercising jurisdiction over some cases that Article III would permit, including those in which one party's claim is derived from an injury suffered by another). The prudential standing doctrine therefore bars suits in which one party seeks "to enforce someone else's legal rights."  *Id.* at 746; *Marin-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir. 2011) ("The presumption against third-party standing is a prudential limitation on the exercise of federal jurisdiction[, . . .] which recognizes that claims are best prosecuted by those who actually have been injured, rather than by someone in their stead.") (internal quotations and citations omitted); *Union Bank,* 487 F.3d at 22-23 (the doctrine of prudential standing prevents a litigant from raising another party's legal rights).  The proposed intervenors' request to appear in this case to "support, to the extent they are in alignment with Proposed Intervenors' interests, the claims made by the [claimants]," R. 33 at 2, is simply a request to advocate the Vigilant Companies' rights and is, accordingly, an insufficient basis to warrant the exercise of the Court's jurisdiction.[19]

---

vested in the United States prior to the time that the proposed intervenors obtained a default judgment as to liability in the *In Re Terrorist Attacks* litigation.

[19]     In addition, for the reasons set forth in the government's initial memorandum, the proposed intervenors further lack standing under another variant of the prudential standing doctrine because, like the claimants, the proposed intervenors do not qualify as "owners" of the defendant funds, as required by the civil forfeiture statutes applicable to the confiscation of terrorist assets.  *See* 18 U.S.C. §§ 987(a) & 983(d).  The proposed intervenors therefore do not fall within the zone of interests protected by those

### III.    THE PROPOSED INTERVENORS CANNOT MEET THE STATUTORY CRITERIA FOR INTERVENTION PURSUANT TO RULE 24.

#### A.    Rule 24(a): Intervention As Of Right.

The Court should finally deny the proposed intervenors' motion because, even if the Court were to analyze their motion under the criteria required by Rule 24, the proposed intervenors could not meet those prerequisites.  Rule 24(a)(2) allows a party to intervene in a civil suit who: (1) has an interest relating to the property that is the subject of the action; (2) is situated such that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect its interest; and (3) will not be adequately represented by the existing parties.  Fed. R. Civ. P. 24(a)(2).[20]  It is the movant's burden to establish each of these criteria. *See United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003).  It is a burden the proposed intervenors cannot meet.

As an initial matter, as set forth above, the proposed intervenors do not have an interest in the property that is the subject of this action; namely, the defendant funds.  The proposed intervenors are, at best, general unsecured al-Qaeda creditors.  Their status as victims of al-Qaeda's crimes is insufficient to create an independent interest in alleged al-Qaeda assets.[21] *See, e.g., United States v. $7,206,157,717 On Deposit at JP Morgan Chase Bank, N.A.*, 274 F.R.D. 125, 126 (S.D.N.Y. 2011) (unsecured Bernie Madoff victim denied Rule 24(a) intervention

---

statutes. *See*, *e.g.*, *United States v. $500,000.00*, 591 F.3d 402, 404 (5th Cir. 2009) (noting that, for purposes of prudential standing, "only 'innocent owner[s]' of seized property hold the right to defend against forfeiture proceedings"); *United States v. $746,198*, 299 F. Supp. 2d 923, 932-33 (S.D. Iowa 2004) (a claimant who is not an "owner," as defined in § 983(d)(6), lacks standing to contest forfeiture).

[20]    Rule 24 further requires that an applicant file its motion in a timely manner.  Although, as set forth above, the proposed intervenors' motion is untimely under the standards established by Supplemental Rule G, *see* Fed. R. Civ. P. Supp. G(5), under the more liberal requirements of Rule 24, their delinquent filing would not be deemed prohibitively late.

