# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALL FUNDS ON DEPOSIT WITH R.J. ) <br> O'BRIEN & ASSOCIATES, HELD IN THE ) <br> NAME OF BRIDGE INVESTMENT, S.L., ) <br> BEARING ACCOUNT NUMBERS ) <br> XX-X3931 AND XXX-X1784, MAINTAINED ) <br> AT HARRIS BANK, ACCOUNT NUMBER ) <br> XXX-171-6, ) <br> ) <br> Defendant. ) | Case No. 11 C 4175 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States filed this *in rem* action seeking forfeiture of approximately $6,600,000 held in futures trading accounts. It contends that the money is the property of an affiliate of the Al-Qaeda terrorist organization. Three groups of insurance companies (the insurance company claimants) with property damage claims arising from the September 11, 2001 terrorist attacks have filed claims to the funds and answers to the government's complaint. The government has moved to strike their claims and answers, and the insurance companies have moved to amend them. In addition, a group of individuals (the personal injury claimants) asserting personal injury and wrongful death claims arising from the September 11 attacks have moved to intervene and filed an answer to the government's forfeiture action. The government

has moved to strike their answer. For the reasons discussed below, the Court grants the government's motions to strike and denies the personal injury claimants' motion to intervene.

## Background

**A.    The defendant property**

In 2003, an commodities futures trading account was opened at R.J. O'Brien & Associates (RJO) in the name of Bridge Investment, S.L., a Spanish corporation. In 2005, Mohammad Qasim al Ghamdi (Al Ghamdi), who was identified as Bridge Investment's general manager, took control of the trading account. Between June and September 2005, he deposited almost $24,000,000 in the account. The account lost money, and by May 2006 only about $6,600,000 remained. Later in 2006, Bridge Investment opened a second account with RJO but did not deposit any additional money into the account.

The government alleges that the money Al Ghamdi deposited in the RJO account was the property of Muhammad Abdallah Abdan Al Ghamdi, also known as Abu al Tayyeb (Al Tayyeb), a member of Al-Qaeda and an associate of Al Ghamdi. The government alleges that Al Tayyeb raised money in Saudi Arabia and used it to support Al-Qaeda's activity. He provided approximately $35 million to Al Ghamdi, and it was a portion of this money that Al Ghamdi deposited in the RJO account. Saudi Arabian authorities arrested Al Tayyeb in June 2006. At the time, he had been planning or considering several different types of terrorist attacks on Saudi Arabia and the United States.

In June 2007, the United States Department of the Treasury's Office of Foreign

Assets Control, using its authority under the International Emergency Economic Powers Act, blocked Bridge Investment's two accounts at RJO. The funds in the accounts remained blocked when the government initiated this forfeiture action on June 19, 2011. In this action, the government claims that the funds were forfeit as the assets of an individual or entity planning or perpetrating an act of terrorism against the United States or a foreign government in violation of 18 U.S.C. § 981(a)(1)(G)(I) and (iv). Following the filing of the complaint, the Court issued an *in rem* arrest warrant for the funds, and federal law enforcement agents then seized the funds. The United States Marshal has held the funds since July 15, 2011.

**B.    The claimants**

Three different groups of insurance companies have filed verified claims and answers: (1) OneBeacon Insurance Group; (2) American Alternative Insurance Company, The Princeton Excess & Surplus Lines Insurance Company, and Great Lakes UK Insurance Company (collectively American Alternative); and (3) Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, and Great Northern Insurance Company (collectively Chubb). The insurance company claimants collectively paid more than $2.5 billion in property damage and business interruption claims arising from the September 11 terrorist attacks. In 2003, they and other similarly situated insurance companies filed suit against Al-Qaeda and other defendants in the United States District Court for the Southern District of New York seeking to recover the funds they had paid out.

A group of several thousand individuals who assert personal injury or wrongful death claims related to the September 11 attacks filed suit in 2002 against Al-Qaeda and other defendants in the United States District Courts for the District of Columbia and the Southern District of New York. Their cases were consolidated with the suit brought by the insurance companies in the Southern District of New York.

In April and May 2006, the district court in New York issued what the insurance claimants call "default judgments" against Al-Qaeda and the other defendants in favor of the insurance companies and the personal injury plaintiffs because the defendants had not answered the complaint. The district court did not, however, determine the amount of liability or issue a final judgment. (For this reason, the so-called "judgments" were actually orders of default, not judgments.) In 2007, the insurance companies moved the court to assess damages in the total amount of more than $9.4 billion in favor of all the insurance company plaintiffs, including some plaintiffs who are not claimants here.

