
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6,<br><br>   Defendant. | No. 11 C 4175<br><br>Judge Matthew F. Kennelly |

**UNITED STATES' OPPOSITION TO CLAIMANTS' MOTION
FOR LEAVE TO AMEND THEIR VERIFIED CLAIMS AND ANSWERS**

  The proposed insurance company claimants, whose claims and answers in this forfeiture action have already been stricken for want of statutory and prudential standing, seek permission from the Court to file pleadings anew. Their request should be denied. Any claims or answers filed by these proposed claimants would suffer from the same flaws that required the Court to dismiss their earlier attempt to intervene in this forfeiture action. In particular, despite their ongoing effort to improve their litigation posture, the claimants continue to lack statutory, constitutional and prudential standing to intervene in this case. Accordingly, the claimants' proposed amended pleadings would be futile.

1

*Procedural Background* [1]

On June 19, 2011, the United States filed a verified complaint seeking the forfeiture of certain "defendant funds" then on deposit with R.J. O'Brien & Associates ("RJO") as terrorist assets. R. 1.[2] In particular, the government sought to forfeit approximately $6,226,355 that had been maintained in the RJO account by Muhammad Abdallah Abdan Al Ghamdi (a/k/a "Al Tayyeb"), who was a member of al-Qaeda. R. 1 at ¶¶ 13 - 18. In August 2011, the three groups of insurance industry claimants sought to intervene in this forfeiture action by filing verified claims to the defendant funds. R. 10-12.[3] The claimants, who had then obtained orders of default in civil litigation against al-Qaeda based on the subrogated rights of insureds who incurred property, business interruption and related losses as a result of the September 11, 2011 terrorist attacks against the United States, alleged that they had an interest in the defendant funds, which they characterized as the assets of al-Qaeda. *See* R. 10-12; *In Re: Terrorist Attacks Upon the United States*, 03-MD-1570, R. 1756 & 1797 (S.D.N.Y. Apr. 7, 2006 & May 12, 2006) ("*In Re: Terrorist Attacks*"). The government moved to strike the claimants' proposed intervention in the forfeiture action, arguing that the claimants lacked constitutional, statutory and prudential standing to file a claim. R. 42-43. In particular, the government explained that the claimants did

---

[1] A detailed recitation of the factual predicate underlying the government's forfeiture action is set forth in the *United States' Memorandum In Support Of Its Motion To Strike The Claimants' Verified Claims And Answers*, R. 43, which is incorporated herein by reference.

[2] Citations to the record in this "forfeiture action" – *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, No. 1:11-cv-4175 (N.D. Ill. June 19, 2011) – are referenced by an "R." notation, followed by the relevant document entry number and, if appropriate, a page or paragraph number. Citations to docket entries in *Art Insurance Co., et al. v. Al Qaeda*, No 1:12-cv-1346 (N.D. Ill. February 27, 2012), referred to herein as the "enforcement action," are referenced by an "E.A." notation, followed by the number of the corresponding entry.

[3] Although the insurance company movants arguably should no longer be characterized as "claimants," as that term has a particular meaning under the federal forfeiture statutes which the insurance companies can no longer meet, the government has, for purposes of continuity, continued to identify the insurance companies as the "claimants" herein.

not have an ownership or other legal interest in the specific defendant funds to be forfeited, but had, at best, only *in personam*, non-compensatory orders of default against al-Qaeda. *Id.* The Court agreed, granting the government's motion to strike on March 27, 2012. R. 74. In its *Memorandum Opinion and Order* striking the claims, the Court explained that the claimants did not have an ownership or other legal interest in the specific defendant funds to be forfeited and, therefore, lacked statutory and prudential standing to intervene in the forfeiture action. R. 74.[5]

At the time that the claimants filed their claims, they did not have final, compensatory judgment awards against al-Qaeda.[6] R. 53 at 10. The claimants, however, continued to pursue their action against al-Qaeda during the pendency of the forfeiture action. On January 25, 2012, 2012 – over seven months after the government had initiated this forfeiture action – the claimants obtained a final judgment against al-Qaeda. *In Re: Terrorist Attacks*, 03-MD-1570, R. 2538 (S.D.N.Y. Jan. 25, 2012).

