**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| v. | No. 1:11-CV-4175 |
| ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6, | Judge Matthew F. Kennelly |
| Defendant | |

**CLAIMANTS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED
VERIFIED CLAIMS AND AMENDED ANSWERS TO PLAINTIFF'S VERIFIED
COMPLAINT FOR FORFEITURE**

Claimants file this Reply Brief in support of their Motion for Leave to File Amended Verified Claims and Amended Answers to address the arguments set forth in the response briefs filed by the United States. For the reasons that follow, Claimants respectfully submit that leave should be granted.

1.     **PRELIMINARY STATEMENT**

By order dated March 27, 2012, this Court granted the Government's Motion to Strike Claimants' Verified Claims and Answers and denied Claimants' Motion for Leave to Amend, explaining that Claimants lacked statutory standing and thus did not have the requisite interest in the property. Claimants perfected their lien against the Defendant Funds on April 10, 2012. Immediately thereafter, on April 11, 2012, Claimants filed a Motion for Leave to File Amended Verified Claims and Amended Answers to Plaintiffs Verified Complaint for Forfeiture. On June 8, 2012, the United States filed its Opposition to Claimants' Motion for Leave to Amend their

Verified Claims and Answers, asserting that any proposed amendment was futile and should not be granted. Insofar as the Claimants' lien clearly is relevant to the assertion that Claimants have priority entitlement to the Defendant Funds, this amendment is not futile. Accordingly, Claimants' Motion for Leave to Amend should be granted.

2.      **ARGUMENT**

      A.      <u>**Claimants' Proposed Amendments Are Not Futile.**</u>

The United States Government contends that Claimants' motion for leave should be denied because the claims are identical to those previously stricken by this Court, and any proposed amendment would be futile. These arguments are flawed. Shortly after this Court granted the Government's Motion to Strike, Claimants perfected their lien against the Defendant Funds and acquired a specific interest in same. As explained further in Plaintiffs' Objection to United States' Motion to Quash Writ of Execution and Citation to Discover Assets, which is being filed in the execution action contemporaneously herewith and is incorporated herein by reference, the writ and citation to discover assets are valid and enforceable.

This Court previously held that, without a lien against the Defendant Funds, Claimants did not possess an interest in the subject property sufficient to satisfy the standing requirements. Claimants respectfully submit that they should be granted leave to amend their claims to reflect the perfected lien.

Under the law of this Circuit, leave to amend a claim should be denied on the basis of futility only where the movant is unable to state a claim upon which relief can be granted. <u>See, e.g.,</u> <u>Sommerfield v. City of Chicago</u>, No. 06 C 3132, 2008 U.S. Dist. LEXIS 35324, *18 (N.D. Ill. Apr. 29, 2008) ("a inquiry into the merits is premature on a Rule 15 motion"); <u>Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs.</u>, 05 C 5622, 2006 U.S. Dist. LEXIS 41757, *3-4 (N.D. Ill.

June 6, 2006) (granting leave to amend where plaintiff may be able to allege sufficient facts to withstand motion to dismiss); Thomas & Betts Corp. v. Panduit Corp., 93 C 4017, 1999 U.S. Dist. LEXIS 1771, *10 (N.D. Ill. Feb. 17, 1999) ("leave to amend should be freely given unless it appears to a certainty that [the party could not prevail] under any state of facts which could be proved in support of his claim"). Claimants have demonstrated that by acquiring the lien, they have an interest in the specific property to be forfeited, and an actual stake in the outcome of the suit sufficient to withstand a standing inquiry.

Claimants should be permitted to file amended claims reflecting their interest in the Defendant Funds. To the extent that the Government alleges that the perfected lien does not create the requisite interest, Claimants should be afforded an opportunity to address this claim on the merits.

**B.    Claimants Have Standing in the Forfeiture Action By Virtue of their Lien Against the Defendant Funds**

1.    The Relation Back Doctrine is Inapplicable to the Standing Inquiry

The Government asserts that the relation back doctrine precludes Claimants from acquiring an interest in the property after the filing of the forfeiture action. Specifically, the Government contends that title vested in the United States on the date of the commission of the act giving rise to the forfeiture, which in this case was in 2005, when Muhammad Abdallah Abdan Al Ghamdi, also known as Abu al Tayyeb, acquired the funds. Taken to its logical end, the Government's position implies that simply by filing a forfeiture action, the executive essentially is empowered to render all assets immune from attachment.

