Exhibit "B"

Case: 1:11-cv-04175 Document #: 97-2 Filed: 10/01/12 Page 2 of 13 PageID #:1007

Case 1:03-md-01570-GBD-FM   Document 2479   Filed 10/14/11   Page 1 of 12
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In Re:                                            :      REPORT AND
                                                         RECOMMENDATION
          TERRORIST ATTACKS ON                    :      TO THE HONORABLE
          SEPTEMBER 11, 2001                             <u>GEORGE B. DANIELS</u>
                                                  :
------------------------------------------------------------x     03 MDL 1570 (GBD) (FM)

This Document Relates to
<u>Federal Insurance Co. v. al Qaeda</u>,
03 Civ. 6978 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

      On April 7, 2006, several plaintiffs in the <u>Federal Insurance</u> action obtained default judgments against al Qaeda and other defendants.[1] The Plaintiffs subsequently moved pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, <u>et seq.</u>, to assess damages against al Qaeda alone for injuries that their "property or business" sustained. (<u>See</u> ECF No. 688). The Plaintiffs contend that these damages (trebled) amount to $9,481,764,208.61.

      For the reasons set forth below, the Court should award the Plaintiffs damages against al Qaeda in the amount of $9,351,247,965.99.

---

[1] These Plaintiffs are AXA Art Insurance Company, AXA Global Risks (LTK) Ltd., AXA CSA UK Branch, AXA Insurance Company, AXA Reinsurance Company, AXA Re, AXA Re Canadian Branch, AXA Re UK Plc, AXA Versicherung, and SPS Re (collectively, "AXA"); Chubb Custom Insurance Company, Chubb Insurance Company of Canada, Chubb Insurance Company of New Jersey, Chubb Indemnity Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Pacific Indemnity Company, and Vigilant Insurance Company (collectively, "Chubb"); American Alternative Insurance Corporation, the Princeton Excess and Surplus Lines Insurance Company, and the Great Lakes (UK) Insurance Company (collectively, "MRAm"); OneBeacon; and TIG Insurance Company ("TIG"). (ECF No. 688).

I. <u>Standard of Review</u>

In light of al Qaeda's default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true. See <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Time Warner Cable of N.Y.C. v. Barnes</u>, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, a hearing is unnecessary.

II. <u>Facts</u>

The Plaintiffs have submitted five affidavits in support of their ATA damage claims. (<u>See</u> ECF No. 688-4 (Affirm. of Sean P. Carter, Esq., in Sup. of Pls.' Mot. to Assess Damages against Defaulted Defs. for Bus. and Prop. Claims under the ATA, dated Feb. 12, 2007) ("Carter Affirm."), Exs. C-G). In these affidavits, the Plaintiffs seek to recover two types of damages. First, the Plaintiffs ask to be made whole for claims that they paid to their insureds for business interruption, property damage, and

2

other losses resulting directly from the September 11th terrorist attacks. Second, the Plaintiffs, each of which is an insurance carrier, contend that they are entitled to "direct" damages in the form of claim adjustment costs and legal expenses associated with paying claims. Each of the Plaintiffs has submitted an individualized affidavit in support of its claim.

The Plaintiffs' affidavits each establish that the affiant has personal knowledge of the relevant plaintiff's day-to-day operations, (see, e.g., Carter Affirm., Ex. C ¶ 4), and that all of the claims for which recovery is sought were subject to an exacting adjustment process requiring compliance with well-established standards and procedures, (see, e.g., id. ¶ 5), as well as internal scrutiny and outside analysis by independent adjusters (see, e.g., id. ¶¶ 7-8). Through their affidavits and the attachments thereto, the plaintiffs allege damages for claims paid to insureds, reinsureds, and cedents in the following amounts:

| CARRIER | CLAIM |
|---|---|
| AXA | $539,784,217.34 |
| Chubb | 2,217,468,721.70 |
| MRAm | 107,230,501.59 |
| OneBeacon | 185,805,247.79 |
| TIG | 76,084,229.30 |
| Total | $3,126,372,917.72 |