[21]    In their motion and answer, the proposed intervenors assume that the defendant funds, which were seized from an al-Qaeda associate, constitute assets of al-Qaeda. *See* R. 35, ¶ 24 & Affirmative Defenses ¶ 1.

because she had no interest in the forfeiture action; "victimhood does not create an interest in forfeited property"); *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009) (denying fraud victims right to intervene pursuant to Rule 24 because "victims who voluntarily transfer their property to wrongdoers do not retain a legal interest in their property").

The proposed intervenors attempt to sidestep this primary requirement of Rule 24(a)(2) by alleging an interest in the hoped for success of the Vigilant Companies' claims. In particular, the proposed intervenors argue that they have a contractual agreement to effectively share in any rewards of the Vigilant Companies' litigative efforts. R. 33 at 9. This derivative interest is similarly insufficient under Rule 24. In *Flying J, Inc. v. Van Hollen,* the Seventh Circuit explained that "the fact that [a proposed intervenor] might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit . . . does not entitle [the proposed intervenor] to intervene in their suit." *Flying J, Inc.*, 578 F.3d at 571. Rather, a proposed intervenor's interest must be based in the subject matter of the suit itself, not simply its outcome. *See Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) (to assess a prospective intervenor's interest in a case, courts "focus on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues"); *Spencer v. CT Acquisition Corp.*, No. 1:04-CV-1788, 2005 WL 4882702, at *2 (S.D. Ind. Oct 18, 2005) (Tinder, J.) (denying motion to intervene because movant's interest in underlying action was based solely in the economic benefits to be derived from its outcome). "[A] mere economic interest in the outcome of the litigation is insufficient so support a motion to intervene." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). The proposed intervenors' alleged stake in the Vigilant Companies' claims is based solely on a contractual agreement to share in the proceeds, if any, that the claimants may recover in this forfeiture action. As noted

*supra*, it is the type of alleged interest that the Seventh Circuit has found insufficient to justify intervention.

The proposed intervenors also cannot satisfy Rule 24(a)(2)'s impairment requirement. The Seventh Circuit has explained that "[t]he existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) (citations omitted). In their motion, the proposed intervenors claim that if the Vigilant Companies' claims are unsuccessful, their interests will be impaired because the government will not be required to apply the defendant funds for the benefit of victims of the September 11, 2001 terrorist attacks against the United States. R. 33 at 10.

Despite the proposed intervenors' argument to the contrary, forfeiture of the defendant funds will not necessarily preclude their availability to victims of al-Qaeda's crimes. The forfeiture statutes provide the Attorney General with authorization to transfer forfeited property as restoration to any victim of the offense giving rise to the forfeiture in appropriate cases. 18 U.S.C. § 981(e)(6). This victim restoration provision thereby provides a means, if appropriate, not only to provide redress to the claimants and prospective intervenors, but to a larger class of al-Qaeda's victims. The proposed intervenors' assertion that a judgment adverse to the Vigilant Companies will, *a fortiori*, impair the interests of al-Qaeda victims is therefore overstated.[23]

Finally, the proposed intervenors cannot establish the final requirement of Rule 24(a)(2) intervention because the existing litigants, *i.e.*, the Vigilant Companies, already represent their

---

[23] In fact, if restoration is made directly to victims, it will provide individuals and entities like the proposed intervenors and claimants a choice on how to use the subject funds rather than mandating the provision of those funds to their counsel pursuant to a contractually-mandated formula.

claimed interests. "Cases allow intervention as a matter of right when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground." *Chicago v. FEMA*, 660 F.3d 980, 985 (7th Cir. 2011) (citing cases). However, "[w]here the interests of the original party and of the intervenor are identical – where in other words there is no conflict of interest – adequacy of representation is presumed." *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996), *rev'd on other grounds*, 531 U.S. 159 (2001). To the extent that the proposed intervenors have a contractually-obtained, contingency interest in the Vigilant Companies' claims, their interests are identical, *i.e.*, to prevent the government's forfeiture of the defendant funds and, instead, require the transfer of the funds to themselves. The Vigilant Companies are already positioned to litigate this common goal.