The district court, however, took no action on the insurance companies' motion until July 13, 2011, when it referred the motion to a magistrate judge. Consequently, when the insurance company claimants filed claims and answers in this forfeiture action in August and September 2011, they were able to say only that the New York court had determined liability in their favor, and they were unable to specify the amount of their claim.

In October 2011, the magistrate judge in New York recommended that the insurance companies be awarded the judgment they sought, with only minor subtractions. The district court adopted the recommendation fully and entered judgment in favor of the insurance companies on December 22, 2011. Because the insurance

4

companies are entitled to treble damages under the applicable law, OneBeacon's judgment is worth almost $530 million, American Alternative's is for more than $320 million, and Chubb's is for $6.65 billion. On January 25, 2012, the district court in New York determined that there was no reason for delay and issued final judgments in favor of the insurance companies even though other portions of the consolidated cases were ongoing. On January 27, the insurance company claimants moved in this case to filed amended claims and answers reflecting that they now have final judgment for definite amounts.

The personal injury plaintiffs did not fill a timely claim or answer in the present forfeiture action. In November 2011, however, they sought to intervene as claimants either as a matter of right or permissively. The personal injury plaintiffs have not yet had their damages calculated by the New York district court, and thus they do not have final judgments. Because there are thousands of individual plaintiffs, each of whom requires a separate determination of damages, counsel for the personal injury claimants cannot predict when they might have final judgments. The personal injury claimants state, however, that they have reached a confidential agreement with the insurance company claimants under which any funds that the insurance company claimants recover will be used to fund further litigation against Al-Qaeda.

## Discussion

The government contends that both sets of claimants lack standing because they are only general unsecured creditors vis-a-vis the seized funds. The government also argues that the personal injury plaintiffs cannot satisfy the requirements for either intervention as of right or permissive intervention.

## A. Article III standing

"There are two different forms of standing in a forfeiture case such as this: Article III standing and statutory standing. To contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing, otherwise there is no case or controversy." *United States v. $103,387.27*, 863 F.2d 555, 560 n.10 (7th Cir. 1988) (internal quotation marks omitted). State law defines what interest the claimants actually have, and federal law determines if that interest is sufficient for standing. *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017, 1021 (7th Cir. 2000).

In a civil forfeiture case, a claimant's standing depends on three elements: "(1) an immediate threat of injury; (2) fairly traceable to the [government's] conduct; that (3) a favorable federal court decision likely would redress or remedy." *Id.* at 1022. As a general rule, the standing requirement is "undemanding," and the sorts of claimants who lack standing are those who have experienced "purely psychological harm" or "simple indignation." *Id.* (internal quotation marks omitted). "[W]hile ownership and possession generally may provide evidence of standing, it is the injury to the party seeking standing that remains the ultimate focus." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) (money transmitting companies had standing to contest forfeiture of their customers' funds, because companies were liable to customers to make up any shortfalls).

It is undisputed that the claimants do not have a security interest or a lien on the defendant funds. The government contends that many courts have held that general unsecured creditors lack Article III standing in a civil forfeiture case. *E.g., United States*

6

*v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003); *Cambio Exacto*, 166 F.3d at 528–29; *United States v. $20,193.39*, 16 F.3d 344, 346 (9th Cir. 1994); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 772 F. Supp. 2d 191, 198–99 (D.D.C. 2011); *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 880 (E.D. Mich. 2007); *United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 830 F. Supp. 1101, 1117 (N.D. Ill. 1993). However, although these cases address standing, they do so in terms that suggest the courts were actually considering the standing requirements that the civil forfeiture statute and rules impose on claimants, not standing under Article III.

Both the civil forfeiture statute and Supplemental Federal Rule of Civil Procedure G require that a claim "state the claimant's interest in [the forfeited] property." 18 U.S.C. § 983(a)(2)(C)(ii); Fed. R. Civ. P., Supp. R. G(5)(i)(B); *see also* 18 U.S.C. § 983(d)(6) (stating that claimant asserting innocent owner defense must have "an ownership interest in the specific property sought to be forfeited" and cannot have "only a general unsecured interest in, or claim against, the property or estate of another"). A claimant must comply with these procedural rules to establish statutory standing. *$103,387.27*, 863 F.2d 555, 560 n.10; *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, No. 96 C 8423, 1999 WL 91910, at *1–2 (N.D. Ill. Feb. 11, 1999). Many of the court decisions holding that an unsecured creditor lacks standing do not expressly state whether they mean statutory standing, but they discuss the requirements of either the civil forfeiture statute or Rule G. *E.g.*, *$20,193.39*, 16 F.3d at 346 (discussing requirements of forfeiture statute and innocent owner defense); *Bank Julius Baer*, 772

7

F. Supp. 2d at 198–99 (discussing requirements of forfeiture statute and Rule G); *Currency $11,331*, 382 F. Supp. 2d at 880 (discussing definition of innocent owner in forfeiture statute). Decisions discussing the requirements of the civil forfeiture statute and rule are better understood as decisions based upon statutory standing, not the constitutional dimension of standing.