On February 27, 2012, while the government's motion to strike was still pending, the claimants initiated a second, separate action to register their *In Re: Terrorist Attacks* judgment pursuant to 28 U.S.C. § 1963 (hereinafter, the "enforcement action"). E.A. 1. The claimants did not provide notice of their enforcement action, which was docketed before Judge Gettleman as *Art Insurance Co., et al. v. Al Qaeda*, No 1:12-cv-1346 (N.D. Ill. February 27, 2012), to either the government or this Court. E.A. 1. Instead, on March 13, 2012, the claimants filed a praecipe for a writ of execution in which they asked Judge Gettleman to direct the United States Marshals Service to execute their al-Qaeda judgment against the defendant funds. E.A. 5. Then, on April

---

[5] The Court did not resolve whether or not the claimants had the requisite constitutional standing to intervene in the forfeiture action, ruling that it did not need to reach the constitutional question given the lack of the claimants' statutory and prudential standing. R. 74 at 8.

[6] In fact, contrary to their earlier assertions, *see, e.g.*, R. 10-12, the claimants did not actually have default judgments against al-Qaeda, but merely orders of default. R. 74 at 4.

6, 2012, the claimants used the enforcement action to serve an alleged citation to discover assets on the United States Marshals Service. E.A. 8.[7] Again, the claimants failed to provide notice to the Court of their enforcement action proceeding. E.A. 5, 8. On April 10, 2012, Judge Gettleman ordered the writ of execution requested by the claimants. E.A. 9. The claimants tehn filed the instant motion, arguing that they should be allowed to amend their now-stricken forfeiture claims, because, according to the claimants, they have *now* acquired an ownership interest in the defendant funds (*i.e.*, have obtained a lien against those funds) based on the enforcement action proceedings. R. 77.

Despite their claim to the contrary, the claimants do not have a have a valid lien against or other interest in the defendant funds. Moreover, the claimants continue to lack standing to intervene in this forfeiture case because, irrespective of the legal import of their filings in the enforcement action, the claimants cannot improve their claims to the defendant funds in this forfeiture case through collateral proceedings. In addition, even if it were possible to obtain a lien against the defendant funds at this stage of the government's forfeiture proceeding, that lien would be subordinate to the government's claim for forfeiture and the claimants would continue to lack prudential standing because they cannot qualify as *bona fide* purchasers for value of the defendant funds. Finally, the claimants' proposed claims are futile because the claimants continue to lack constitutional and statutory standing. Thus, despite their ongoing efforts to pursue al-Qaeda assets in the *In Re: Terrorist Attacks* litigation and the enforcement action, the claimants do not now have and cannot acquire a cognizable claim to the defendant funds. Any

---

[7] The citation purported to compel the Marshals Service, *inter alia*, to produce documents and records concerning al-Qaeda assets in its possession and control and to present a representative to appear in open court "to be examined under oath." E.A. 8.

4

effort to amend their claims and answers would therefore be futile and, accordingly, should be rejected.

*Argument*

The Court should deny the claimants' motion for leave to amend because any amendment to their forfeiture pleadings would be futile.[8] *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (courts may deny leave to amend under Federal Rule of Civil Procedure 15(a)(2) when amendment would be futile). Although the Federal Rules of Civil Procedure generally provide a litigant the opportunity to amend its pleadings, *see* Fed. R. Civ. P. 15(a), a district court should deny a party leave to amend when doing so would be a futile act. *See Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985) ("The liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures."). A proposed amended claim is deemed futile when, if granted, it would not present a claim upon which relief could be granted. Thus, if the claimants' proposed modified pleadings would be vulnerable to a subsequent motion to strike, the Court need not engage in the unnecessary gesture of allowing the claimants leave to amend simply to dispose of those claims at a later date. *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) ("An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment."). As explained herein, any proposed amendment to the claimants' pleadings would be subject to dismissal and therefore futile.

---

[8] Although the claimants have entitled their motion as one seeking leave to amend their pleadings, the motion is more aptly described as a motion to file late claims, as, at this time, the claimants have no pending claims to amend.