Adherence to the relation back doctrine in this context would eviscerate the purpose of the Terrorism Risk Insurance Act ("TRIA"). Section 201 of TRIA reads, in relevant part:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of

terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

In 2002, Congress enacted TRIA to "establish[], once and for all, that such judgments are to be enforced against *any assets* available in the U.S., and that the executive branch has *no statutory authority* to defeat such enforcement under standard judicial processes, *except as expressly provided* in this act." United States v. Holy Land Found. for Relief & Dev., No. 3:04-CR-0240-P, 2011 U.S. Dist. LEXIS 46155, *10 (N.D. Tex. Apr. 27, 2011).

In nearly every situation, the commission of the act subjecting assets to forfeiture will predate the victim's judgment against the perpetrator. The forfeiture scheme thus provides the Government with the ability to initiate a forfeiture proceeding and automatically trump any efforts made by victims of terrorism to attach terrorist-related assets in satisfaction of valid judgments.[1] This construction effectively would place the assets beyond the reach of the proposed claimants, rendering TRIA's "notwithstanding any other provision of law" language meaningless. This surely was not Congress' intent.

Additionally, this position is inconsistent with the court's holding in Holy Land. In that case, the court held that claimants in a forfeiture action were entitled to attach assets in satisfaction of their judgment irrespective of the Government's forfeiture proceeding. In so holding, the court rejected the Government's contention that the assets had vested in the United States before the petitioners obtained a judgment and sought to attach assets in satisfaction thereof.

---

[1] Claimants note that the Defendant Funds in the case at bar have been blocked since June 2007, but the Government made no effort whatsoever to seek their forfeiture for over four years. The Government initiated its forfeiture action on June 19, 2011, only after learning that the logjam in Claimants' New York lawsuit would soon be resolved. While the Government contends that the delay was coincidental, and merely a result of its prolonged investigation, the position taken by the Government both authorizes and incentivizes precisely this behavior.

4

The petitioners in <u>Holy Land</u> were nine American citizens who were injured in Jerusalem in a September 5, 1997 suicide bombing orchestrated by the Hamas terrorist organization. In May 2002, the petitioners filed suit against Hamas in the United States District Court for the District of Columbia. Hamas defaulted in the action. In September 2004, the court entered judgment for the petitioners and against Hamas in the amount of $214.5 million. The petitioners became aware that Holy Land Foundation for Relief & Development ("HLF") was an instrumentality of Hamas, and that HLF funds were kept in financial institutions located in district courts throughout the United States. The petitioners registered their default judgment and initiated execution proceedings against the funds, obtaining writs of execution against the HLF funds in New York and Washington federal court.

Meanwhile, on July 26, 2004, nearly two months before the court entered a default judgment against the petitioners, the Government filed an indictment against HLF seeking forfeiture of $12.4 million in terrorist funds. The Government obtained a restraining order that prevented dissemination of HLF funds during the pendency of the criminal proceedings. On November 24, 2008, HLF was convicted by a federal jury. On February 5, 2009, the Court entered a preliminary order of forfeiture of the HLF funds pursuant to 21 U.S.C. § 853(n), and directed that HLF's bank accounts should be forfeited to the Government. As required by the forfeiture statute, the United States Attorney's Office gave petitioners notice of the preliminary order of forfeiture and advised that the petitioners had thirty days in which to assert a legal interest in the property. The petitioners did so, asserting that TRIA permitted attachment of HLF's blocked assets because the statute applied "notwithstanding any other provision of law."

The Government argued that the petitioners could not attach the assets in satisfaction of their judgment because they were not "blocked assets of a terrorist party" subject to attachment under TRIA. The Government asserted that upon HLF's conviction, the HLF funds were vested

with the United States by virtue of the relation-back doctrine, and that the assets therefore were

vested with the United States when the petitioners' judgments were entered. The court rejected

this argument, explaining:

> The rationale for the relation-back doctrine is to prevent improper transfer of
> forfeitable property. . . . Allowing terrorist victims to seize the terrorists' assets
> will in fact, further the purpose of the relation-back doctrine by ensuring the
> terrorist organization's property is in the hands of the victims themselves instead
> of the hands of the criminal. Similarly, allowing the government to seize HLF's
> property instead of using it to compensate HLF's victims frustrates the purpose of
> TRIA, which was enacted to provide compensation for victims of terrorists'
> assets.

Id. at *19.