3

(Carter Affirm., Exs. C ¶ 14, D ¶ 14, E ¶ 15, F ¶ 14, G ¶ 15).[2] The supporting schedules list the name of each policyholder, the associated policy number, and the amount paid on each claim. (See, e.g., Carter Affirm. Ex. C at Ex. A).[3]

In addition to their claims reimbursements, each of the Plaintiffs other than AXA has identified additional damages in the form of its expenditures associated with adjusting the underlying claims, including legal expenses. (See, e.g., Carter Affirm. Ex. D at Ex. B). The Plaintiffs' schedules, however, do not identify the recipients of these payments or show that they were reasonable and necessary.

III.   Damages

The Plaintiffs have brought multiple claims against numerous defaulting defendants as part of this multi-district litigation. At present, however, they seek an assessment of damages only against al Qaeda, based only on their ATA claims. (See 03 MDL 1570, ECF No. 2462; 03 Civ. 6978, ECF No. 688 ("Pls.' Br.") at 5).

The ATA provides in relevant part:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

---

[2]   Unlike the other plaintiffs, OneBeacon's claim schedule incorporates both its adjustment costs and its legal expenses into the single amount that it reports having paid to each of its insureds. (See Carter Affirm., Ex. F ¶¶ 15, 16).

[3]   These schedules have been submitted to the Court under seal.

4

18 U.S.C. § 2333(a).

    A.    <u>Subrogated Claims</u>

The Plaintiffs contend that the insurance claims that they paid as a consequence of the September 11th attacks constitute injury to their "property or business" within the meaning of the ATA, therefore entitling Plaintiffs to treble damages in excess of $9 billion.

To the extent that the Plaintiffs seek to recover amounts paid to their insureds, they unquestionably are subrogated to their insureds' ATA claims. "[T]he general rule is that upon payment of a loss the insurer is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss." Redington v. Touche Ross & Co., 592 F.2d 617, 624 (2d Cir. 1978), rev'd on other grounds, 442 U.S. 560 (1979) (quotation and citation omitted). Subrogation is an equitable remedy that "entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." Luna v. Am. Airlines, 769 F. Supp. 2d 231, 248 (S.D.N.Y. 2011) (quoting Northstar Reins. Corp. v. Cont'l Ins. Co., 82 N.Y.2d 281, 294 (1993). Therefore, the relevant inquiry is whether — and to what extent — the Plaintiffs' policyholders suffered damage to their "property or business" by reason of an act of international terrorism.

The Plaintiffs point to no case law discussing the proper measure of damages under the "property or business" prong of the ATA, nor am I aware of any.

5

Consequently, the Plaintiffs urge the Court to adopt the analysis applied to two other statutes with language nearly identical to that of the ATA: the Clayton Act, 15 U.S.C. §§ 12 et seq., and the civil RICO statute, 18 U.S.C. § 1964. The Clayton Act reads in relevant part:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained . . . .

15 U.S.C. § 15(a). The civil RICO statute contains similar language:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . and shall recover threefold the damages he sustains . . . .

18 U.S.C. § 1964(c).

Courts have interpreted the injury to "business or property" language broadly under both the Clayton Act and the civil RICO statute. As the Supreme Court stated in Reiter v. Sonotone Corp., 442 U.S. 330 (1979), a Clayton Act case, "the word 'property' has a naturally broad and inclusive meaning. . . . '[P]roperty' comprehends anything of material value owned or possessed." Id. at 338 (quoting Webster's Third New Int'l Dictionary 1818 (1961)). Money losses incurred by commercial enterprises constitute injuries to both "business" and "property." Id. at 339. Both statutes, however, also require a plaintiff to show that the defendant's statutory violation proximately caused plaintiff's damages. See Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268-69 (1992) (Congress intended both the RICO statute and Clayton Act to include the element of

6

proximate cause). In Holmes, the Court cautioned that "[a]llowing suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits." Id. at 274 (quotations, alterations, and citation omitted).