The proposed intervenors nevertheless argue that they should be allowed to intervene in this case because the Vigilant Companies' representation of their joint interest *could* diverge or prove inadequate. R. 33 at 11. At this time, the proposed intervenors' interests are aligned with the Vigilant Companies' and the claimants' pursuit of their similar interests is sufficient. The theoretical possibility that these common interests could somehow diverge is an inadequate basis to warrant intervention.[24] Of course, the proposed intervenors also argue that if their motion to intervene is denied, they "will be prejudiced by their inability to protect their . . . agreement with the *Vigilant Insurance* plaintiffs regarding distribution and usage of recovered Al-Qaeda assets." R. 33 at 8 (italicized in original). The proposed intervenors, however, again fail to explain why they need to appear or how their appearance will ensure the Vigilant Companies' performance of

---

[24] Of course, if the proposed intervenors and Vigilant Companies' interests diverged and the proposed intervenors wanted to pursue directly a claim to the defendant funds, they would, once again, be required to fulfill the requirements of Supplemental Rule G, which they have not and cannot now do.

their contractual obligations. In reality, the proposed intervenors' appearance or non-appearance will have no effect on the Vigilant Companies' performance of any contingent contractual obligations they may have to the proposed intervenors.[25]

### B.    Rule 24(b): Permissive Intervention.

The proposed intervenors alternatively seek to appear in this case pursuant to Rule 24(b), which provides that the Court *may* permit a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The proposed intervenors argue that they should be allowed to appear in this case pursuant to this alternative provision of Rule 24, because, according to proposed intervenors, their claim to the defendant funds is premised on the same legal theory advanced by the Vigilant Companies; namely, TRIA Section 201. *See* R. 33 at 12. The proposed intervenors' claim, however, is not, in fact, premised on the applicability of TRIA, but, instead, on a contractual agreement with the Vigilant Companies. There is, accordingly, no basis for the proposed intervenors' request for permissive intervention.

Moreover, to the extent that some overlap of legal arguments exists, permissive intervention is wholly within the discretion of the court. *Ligas ex rel. Foster v. Maram,* 478 F.3d 771, 775 (7th Cir. 2007). The Court should exercise that discretion to deny intervention in a case such as this. As the court explained in *$7,206,157,717 on Deposit at JP Morgan Chase Bank*, a case in which a victim of Bernie Madoff's ponzi scheme sought to intervene in a government forfeiture action pursuant to Rule 24(b): "[t]o allow those with, at most, contingent interests in a res to intervene would open floodgates of intervention in forfeiture actions and thus would not serve the efficient administration of justice." *$7,206,157,717,* 274 F.R.D. at 127.

---

[25] If necessary, the proposed intervenors can always enforce their contractual rights through a breach of contract action against the Vigilant Companies.

Victim creditors like the proposed intervenors have another potential avenue for prospective relief; namely, the restoration provisions of 18 U.S.C. § 981(e)(6). Accordingly, even if the Court could allow the proposed intervenors' intervention pursuant to Rule 24(b), which it statutorily cannot, it should exercise its discretion and deny the requested intervention.

### *Conclusion*

For all the foregoing reasons, the United States respectfully asks this Court to deny the proposed intervenors' motion to intervene and strike their answer pursuant to Supplemental Rule G(8)(c)(i)(A) & (B).

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Joel Hammerman         /
JOEL HAMMERMAN
Assistant United States Attorney
219 South Dearborn, Room 500
Chicago, Illinois 60604

JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and Money Laundering Section

By: s/ Jean Weld              /
FREDERICK REYNOLDS
Deputy Chief, Forfeiture Unit
JEAN B. WELD
Senior Trial Attorney
KONDI KLEINMAN
Trial Attorney
U.S. Department of Justice, Criminal Division
1400 New York Ave., NW, Suite 10100
Washington, D.C. 20530