Even the decisions cited by the government that expressly state that an unsecured creditor lacks Article III standing rely on the civil forfeiture statute and Rule G. In *One-Sixth Share*, the First Circuit stated that an unsecured creditor lacked Article III standing but as justification cited the forfeiture statute and the Ninth Circuit decision in *$20,193.39*, which was also based on analysis of the forfeiture statute. *One-Sixth Share*, 326 F.3d at 44; *$20,193.39*, 16 F.3d at 346; *see also United States v. $11,900.00*, No. 09-2303-STA, 2009 WL 3571554, at *4 (W.D. Tenn. Oct. 26, 2009) (citing *$20,193.39* for the proposition that unsecured creditors lack Article III standing). Similarly, in *FirstRock Bancorp*, the court stated that unsecured creditors lack Article III standing but did so in the context of discussing the statutory innocent owner defense and cited as authority a California district court case that discussed the statutory standing requirement. *FirstRock Bancorp*, 830 F. Supp. at 1117 (citing *United States v. 127 Shares of Stock in Paradigm Mfg., Inc.*, 758 F. Supp. 581, 583 (E.D. Cal. 1990)); *see also United States v. Two Bank Accounts*, No. Civ. 06-4016-KES, 2009 WL 803615, at *6 (D.S.D. Mar. 24, 2009) (stating that general unsecured creditors lacked Article III standing, but citing *$20,193.39*, *One-Sixth Share*, and *Paradigm Mfg.*).

In this case, however, the Court need not grapple with the distinctions between Article III standing and statutory standing. As discussed in the next section, it is clear

8

that claimants lack statutory standing to challenge the forfeiture.

B.     **Prudential and statutory standing**

The claimants' status as unsecured creditors means that they are outside the zone of interests protected by the forfeiture statute. As a result, they do not satisfy what courts refer to as prudential standing limitations. "[P]rudential standing . . . embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (internal quotation marks omitted). The courts have not defined the limits of prudential standing, but it "encompasses the general prohibition on a litigant's raising another person's legal rights, . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* (internal quotation marks omitted).

The civil forfeiture statute contains specific protections for "innocent owners," 18 U.S.C. § 983(d), and it is only those who have an ownership interest in the property to be forfeited who are within the zone of interests protected by the statute and thus "hold the right to defend against forfeiture proceedings." *United States v. $500,000.00*, 591 F.3d 402, 404 (5th Cir. 2009). General unsecured creditors like the claimants in this case are excluded from the statutory definition of owner and thus lack prudential standing. *Id.* at 404–05; *see* 18 U.S.C. § 983(d)(6)(B)(I). In particular, courts have decided that victims of crimes committed by the owners of forfeited property are not within the zone of interests protected by the civil forfeiture statute. In *United States v. Approximately $133,803.53*, 683 F. Supp. 2d 1090 (E.D. Cal. 2010), the claimant was a victim of fraud committed by the former owner of the defendant property and claimed that it was the beneficiary of a constructive trust that included the property. *Id.* at

9

1092–93.  The court noted that Congress had included in the civil forfeiture statute a provision allowing the Attorney General to use forfeited property to compensate "any victim of the offense giving rise to the forfeiture" and a provision stating that "[t]he Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding." *Id.* at 1094–95 (citing 18 U.S.C. § 981(d), (e)(6)).  The court reasoned that "Congress's creation of a remission process for crime victims and explicit delegation of responsibility to the Attorney General over petitions filed pursuant to that process, combined with the absence of statutory language negating the application of the prudential standing doctrine to potential claims of victims, compels the conclusion that the claimant in this case lacks prudential standing." *Id.* at 1095.