I.     **THE CLAIMANTS DO NOT HAVE, AND CANNOT ACQUIRE, AN OWNERSHIP INTEREST IN THE DEFENDANT FUNDS.**

As this Court has already held, the claimants did not have an ownership interest in the defendant funds when this forfeiture action began. R. 74. The claimants, however, allege that they have now acquired such an interest by pursuing enforcement proceedings designed to obtain a lien against the defendant funds. R. 77, ¶¶ 20, 23-27. In particular, the claimants argue that by obtaining a writ of execution against the defendant funds and serving a citation to discover assets to the United States Marshals Service, they have acquired a lien against the defendant funds under Illinois law. *Id.*, ¶ 27. The claimants' motion for leave is therefore premised on the validity of the writ and citation issued in the execution action. It is a premise that cannot withstand scrutiny.

The claimants' writ of execution and citation to discover assets were issued *ultra vires*, and, accordingly, must be quashed. The writ of execution and citation to discover assets were issued in violation of the government's sovereign immunity and the respect and comity between courts protected by the doctrines of prior exclusive jurisdiction and *in custodia legis*. As explained in the government's *Memorandum of Law in Support of its Motion to Quash Writ of Execution and Citation to Discover Assets* (hereinafter, "motion to quash"), which is being filed in the execution action contemporaneously herewith, and is incorporated herein by reference, the writ and citation are barred by these three doctrines and, accordingly, must be quashed.

Without the purported lien established against the defendant funds that the claimants argue they have obtained as a result of the execution action, the claimants' proposed amended claims are effectively identical to the claims previously stricken by the Court for want of standing. Thus, allowing the claimants to amend their claims to present allegations premised solely on those invalid liens is unnecessary and should be rejected.

II.     **THE CLAIMANTS' ALLEGED INTEREST IN THE DEFENDANT FUNDS WAS DETERMINED AT THE TIME THE GOVERNMENT FILED ITS COMPLAINT.**

As the Court held in its *Memorandum Opinion and Order*, to have statutory standing to appear as a claimant in an asset forfeiture action, a claimant must demonstrate that it has "an interest in the specific property to be forfeited" as contemplated by Supplemental Rule G. R. 74 at 11; *see* Fed. R. Civ. P. Supp. G(5)(a)(i)(B). A putative claimant must obtain that particularized interest in the property subject to forfeiture *prior* to filing a claim in the case. As the Court in *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191 (D.D.C. 2011) explained, "the requirement that a claimant state its interest at the commencement of a forfeiture action suggests that the interest must be in existence at that time." *Id.* at 202-203. Accordingly, a claimant cannot "improve" its interest in the subject *res* after filing its claim. *See, e.g.*, *id.*; *United States v. 133 U.S. Postal Service Money Orders*, 780 F. Supp. 2d 1084, 1094-95 (D. Haw. 2011) (Corporation did not have standing because it failed to record a judgment against the defendant property until after it was seized for forfeiture by the government); *United States v. Unit H-310 Apusento Garden*, Case No. 07-00006, 2011 WL 3715283, at *4 (D. Guam Aug. 24, 2011) (hereinafter, "*Apusento Garden*") ("To have a cognizable interest, the claimant must acquire the interest in forfeitable property before the government asserts its right to forfeiture."); *United States v. $319,603.42*, 829 F. Supp. 1223, 1224 (D. Or. 1992) (Judgment creditor did not have standing because she did not perfect a lien on the specific property before it was seized by the government); *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808, 811 (E.D. Ky. 1989) (hereinafter, "*One 1965 Cessna*") ("The property interest of a claimant in a forfeiture case must predate the right to forfeiture asserted by the United States."). As the Court has already found, the claimants did not have a secured interest in the specific defendant funds at the time the government initiated this

forfeiture action. R. 74. The claimants' ability to obtain a judgment lien against the defendant funds now is irrelevant. The deficiency in their statutory standing that existed when they filed their original claims remains dispositive. Thus, a change in their proposed pleadings to include allegations relating to developments in the enforcement action would be futile.

The justification for requiring that a claimant's interest pre-date the filing of the forfeiture action is based, in part, on the relation back doctrine. Under this statutory principal, ownership of forfeitable property is deemed to vest in the United States at the time of the underlying offenses giving rise to forfeiture. 18 U.S.C. § 981(f). In particular, Section 981(f) of the civil forfeiture statute provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." *Id.* Under the relation back rule, seizure of the defendant property and subsequent decree of forfeiture merely confirms the transfer in title to the United States that occurred at the time the property was used for unlawful purposes. *See United States v. Stowell*, 133 U.S. 1, 16-17 (1890) ("By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States."). Courts have long recognized that this relation back principle operates to trump interests in property that post-date the underlying criminal offenses, unless, of course, a claimant can establish that it acquired its interest in the property as an "innocent owner." 18 U.S.C. § 983(d); *see United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 129 (1993).