The Government cautions that forfeiture actions would become "mired by collateral

proceedings" if Claimants are permitted to obtain liens against property sought for forfeiture at

any time after the initiation of the forfeiture proceeding. Claimants do not propose that the Court

fashion a rule unlimited in scope. However, in this particular matter, the relation back doctrine

does not apply to prevent Claimants from stating a claim to the Defendant Funds. In addition,

sufficient safeguards exist as potential claimants nonetheless would be required to comply with

the other statutory and substantive requirements of the forfeiture scheme.[2]

Moreover, the Government's position in this regard does not properly account for the

unique procedural posture and facts at issue. In the instant matter, Claimants obtained this

Court's equivalent of an order of default against al Qaeda on April 7, 2006. Claimants

diligently pursued a final judgment from the United States District Court for the Southern

---

[2] Claimants recognize that there may be circumstances in which a party's interest in particular property is
insufficiently defined at the initiation of the forfeiture proceeding, and that such interest may not satisfy the
constitutional standing requirement. However, those issues are not before the Court in the instant matter. Under
these particularly unique facts, Claimants initiated liability proceedings nearly nine years prior to the institution of
the forfeiture action, and diligently pursued a final judgment which, through no fault of their own, they were unable
to obtain prior to the date the Government filed the forfeiture suit. Thus, Claimants' interest in the subject property
clearly provides them with an actual stake in the outcome of the litigation sufficient to withstand this Court's
standing inquiry.

District of New York over a period of years, and were deprived of same solely as a result of the inaction of a third party. The final judgment was not entered by the Clerk of the Court until January 25, 2012, after which Claimants promptly initiated efforts to perfect liens against the Defendant Funds.

Claimants' acquisition of this lien is sufficient to confer standing to intervene in the forfeiture action. As the existence of the lien is relevant to Claimants' argument that they are entitled to the Defendant Funds, an amendment to the pleadings on this basis would not be futile.

2.    Claimants Have an Actual Stake in the Outcome of the Suit Which is Sufficient to Confer Standing in the Forfeiture Action

The Seventh Circuit adheres to the traditional "actual injury" analysis in evaluating constitutional standing in civil forfeiture proceedings. See United States v. 5 S. 351 Tuthill Rd., 233 F.3d 1017 (7th Cir. 2000). In order to satisfy Article III, Claimants must allege: (1) an immediate threat of injury; (2) fairly traceable to the defendant's conduct; that (3) a favorable federal court decision likely would redress or remedy. Id. at 1022 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992)). There is no dispute that Claimants would be permitted to attach the Defendant Funds in satisfaction of their judgment in the absence of the forfeiture action. In addition, if the Defendant Funds are forfeited, Claimants will suffer an actual injury in that they will lose the opportunity to attach the funds. As such, Claimants have an actual stake in the outcome of the suit sufficient to confer standing in this action, and Defendants' arguments to the contrary must fail.

The Government cites to number of decisions from different jurisdictions which purport to hold that Claimants lack prudential and constitutional standing because they are not within the "zone of interests" the forfeiture statutes were designed to protect, and they cannot, at this point, claim an interest in the specific property to be forfeited. See, e.g., United States v. One-Sixth

7

<u>Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No.</u>
<u>M246233</u>, 326 F.3d 36, 41 (1st Cir. 2003). These decisions apply this heightened standard under the guise of an Article III analysis; however, a closer analysis of the case law demonstrates that whether Claimants have an interest in the specific property is a consideration relevant only to the statutory standing analysis. As in <u>5 S. 351 Tuthill</u>, it would be "particularly imprudent to adopt without a specific reason a test that appears to increase the harshness of the forfeiture remedy." 233 F.3d at 1023. To hold otherwise is "refusing to provide an avenue of legal redress. One might call it judicial abdication in the service of judicial activism." <u>Id.</u>

There is no doubt that in the instant matter, Claimants have an actual stake in the outcome of the suit, and the Court is "refereeing an actual, rather than a hypothetical, dispute." <u>Id.</u> Claimants have cured the statutory standing defect by acquiring a perfected lien in the Defendant Funds. Accordingly, Claimants' proposed amended pleadings are not futile, and Claimants should be permitted to litigate these issues on the merits.

**3.     CONCLUSION**

For the foregoing reasons, and those set forth in the Claimants' Memorandum of Law in Support of Their Motion for Leave to Amend, Claimants respectfully request that the Court grant their request to amend their Verified Claims and Answers to reflect the existence of their liens against the Defendant Funds.

Respectfully submitted,

COZEN O'CONNOR

/s/ James I. Tarman, Jr._____
James I. Tarman, Jr., Esquire
Illinois State bar # 06274360
Cozen O'Connor
333 West Wacker Drive
Chicago, IL 60606-1293
312-382-3100

Attorneys For Claimants, Vigilant Insurance
Company, Chubb Custom Insurance Company,
Chubb Indemnity Insurance Company, Federal
Insurance Company, Chubb Insurance Company Of
New Jersey, Chubb Insurance Company Of Canada,
Pacific Indemnity Company, Great Northern
Insurance Company, American Alternative
Insurance Company, The Princeton Excess &
Surplus Lines Insurance Company, Great Lakes UK
Insurance Company, and One Beacon Insurance
Group