Applying the decisions interpreting the identical language of the Clayton Act and the civil RICO statute, the Plaintiffs here are clearly entitled to treble damages for any claims that they reasonably paid to insureds who suffered business and property damage as a result of the September 11th terrorist attacks. In that regard, in the context of an inquest, the Court must accept as true the factual allegations in the complaint, and the Plaintiffs are entitled to "all reasonable inferences" from their proffered evidence. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). As noted above, the Plaintiffs' affidavits identify each of the insurance claims they paid as compensation for property loss, business interruption, and related damages, and attest that these damages were directly caused by the September 11th terrorist attacks. (See, e.g., Carter Affirm., Ex. C ¶ 14 & Ex. A). The Plaintiffs further allege in their First Amended Complaint that al Qaeda orchestrated the September 11th attacks. (See 03 Civ. 6978, ECF No. 104). The Plaintiffs therefore are entitled to damages on their subrogation claims in the following amounts:

| CARRIER | AMOUNT |
|---|---|
| AXA | $539,784,217.34 |
| Chubb | 2,217,568,721.70 |
| MRAm | 107,320,501.59 |
| OneBeacon | 176,514,985.40 |
| TIG | 76,084,229.30 |
| Total | $3,117,272,655.33 |

The amount set forth for OneBeacon is less than the amount it seeks because, unlike the other carriers, OneBeacon failed to set forth its adjustment costs and legal expenses on a separate schedule. The other carriers collectively seek to recover such costs and expenses in sums which amount to 1.43 percent of their subrogated costs. To ensure that OneBeacon does not recover costs and expenses that exceed its actual subrogation outlays, I have reduced OneBeacon's recovery by 5 percent. This reduction is made without prejudice to a subsequent, more detailed application by OneBeacon.

Because the Plaintiffs are entitled to treble damages under the ATA, the total damages awarded to each plaintiff should be as follows:

8

| CARRIER | AMOUNT |
|---|---|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| Total | $9,351,247,965.99 |

B.   "Direct" Claims

In addition to their subrogated claims, the Plaintiffs also seek damages in the form of claim adjustment costs and legal expenses incidental to the payments made to their insureds. The Plaintiffs have failed to prove these damages in the manner required by Second Circuit case law. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (party seeking such an award of attorneys' fees must support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (hourly rate should reflect "what a reasonable, paying client would be willing to pay"). The Court therefore should deny without prejudice the Plaintiffs' motion insofar as it seeks damages for their "direct" claims.

9

Should the Plaintiffs seek to submit further evidence regarding their direct claims against al Qaeda or, in the future, against other defendants, they will have another, arguably greater hurdle to surmount. It is by no means clear that such damages are recoverable under the ATA. See Great Am. Ins. Co. v. United States, 575 F.2d 1031, 1033 (2d Cir. 1978) ("There is not a single reported case in American jurisprudence ... which holds that upon an insurance carrier's payment to its insured, the insurer becomes vested with a claim arising out of an implied contract of indemnity with the tortfeasor who caused the damage .... On the contrary, the authorities and the cases unanimously hold that the insurer's recovery is premised exclusively upon subrogation."); cf. Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229 (2d Cir. 1999) (labor union health funds and trusts could not recover from tobacco companies under RICO because the economic injuries caused by providing health care to smokers were too remote for funds to have standing to sue); Int'l Bhd. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc., 196 F.3d 818 (5th Cir. 1999) (funds and insurers who provided health care to smokers denied recovery from cigarette manufacturers under Sherman Act and RICO). The Plaintiffs consequently will have to establish their entitlement to direct damages before the Court could consider the appropriateness of the actual amounts sought.

IV. Conclusion

For the reasons set forth above, Plaintiffs should be awarded judgment on their subrogation claims against al Qaeda under the ATA as follows:

10

| CARRIER | AMOUNT |
|---|---|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| Total | $9,351,247,965.99 |

The Plaintiffs' additional claims for their adjustment costs and legal fees should be denied without prejudice.

VI. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels and to the Chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to

11

Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:    New York, New York
October 13, 2011

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

All counsel via ECF