In *United States v. Real Prop. Located at 730 Glen-Mady Way*, 590 F. Supp. 2d 1295 (E.D. Cal. 2008), the court employed similar reasoning.  The claimants were victims of fraud and thus were, under California law, beneficiaries of a constructive trust over the defendant property.  *Id.* at 1301.  Their interest in the property was sufficient to convey Article III standing, but because the civil forfeiture statute provided an administrative method for compensating the victims of crimes, the court concluded that they lacked prudential standing.  *Id.* at 1302–03.  The court also noted that the protections given to innocent owners, a statutory term that specifically excludes unsecured creditors and does not otherwise mention the victims of crimes, also suggested that victims of crimes lacked prudential standing.  590 F. Supp. 2d at 1303 & n.4 (citing 18 U.S.C. § 983(d)).

Because the claimants in the present case do not have "an ownership interest in

the specific property sought to be forfeited," they are not innocent owners and thus are not specifically protected by the forfeiture statute. 18 U.S.C. § 983(d)(6)(A). Further, the statute creates a separate administrative process to provide compensation to the victims of crimes related to forfeit property and gives the Attorney General sole authority over its administration. *Id.* § 981(d), (e)(6). The Court concludes that both groups of claimants fall outside the zone of interests protected by the forfeiture statute and thus lack prudential standing. For this reason, the Court strikes the claims and answers of the insurance company claimants and the answer of the personal injury plaintiffs.

The claimants also lack statutory standing. To have statutory standing, a plaintiff must meet certain requirements of the forfeiture rules. *Cambio Exacto*, 166 F.3d at 527. Supplemental Rule G requires that a claim "identify the claimant and state the claimant's interest in the property." Fed. R. Civ. P., Supp. R. G(5)(a)(i)(B); *accord* 18 U.S.C. § 983(a)(2)(C)(ii).

A general unsecured creditor, which is what the claimants are, lacks an interest in the specific property to be forfeited. *$20,193.39*, 16 F.3d at 346; *see United States v. $7,599,358.09*, Civ. Action No. 10-5060 (SRC), 2011 WL 3611451, at *3 (D.N.J. Aug. 15, 2011) (fraud victims whose funds were intermingled with other money lacked standing to challenge forfeiture because they had no interest in specific property). Thus, an unsecured creditor lacks statutory standing to challenge a forfeiture. *United States v. Funds Totaling $42,958.85*, No. 93 C 2241, 1994 WL 46695, at *1–2 (N.D. Ill. Feb. 14, 1994). "The federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." *One-Sixth Share*, 326 F.3d at 44 (internal quotation marks omitted); *accord United States v. Boyle*,

No. 04 CR 86-2, 2009 WL 2391857, at *2 (N.D. Ill. July 24, 2009) (unsecured creditor lacked standing under criminal forfeiture statute). The claimants do not cite any decision in which a court has determined that a general unsecured creditor has statutory standing to assert a claim in a forfeiture case. Their claims and answers are properly stricken for this reason as well.

Claimants argue that the standing inquiry should be independent of the determination of whether a claimant is an owner of the property to be forfeited, which they argue is a merits issue. The cases they cite, however, are distinguishable. In *United States v. One 1990 Beechcraft*, 619 F.3d 1275 (11th Cir. 2010), the court stated that the statutory definition of ownership was not "part of the standing inquiry, [but instead] an element of the innocent owner's claim on the merits." *Id.* at 1277 n.3 (internal quotation marks omitted). But in that case, it was undisputed that the claimant had legal title to the defendant property. The disputed issue was whether the claimant exercised any "dominion or control" or was just a straw owner. *Id.* at 1277 (internal quotation marks omitted); *see 5 S 351 Tuthill Rd.*, 233 F.3d at 1022–23 (where claimant was beneficiary of a land trust, question of whether interest in defendant property was purely nominal was not an issue of standing). Unlike the claimants in *One 1990 Beechcraft* or *5 S 351 Tuthill Rd.*, the claimants in this case do not have any sort of legal title or beneficial interest in the defendant property. Claimants also rely on the statement of the court in *FirstRock Bancorp* that status as an owner or lienholder is a separate inquiry from standing. 830 F. Supp. at 1115 & n.9. But the court in that case concluded that unsecured creditors lacked standing, although as discussed above it characterized this as a constitutional rather than a statutory decision. *Id.* at 1117.