As a corollary to the relation back doctrine and a practical requirement of the innocent owner defense, the law requires that a claimant acquire its interest in the property subject to

8

forfeiture prior to the initiation of the forfeiture proceedings. As the court *Bank Julius Baer & Co.* court explained:

> A claimant cannot defeat the government's claim to forfeitable property by asserting an interest acquired after the commission of the criminal acts leading to the forfeiture unless the claimant "did not know and was reasonably without cause to believe that the property was subject to forfeiture" at the time the interest was acquired. 18 U.S.C. § 983(d)(3)(A)(ii). The statutory structure of Section 983 thus does not contemplate that a claimant may, as [the claimant] claims to have done, acquire an interest years after first asserting a claim in forfeiture litigation.

*Bank Julius Baer & Co.*, 772 F. Supp. 2d at 202-203.

There are, of course, sound policy reasons underlying this well-accepted rule. An individual or entity with an *in personam* judgment against a wrongdoer can usually reduce that judgment to a lien against the wrongdoer's personal property. If victims-claimants with unsecured claims against criminally-liable tortfeasors (*i.e.*, defendants) were able to improve their claim status through *in personam* cases against those defendants after they received notice that a forfeiture action had been filed, government forfeiture actions would become mired by collateral proceedings. Claimants' efforts to obtain liens against property sought for forfeiture would continue long past the initiation of forfeiture proceedings as prospective claimants would be incentivized to delay the forfeiture actions while they sought to acquire judgment liens. Such piecemeal, collateral litigation would not only be inefficient, but could result in inconsistent, if not contradictory, resolutions regarding the parties' interests. *See McRaith v. Leading Edge Group Holdings, Inc.*, No. 10-3351, 2010 WL 4446852, *3 (D.N.J. Nov. 1, 2010) (rejecting a claimant's proposed collateral declaratory judgment action as an "inefficient and piecemeal resolution of claims to the funds" that could result in a determination "at odds with the forfeiture action's resolution of claims and potentially prejudice the interests of other claimants, including importantly the interests of the United States.").

9

Courts have, accordingly, consistently rejected claimants' efforts to "improve" their forfeiture claims by perfecting otherwise unsecured claims against property after a forfeiture case has been filed. *See, e.g.*, *Bank Julius Baer & Co.*, 772 F. Supp. 2d at 202-203; *133 U.S. Postal Service Money Orders*, 780 F. Supp. 2d at 1094-95; *Apusento Garden*, 2011 WL 3715283, at *4; *$319,603.42*, 829 F. Supp. at 1224; *One 1965 Cessna*, 715 F. Supp. at 811. By way of example, the court in *Apusento Garden* rejected a victim-claimant's efforts to perfect its claim against property subject to forfeiture. In *Apusento Garden*, the victim of a check-kiting scheme filed suit against the co-schemers months before the United States initiated its civil forfeiture action against the same wrongdoers' property. *Apusento Garden*, 2011 WL 3715283, at *1-2. Although the proposed claimant's litigation predated the forfeiture action, its suit was not fully adjudicated until six months after the government had initiated its *in rem* proceeding. *Id.* After obtaining a default judgment, the claimant attempted to record a judgment lien against the criminal defendant's property, including the property that was the subject of the government's forfeiture action. *Id.* Notwithstanding these efforts, the *Apusento Garden* court held that the claimant lacked standing to challenge the government's forfeiture. *Id.* at 4. In particular, the court explained that "[t]o have a cognizable interest, the claimant must acquire the interest in forfeitable property *before the government asserts its right to forfeiture*." *Id*. (emphasis added). The court therefore concluded that "whatever interest [the claimant] may have derived from perfecting the Judgment Lien, it is not a cognizable interest that confers standing." *Id*.