Finally, claimants contend that they have standing because they are the beneficiaries of a constructive trust that covers the property at issue. Under Illinois law, which the parties agree applies, "a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving the benefit to convey the property back to the person from whom it was received." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 630 (7th Cir. 2010). Constructive trusts can arise in many different circumstances, *id.*, but "[g]enerally, a court imposes a constructive trust to remedy (1) actual or constructive fraud; (2) the breach of a fiduciary duty; or (3) duress, coercion, or mistake." *Poziombka v. Winkle (In re Estate of Vogel)*, 291 Ill. App. 3d 1044, 1047, 684 N.E.2d 1035, 1037 (1997). "The proceeds of the alleged wrongful conduct must exist as an identifiable fund traceable to that conduct, such that it can become the *res* of the proposed trust." *Eychaner v. Gross*, 202 Ill. 2d 228, 274, 779 N.E.2d 1115, 1143 (2002).

The claimants do not, of course, contend that they conferred any benefit on Al-Qaeda that a constructive trust could return. Nor are their claims, for property damage, personal injury, and wrongful death, the sorts of claims for which constructive trusts are typically imposed. They also do not contend that the defendant funds are proceeds of the wrongful conduct that caused their injuries. Claimants argue that constructive trusts are a broad equitable remedy, but they have cited no Illinois case in which a court has imposed a constructive trust based on claims similar to theirs. The Court concludes that claimants' constructive trust theory does not give them standing to assert claims in this proceeding. *See Approximately $133,803.53*, 683 F. Supp. 2d at 1095–97 (claimant who was the beneficiary of constructive trust still lacked prudential standing).

13

**C.     Intervention**

The personal injury plaintiffs have moved to intervene in this case, arguing that they satisfy the requirements of both intervention as of right under Federal Rule of Civil Procedure 24(a) and permissive intervention under Rule 24(b).  A party seeking to intervene under Rule 24, however, must still comply with the forfeiture rules.  *United States v. One Parcel of Real Property*, 942 F.2d 74, 77 (1st. Cir. 1991) (treating intervention motion as claim); *United States v. 8 Gilcrease Ln.*, 641 F. Supp. 2d 1, 4–5 (D.D.C. 2009) (intervenors must comply with forfeiture rules and state an interest in the defendant property in order to have statutory standing); *United States v. One Silicon Valley Bank Account*, No. 1:05-cv-295, 2007 WL 1594484, at *2 (W.D. Mich. June 1, 2007) (intervenors seeking to support government's forfeiture claim must have statutory standing and comply with forfeiture rules); *see also DSI Assocs. LLC v. United States*, 496 F.3d 175, 184–85 (2d Cir. 2007) (claimant cannot use intervention as an alternative means of participating in criminal forfeiture proceeding).  For the reasons previously described, the personal injury claimants cannot meet the requirements of the forfeiture statute.  Thus they cannot intervene under Rule 24.

**D.     Amendment**

The insurance company claimants seek leave to file amended claims.  Although the insurance companies' current claims are deficient and they lack statutory standing, the Court has discretion to allow a claimant to amend its claim or file a new, late claim.  *See $103,387.27*, 863 F.2d at 560–61 (addressing claimants who lacked statutory standing because their claim was not verified); *United States v. One 2005 Rolls Royce Phantom*, No. 07 C 2870, 2008 WL 109114, at *3 (N.D. Ill. Jan. 8, 2008) (allowing

14

claimant to file a claim and answer more than three months late even though it had an unsatisfactory explanation of its lateness, because court and government knew of claimed interest and government was not prejudiced).

The Court's ability to permit an amended or late claim does not help claimants, however, because even after amendment, they would lack the requisite interest in the property that is the subject of the forfeiture action. The fact that their claim against Al Qaeda has now been reduced to a money judgment does not alter the insurance company claimants' status as unsecured creditors who lack statutory and prudential standing. In particular, they have not served citations to discover assets, which, under Illinois law, would create a lien on the defendant property and thus give them an interest in the property.[1] *See* 735 ILCS 5/2-1402(a), (m). Accordingly, the district court denies the insurance company claimants' motion to amend on the ground that the proposed amendment would be futile. *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011).

**Conclusion**

For the reasons stated above, the Court grants the government's motions to strike the claimants' claims and answers [docket nos. 42, 51]. The Court also denies the personal injury claimants' motion to intervene [docket no. 39] and the insurance company claimants' motion to amend [docket no. 59]. The case is set for a status hearing on April 10, 2012 at 8:45 a.m., in chambers (Room 2188) to set a schedule for

---

[1] The Court need not consider whether they legally can serve a citation at this time or, if so, whether it would be appropriate then to allow the insurance claimants to amend their claims. Similarly, the Court need not consider the effects of the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, § 201, 116 Stat. 2332, 2337, on the claimants' ability to execute their judgments against the property at issue in this case.

15

any further proceedings in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 27, 2012