The court in *One 1965 Cessna*, 715 F. Supp. 808, similarly rejected a claimant's delinquent efforts to perfect its interest in property subject to forfeiture. In *One 1965 Cessna*, the claimant lent a drug smuggler $30,000, secured by the borrower's airplane. *Id*. at 809. The loan was memorialized by a hand-written contract, which the lender failed to record as required by the

10

state's uniform commercial code. When the borrower used the plane to transport marijuana, the government filed a complaint to forfeit the plane. *Id.* Days later, the lender filed a state court action seeking a declaration of his security interest in the plane, which the court subsequently granted. *Id.* at 810. The forfeiture court, however, rejected the lender's claim due to the invalidity of his delinquently-obtained security interest. *Id.* at 811. The court explained,

> Even if the state court judgment did give the claimant the status of a secured creditor, that action was initiated thirty-four days after the United States instituted forfeiture proceedings against the Cessna in federal court. The property interest of a claimant in a forfeiture case must predate the right to forfeiture asserted by the United States.

*Id.* Because it did not, the *One 1965 Cessna* court dismissed the lender's claim. *Id.* at 812. Thus, even if the claimants had obtained a valid lien against the defendant funds under Illinois law, the acquisition of that supposed lien at this late date would be insufficient to confer the necessary standing for them to intervene in this case.

**III. THE CLAIMANTS CANNOT CONSTITUTE INNOCENT OWNERS AND WILL, ACCORDINGLY, CONTINUE TO LACK PRUDENTIAL STANDING.**

The claimants proposed amended claims are also futile because, irrespective of the validity of any lien obtained under Illinois state law, the claimants will continue to lack prudential standing in this forfeiture action. In its *Memorandum Opinion and Order*, the Court held that the claimants lacked prudential standing because they did not qualify as "innocent owners." The Court explained that only innocent owners fell within the "zone of interests" the forfeiture statutes were designed to protect. R. 74 at 9-11 (citing *United States v. $500,000*, 591 F.3d 402 (5th Cir. 2009); *United States v. $133,803.53,* 683 F. Supp. 2d 1090 (E.D. Cal. 2010); *United States v. Real Property Located at 730 Glen-Mady Way,* 590 F. Supp. 2d 1295 (E.D. Cal. 2008)). The Court determined that, as general unsecured creditors, the claimants did not qualify

11

as "owners" and could, accordingly, never qualify as "innocent owners" under 18 U.S.C. 983(d)(3)(A). R. 74 at 11.

Irrespective of their efforts to obtain a lien against, and therefore qualify as "owners" of, the defendant funds, the claimants will continue to lack prudential standing because they will never be able to qualify as "innocent owners." *See* 18 U.S.C. § 983(d)(3)(A). The claimants allege that they obtained and perfected their purported lien in the defendant funds in April 2012. This alleged interest post-dates the government's interest in the defendant funds, which, under the relation back doctrine, vested in 2005. *See* 18 U.S.C. § 981(f); R. 1 at ¶¶ 13-19 (noting the transfer of the defendant funds into the United States). The claimants can therefore only qualify as "innocent owners" of the defendant funds if, at the time that they acquired their interest in those funds, they were (1) *bona fide* purchasers for value, that (2) did not know and were reasonably without cause to believe the defendant funds were subject to forfeiture. 18 U.S.C. § 983(d)(3)(A); *United States v. 6124 Mary Lane Drive*, No. 3:03CV580, 2008 WL 3925074, at *2 (W.D.N.C. Aug. 20, 2008). It is a standard that the claimants cannot satisfy.

The claimants were undoubtedly aware that the defendant funds were subject to forfeiture when they obtained their purported lien in April 2012 – they had already tried to intervene (albeit unsuccessfully) in the government's forfeiture action. R. 10-12, 17-19. Moreover, the claimants had, in their now-stricken answers, acknowledged that the defendant funds constituted terrorist assets. R. 17-19. The claimants also did not provide value, as that particular term is defined by the forfeiture statutes, to obtain their purported lien. In general, the acquisition of a judgment lien against an asset does not equate to providing value. *See United States v. BCCI Holdings (Lux.) S.A.*, 69 F. Supp. 2d 36, 61-62 (D.D.C. 1999) (judgment creditor who obtains a lien is not a *bona fide* purchaser because provide value under the forfeiture statute in exchange for the lien);

*Unit H-310 Apusento Garden*, 2011 WL 3715283, at *5 n.7 (same); *United States v. Jamieson*, No. 3:02 CR 707, 2007 WL 275966, at *6 (N.D. Ohio Jan. 26, 2007) (same). The claimants therefore cannot satisfy the statutory elements of "innocent ownership." Again, irrespective of the lien that they claim to have obtained, the claimants will continue to lack prudential standing, such that their motion to amend should be denied.

### IV. THE CLAIMANTS CONTINUE TO LACK CONSTITUTIONAL STANDING.

In order to invoke the court's jurisdiction, a claimant must also establish that it has constitutional standing, *i.e.*, that it has a genuine stake in the outcome of the case; otherwise, there is no "case or controversy" for the Court to adjudicate as required by Article III of the Constitution. *See* U.S. Const. art. III, § 2; *United States v. $103,387.27*, 863 F.2d 555, 560 n.10 (7th Cir. 1988) ("To contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing, otherwise there is no 'case or controversy.'"). To establish this constitutional standing, a proposed forfeiture claimant must show that it has "a legally cognizable interest in the property that will be injured if the property is forfeited to the government." *United States v. $38,000*, 816 F.2d 1538, 1543 n.12 (11th Cir. 1987). If a claimant fails to establish such an interest, its claim must be dismissed (*i.e.*, stricken) for want of jurisdiction. *See $103,387.27*, 863 F.2d at 560 n.10; Fed. R. Civ. P. Supp. G(8)(c)(i)(B).

As unsecured creditors of al-Qaeda, the claimants could not obtain a colorable ownership or legally cognizable interest in the specific defendant funds and therefore constitutional standing. *See, e.g., United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004) (To establish constitutional standing, a claimant must demonstrate that it has an interest in the particular property to be forfeited); *One United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket*, 326 F.3d 36, 41 (1st Cir.

2003) (same); *United States v. Commodity Account No. 549 54930*, No. 96 C 8423, 1999 WL 91910, at *1 (N.D. Ill. Feb. 11, 1999) (claimant must show it has an interest in "at least a portion of the property seized").

In its motion to strike, the government argued that the Court should strike the claimants' originally-filed claims for, *inter alia*, want of constitutional standing. *See* R. 43. While acknowledging a claimant's need to establish constitutional standing, the Court held that it was not required to determine whether the defendants could meet that threshold because they had failed to satisfy forfeiture's statutory and prudential standing requirements. R. 74 at 8. ("[T]he Court need not grapple with the distinctions between Article III standing and statutory standing. . . ., it is clear that claimants lack statutory standing to challenge the forfeiture."). Although, for the reasons articulated above, the Court will still not need to resolve the question of the claimants' constitutional standing, the government respectfully submits that the claimants continue to lack such standing.

The fact that the claimants did not have a legally colorable claim to the defendant funds at the time that they filed their claims is constitutionally dispositive. If constitutional standing does not exist at the onset of litigation, it cannot be created through subsequent events. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (standing that does not exist at the onset of litigation cannot be created through subsequent events); *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (collecting cases); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383-84 (Fed. Cir. 2010) (plaintiff's lack of standing at the onset of a declaratory judgment action could not be remedied by defendant's subsequent action creating case and controversy). Thus, any amendment to the claimants' claims now would be futile. Accordingly, the claimants' should not be allowed to amend their pleadings.

## *Conclusion*

For all the foregoing reasons, the United States respectfully asks this Court to deny the claimants' second motion for leave to file amended claims and answers as futile.

        Respectfully submitted,

        PATRICK J. FITZGERALD
        United States Attorney

By:  s/ Joel Hammerman    /
        JOEL HAMMERMAN
        Assistant United States Attorney
        219 South Dearborn, Room 500
        Chicago, Illinois 60604

        JENNIFER SHASKY CALVERY
        Chief, Asset Forfeiture and Money Laundering Section

By:  s/ Jean Weld      /
        FREDERICK REYNOLDS
        Deputy Chief, Forfeiture Unit
        JEAN B. WELD
        Senior Trial Attorney
        KONDI KLEINMAN
        Trial Attorney
        U.S. Department of Justice, Criminal Division
        1400 New York Ave., NW, Suite 10100
        Washington, D.C. 20530