**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| v. | No. 1:11-CV-4175 |
| ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6, | Judge Matthew F. Kennelly |
| Defendant | |

**CLAIMANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE**
**UNITED STATES' MOTIONS TO CERTIFY INTERLOCUTORY APPEALS**

The Government could easily obtain an efficient resolution of this matter and proceed quickly to an appeal of a final judgment. The Government has chosen instead, regrettably, to contort itself into a series of illogical and unsustainable legal positions simply to avoid allowing Claimants to collect the funds to which they are entitled by federal statute. Interlocutory appeal is merely a continuation of this unfortunate strategy of obfuscation. For the reasons that follow, Claimants respectfully urge Your Honor to deny certification.

I.     **Preliminary Statement**

The Court is already familiar with Claimants' efforts over the past decade to recover damages from al Qaeda terrorists and others responsible for the September 11, 2001 terrorist attacks. On September 25, 2012, Your Honor granted Claimants' motion to amend their verified claims filed in the forfeiture proceeding to reflect their established lien on the terrorist funds that are the subject of the forfeiture action. In that Order, the Court held that:

- The Terrorism Risk Insurance Act ("TRIA") expressly waives the Government's sovereign immunity. In particular, Section 201 of TRIA states unequivocally that persons holding a judgment against a terrorist party can execute against blocked assets "notwithstanding any other provision of law." Terrorism Risk Insurance Act of 2002 § 201(a), Pub. L. No. 107-197, 116 Stat. 2322, 2337. The Court further noted that its holding is consistent with Congress's intent in adopting TRIA, which was to provide a comprehensive mechanism for the enforcement of judgments by victims of terrorism. Your Honor recognized that adopting the Government's view of sovereign immunity would undermine, rather than vindicate, TRIA's fundamental purpose.

- Obtaining the writ and citation did not violate the doctrines of prior exclusive jurisdiction and *in custodia legis* because the "notwithstanding" provision of TRIA expressly supersedes any conflicting laws. Moreover, that provision of TRIA operates to overcome any barriers than the civil forfeiture statute might otherwise have imposed on the Claimants' efforts to amend their claims to reflect their interest in the defendant funds.

- Claimants possessed constitutional, statutory, and prudential standing to file a claim in the forfeiture action by virtue of their lien on the defendant funds, and amendment would not be futile. In support of that holding, Your Honor relied on controlling Seventh Circuit law, which applies an "undemanding" standard for constitutional standing. *United States v. 5 S. 351 Tuthill Road,* 233 F.3d 1017, 1022 (7th Cir. 2000); *see also United States v. $103,387.27,* 863 F.2d 555, 563 (7th Cir. 1988). The Court held that, even to the extent the civil forfeiture statute

2

might prevent Claimants from executing on their judgment, TRIA supersedes the statutory and prudential limitations.

The Court issued its Order nearly **ten** weeks ago — September 25, 2012. The only unresolved issue with any potential bearing on Claimants' entitlement to final judgment was a seemingly indisputable one: Whether al Qaeda had an interest in the seized defendant funds. Rather than make any progress toward obtaining a final judgment since September, however, the Government instead filed the instant motion for interlocutory appeal at the end of November.

## II.    The Proposed Issues for Certification Do Not Warrant Interlocutory Review.

The Government cannot satisfy the onerous standards to justify an interlocutory appeal. The Government "bears the heavy burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *In re Villasenor*, No. 11-cv-2214, 2011 U.S. Dist. LEXIS 103918, at *3 (C.D. Ill. Sept. 14, 2011); *Kirkland & Ellis v. CMI Corp.*, No. 95 C 7457, 1996 U.S. Dist. LEXIS 17542, at *6 (N.D. Ill. Nov. 19, 1996). In this Circuit, interlocutory review is "generally disfavored." *Holocaust Victims of Bank Theft v. Magyar Nemzeti Bank,* 807 F. Supp. 2d 699, 707 (N.D. Ill. 2011); *see also, e.g., Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 669 (7th Cir. 1999) (denying interlocutory review, and addressing reluctance of federal courts to grant such review); *Blair v. Equifax Check Serv., Inc.,* 181 F.3d 832, 835 (7th Cir. 1999) (noting that courts strongly discourage interlocutory appeals because they "interrupt[] the progress of a case and prolong[] its disposition"); *S.N.A. Nut. Co. v. Haagen Dazs-Dazs Co.*, No. 98 C 212, 1998 U.S. Dist. LEXIS 8491, at *2 (N.D. Ill. May 18, 1998) ("Interlocutory appeals are strongly disfavored because they encourage piecemeal litigation and are allowed only upon a showing of exceptional

circumstances"); *Resolution Trust Corp. v. Gravee*, No. 94 C 4589, 1995 U.S. Dist. LEXIS 16987, at *3 (N.D. Ill. 1995) (holding motions for interlocutory review should be granted "sparingly and with discrimination"). Here, the Government simply *disagrees* with this Court's legal rulings and wants a new slate of judges to hear those same arguments. That time will come, but that time is not now.

The Government's disagreements with Your Honor do not meet the standards for interlocutory review enunciated by the Seventh Circuit. The appellate court has instructed district judges to scrutinize several factors when determining whether to grant interlocutory review: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphases in original); 28 U.S.C. § 1292(b). In addition, the motion for certification must be "filed within a *reasonable time* after the order sought to be appealed." *Id.* (emphasis in original). The Seventh Circuit has emphasized that interlocutory review is not appropriate unless the movant satisfies its burden to prove each of these five factors. *Id.* at 676 ("Unless *all* these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal under section 1292(b).") (emphasis in original).

The Government does not, and cannot, satisfy this burden. Specifically, the Government's request for interlocutory review is untimely, the proposed issues for appeal are not "contestable," and certification assuredly will delay rather than "speed up" the litigation.

### A.  The Government's Motions are Untimely.

On September 25 2012, this Court granted Claimants' motion for leave to amend their verified claims and denied the Government's motion to quash the writ of execution and citation to discover assets.  The Government moved for certification of interlocutory appeals almost 60 days later, on November 23, 2012.  In this Circuit — as Your Honor warned the Government at the parties' November 20th status conference — "delay alone [i]s sufficient grounds" for a district court to reject a motion for interlocutory appeal.  *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000).

The Government's attempts to excuse its late filing are unpersuasive.  The Government argues that it deserves leniency because its  lead counsel traveled outside of the country for three weeks following the Court's decision, and because the Government was obligated to comply with a "significant internal review" prior to filing.  Those are all delays of the Government's own making.  They are not grounds to impose *still further* delays on this litigation.

During the time that the Government delayed the proceedings, Claimants continued to incur costs associated with pursuing the litigation, and their efforts to enforce their judgment were further delayed.   Under circumstances like these, "a two month delay [in filing a certification motion under §1292(b)] is not reasonable."  *In re: Yasmin & Yaz (Drospirenone) Mktg.*, No. 3:11-cv-20020-DRH-PMF, 2012 U.S. Dist. LEXIS 25899, at *5 (S.D. Ill. Feb. 29, 2012); *see also Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990) (rejecting interlocutory review and holding that 63-day delay between order and motion for certification was "as gratuitous as it was protracted").

The Government's motions for certification in this case constitute an "inexcusably dilatory request."  *Richardson Elecs.*, 202 F.3d at 958; *see also Weir*, 915 F.2d at 286.  The

Government cannot credibly say with its <u>words</u> that the extraordinary relief of interlocutory appeal is critically important, but say with its <u>actions</u> that the matter can wait two months even to make a decision to seek such relief. This Court should deny certification as untimely.

## B.     The Proposed Issues for Appeal are Not "Contestable."

"Reasonable minds may differ" is not the standard for "contestability" under Section 1292(b). Rather, the standard connotes not just the existence of countervailing legal authority, but a *substantial* amount of such authority: "A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Fairley v. Andrews,* No. 03 C 5207, 2007 U.S. Dist. LEXIS 70539, at *33 (N.D. Ill. Sept. 24, 2007). The Government comes nowhere close to meeting this burden.

The Government's proposed issues[1] on appeal are supported by *neither* substantial controlling authority *nor* a substantial likelihood of reversal. Indeed, far from offering substantial authority in support of its positions, the Government fails to identify a single case adopting its positions. Rather, the Government merely regurgitates the same, losing arguments that it offered in its prior motions — arguments that rely on cases that Your Honor already held

---

[1]      Claimants further assert that the Government's formulation of the proposed issues for appeal is improper. In regard to the forfeiture action, the Government mischaracterizes the relevant facts in the proposed issues certified for appeal as follows: (1) whether a claimant who has obtained a default order of liability, but has neither a final judgment for damages nor any order executing against particular property of that defendant, has constitutional standing to file a claim in the proceeding in which the Government is seeking civil forfeiture of property in which the defendant might have an interest, and (2) whether TRIA supersedes statutory limitations on a party's ability to file a claim in a civil forfeiture proceeding that concerns "blocked assets." In the enforcement action, the Government again gets the basic facts wrong in asking the Court to certify the issue of: (1) whether TRIA supersedes the common law doctrines of prior exclusive jurisdiction and *in custodia legis* to allow a judge to authorize execution against "blocked" assets currently under the jurisdiction of a different judge; and (2) whether TRIA waives federal sovereign immunity to allow a private party to execute against "frozen" terrorist assets held by the United States.

to be distinguishable and unpersuasive. If this Court already found those arguments unpersuasive on September 25th, it is folly to think that the Court could or would deem those same arguments as substantially likely to result in reversal on appeal.

An issue is not "contestable" simply because the Government insists on adhering to a legal theory that this Court previously rejected. *See Drew v. Shoe Show, Inc.*, No. 10-cv-656-JPG-PMF, 2011 U.S. Dist. LEXIS 135180, at *6 (S.D. Ill. Nov. 22, 2011) (interlocutory appeal unwarranted where movant "simply disagrees with the way the Court has applied what it agrees is the law to the facts of this case"); *LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 U.S. Dist. LEXIS 125004, at *16-17 (N.D. Ill. Nov. 23, 2009) (holding that, where movant relied on case law from outside Seventh Circuit and failed to present conflicting decisions, issues certified for appeal were not "contestable"); *Fairley,* 2007 U.S. Dist. LEXIS 70539, at *33-34; *Zikis v. Pfizer, Inc.*, CCH Prod. Liab. Rep. P17,268, at *5 (N.D. Ill. 2005) ("it is not enough that there be a difference of opinion, there must be a substantial ground for such difference").

The particular flaws of the Government's arguments on contestability are detailed below:

1.      Claimants' Article III Standing is Not Contestable.

In its September 25th decision, the Court held that Claimants possessed standing under Article III even prior to obtaining the final judgment against al Qaeda. In support of that holding, the Court relied on two decisions from the Seventh Circuit, as well as a number of decisions from other jurisdictions. Specifically, the Court held that the requirements of Article III standing are satisfied because Claimants demonstrated: "(1) an immediate threat of injury; (2) fairly traceable to the [Government's] conduct; that (3) a favorable federal court decision likely would redress or remedy." *5 S. 351 Tuthill Rd.,* 233 F. 3d at 1022. These constitutional standing requirements are well-established and not contestable.

7

The Court further held that the cases on which the Government relied did not, in fact, specifically address standing pursuant to Article III.   In its motions for certification of interlocutory appeals, the Government refuses to accept the Court's decision and argues, again, that even though the decisions to which it cited are from other jurisdictions and invoked principles of statutory standing, it is possible these cases *also* involved the requirements of constitutional standing.   Yet the Government cites no case law in <u>any</u> jurisdiction favoring its position, and the Government's mere disagreement (however intense) does not justify interlocutory review.

The Government openly acknowledges the lack of "substantial controlling authority" in support of its position but implausibly asserts that this "precedential uncertainty" supports interlocutory review.   This argument is badly flawed.   *See, e.g., LG Elecs.*, 2009 U.S. Dist. LEXIS 125004 (denying certification of interlocutory appeals where movant does not cite any case law repudiating arguments, even though Seventh Circuit has not expressly adopted such arguments).   First, the Court properly relied on established Seventh Circuit case law interpreting the requirements of constitutional standing under Article III.   While *5 S. 351 Tuthill Rd.* does not address factual issues identical to those before the Court, the legal principles are squarely on point and controlling.   Second, the standard for interlocutory review is not whether there exists "precedential uncertainty."   That turns Section 1292(b)'s contestability requirement on its head. As noted above, neither the absence of judicial precedent nor the fact that an issue of first impression is before the court warrants interlocutory review.   *See, e.g., Von Holdt*, 2005 U.S. Dist. LEXIS 15155, at *9.

The Government cannot prove, as it must, that there exist "substantial conflicting positions" or that "a substantial likelihood exists that the interlocutory order will be reversed on

appeal." *NMHG Fin. Servs. v. Wickes Inc.*, No. 07 C 02962, 2007 U.S. Dist. LEXIS 77886, at *8 (N.D. Ill. Oct. 17, 2007) (denying certification where movant does not cite applicable case law, and fails to "show substantial conflicting positions"); *Zikis*, CCH Prod. Liab. Rep. P17,268, at *5 (denying interlocutory review even when movant cites contrary decisions from other circuits). The Government's reliance on cases from other jurisdictions, *that have already been distinguished by this Court*, is unavailing (again). *See, e.g., United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004); *United States v. One-Sixth Share,* 326 F.3d 36, 41 (1st Cir. 2003).

The Court's resolution of the standing issue is consistent with this Circuit's case law, as well as authority from other jurisdictions. There is no uncertainty. The cases that the Government cites are not substantial, they are not controlling, and they do not mandate a different result. There is no basis on which to conclude that the Court's decision would be overturned on appeal, much less a substantial likelihood of that result.

2.      The Scope of TRIA's "Notwithstanding" Provision is Not Contestable.

Each of the three remaining issues that the Government certifies for appeal involve the scope of TRIA's "notwithstanding" clause as it applies to: (1) a civil forfeiture proceeding; (2) common law abstention doctrines; and (3) sovereign immunity. Yet again, the Government cites only the absence of controlling precedent as justification for interlocutory review and does not present any conflicting positions (substantial or otherwise) to demonstrate that these issues are contestable under §1292(b).

As noted above, the absence of controlling precedent is not grounds for interlocutory review. Moreover, and as the Government concedes, the only other district court to analyze the interplay between TRIA and asset forfeiture laws supports Claimants' efforts to execute their

judgment on terrorist property. *See United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240-P, 2011 U.S. Dist. LEXIS 46155 (N.D. Tex. Aug. 19, 2011). The Government fails to prove the existence of substantial grounds for any difference of opinion with *Holy Land*. Moreover, *Holy Land* is consistent with the decisions of other courts, which recognize that TRIA was enacted to provide a comprehensive mechanism for victims of terrorism to enforce judgments against those responsible. *See, e.g., Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264 (2d Cir. 2003). In addition, the Government's suggestion that *Holy Land* is not controlling because it is on appeal before the Fifth Circuit is legally immaterial.

The Government runs into the same problems when it tries to locate substantial controlling authority to reverse this Court's holding that TRIA's "notwithstanding" clause supersedes the doctrines of prior exclusive jurisdiction and *in custodia legis*. The Government appears to argue that, because the "notwithstanding" clause is not without limits, it follows that it does not supersede common law abstention doctrines.

This position was untenable when this Court first rejected it, and it remains untenable today. *See, e.g., Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi,* 556 U.S. 366, 385-86 (2009). This issue is not contestable, and as both the Supreme Court and this Court have recognized, courts "generally have interpreted . . . notwithstanding language to supersede all other laws, stating that a clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group,* 508 U.S. 10, 18 (1993) (internal quotations and ellipses omitted). In addition, the Government's point that the assets are under the jurisdiction of a different judge is both inaccurate and irrelevant. This Court explained in its decision and at the parties' November 20th status conference that, even though the writ of execution and citation to

discover assets originally were filed before Judge Gettleman, the case is now consolidated before this Court.

With respect to its sovereign immunity, the Government again has no other option but to seek solace in silence. As before, the Government argues that, because no other court has considered whether TRIA acts as a waiver of sovereign immunity, this question "is fairly subject to debate." *See* R. 102 at 20.[2] But the Government bears the burden of presenting "substantial conflicting positions" or a "substantial likelihood" that the district court's ruling will be overturned on appeal. "Subject to debate" is far short of the applicable standard.

Moreover, the Government is flatly wrong to suggest that sovereign-immunity determinations are automatically entitled to interlocutory review. Decisions of the Seventh Circuit and other courts put the lie to that suggestion. *See, e.g., Pullman Constr. Indus. v. United States*, 23 F.3d 1166, 1169 (7th Cir. 1994) (rejecting interlocutory review of order rejecting Government's assertion of sovereign immunity); *Alaska v. United States,* 64 F.3d 1352, 1355 (9th Cir. 1995) (rejecting interlocutory review of orders denying federal sovereign immunity); *In re Hayes*, 453 B.R. 270 (E.D. Mich. 2011) (rejecting interlocutory review of order denying federal sovereign immunity).

As this Court recognized, while a waiver of sovereign immunity must be "unequivocally expressed . . . Congress need not state its intent in any particular way. [The Supreme Court has] never required that Congress use magic words." *Federal Aviation Admin. v. Cooper,* 132 S. Ct. 1441, 1448 (2012). The Government's reference to *Weinstein v. Iran*, 274 F. Supp. 2d 53 (D.D.C. 2003), does not qualify as a "substantial conflicting position." Not only did Your Honor address, and distinguish, *Weinstein* in the September 25th Order, but the Order also noted that the

---

[2]        Unless otherwise noted, citations to the record in this matter are referenced by a "R." notation, followed by the relevant document number, and refer to the record in the forfeiture action, *United States of America v. All Funds on Deposit with R.J. O'Brien & Associates,* No. 1:11-cv-04175.

District of Columbia Circuit has since "disavowed" its reasoning — a point that the Government fails to mention. *See* R. 94 at 10; *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 23 (D.C. Cir. 2010).

*    *    *    *    *

The Government has failed to present any case law, controlling or otherwise, that demonstrates that the issues decided in the Court's September 25, 2012 Order are contestable. The Government similarly cannot prove that there exist conflicting decisions that create a "substantial ground for difference of opinion." *Fairley*, 2007 U.S. Dist. LEXIS 70539 (citing § 1292(b)). The issues certified for appeal are contestable only inasmuch as the Government disagrees with the Court's holdings, and contends that the Court misapplied the facts to the law. As such, there is no basis on which to conclude that the Court's decision likely will be reversed on appeal, and the motions for certification must be denied.

### C.    Interlocutory Review Will Not Expedite Resolution of This Case.

The Government fails to prove that certifying a series of interlocutory appeals will materially advance the termination of the litigation. *See, e.g., Leff v. Deutsche Bank AG,* No. 08-CV-733, 2009 U.S. Dist. LEXIS 108846, at *18 (N.D. Ill. Nov. 20, 2009) (denying interlocutory review and noting that interlocutory appeals often cause delay in progress of case); *Marshall v. Amsted Rail Co.,* No. 10-cv-0011-MJR-SCW, 2011 U.S. Dist. LEXIS 130690, at *11 (S.D. Ill. Nov. 11, 2011) (rejecting interlocutory appeal because filing piecemeal briefs on appeal would prolong resolution of suit). In the absence of such proof, the Government's motions for certification must be denied.

      1.     <u>Interlocutory Review Will Not Materially Advance the Litigation.</u>

Certification is not warranted where, as here, it would serve to "prolong the life of the litigation at all of the parties' expense, rather than streamlining proceedings." *Maljack Prod., Inc. v. Survival Anglia Ltd.,* No. 97 C 789, 1999 U.S. Dist. LEXIS 4094, at *11 (N.D. Ill. Mar. 24, 1999). In addition, certifying these issues for interlocutory appeal will not, as the Government suggests, eliminate Claimants' claims to the forfeited funds. Even if the issue of Claimants' standing were contestable (which it is not), Claimants would continue to have standing by virtue of their lien on the defendant funds. As the Court recognized in its September 25th Order, the Government has not argued that, if the writ and the citation were quashed, Claimants would be barred from immediately obtaining a new writ and citation from the Court. R. 94 at 12. The likelihood that interlocutory appeal will delay this already-protracted litigation is even more apparent in the present circumstances, where the Government's motions for review were not filed within a reasonable time. *See, e.g., Kostal*, 2011 U.S. Dist. LEXIS 129035, at *7.

Furthermore, and as demonstrated by the Government's brief and its discovery motion opposing the Claimants' initial disclosures, it is clear that the Government is intentionally *trying* to prolong the litigation. But it merely threatens and hints at the possibility of that delay; it fails to take a definite position on which this Court can rely in adjudicating the instant motions. For example, the Government suggests that interlocutory review is warranted because there is a possibility that it *might* invoke the state secrets doctrine. In addition, the Government notes that Claimants "*may* serve discovery requests on the United States that *could* implicate classified information" and that such "classified information *can be* subject to a state secrets privilege." R. 102 at 21 (emphasis supplied); *see also id.* at 22 ("[I]n light of the uncertainties associated with the discovery process that *could be* required in this case…") (emphasis supplied). After waiting

13

two months to make a decision to seek interlocutory review, it is fair to demand that the Government should have decided by now whether even to take the legal position on which its motion hinges. Instead, the Government offers the Court only vague threats. Poorly executed scare tactics do not justify interlocutory review.[3]

2.      The Court Should Be Able to Enter Final Judgment for Claimants Very Soon.

The Government's motion unsuccessfully tries to obscure that there is no credible dispute remaining among the parties. The Court will be able to enter a final, appealable judgment for Claimants very soon. This fact makes the Government's strategy of delay both more understandable and more reprehensible.

The swift resolution of this litigation would be furthered if the Government were to stipulate that Claimants are permitted to enforce their judgment against Al Tayyeb. It is unclear whether or why this issue is contested.[4] The Government itself has openly acknowledged that Al Tayyeb was an al Qaeda operative responsible for providing financial support and fundraising to al Qaeda's terrorist operatives, as well as participating in the planning of terrorist attacks on United States citizens. In seizing the defendant funds, the Government itself relied on Al Tayyeb's role as a fundraiser for al Qaeda. The Government acknowledged Al Tayyeb's connection and involvement with al Qaeda in its forfeiture complaint, stating:

13.      As a member of al-Qaeda, Al Tayyeb has provided aid to al-Qaeda operatives, supported al-Qaeda military operations, raised money for al-

---

[3]      On November 26, 2012, the Government filed a motion opposing Claimants' initial disclosures, and again noted only that discovery "*could* implicate classified information." *See* R. 103 at 2. (emphasis supplied).

[4]      Even if the issues are contestable, discovery can proceed quickly. It bears noting here that the Government opposed Claimants' initial disclosures on the basis that Rule 26(a)(1)(B)(ii) exempts forfeiture actions *in rem* from the initial disclosure requirement. That may be accurate, but it does not end the matter. The Advisory Committee Notes to Rule 26 explain that, *even as to exempt proceedings*, "the court can order exchange of similar information in managing the action under Rule 16." *See also Lamon v. Adams,* No. 07-00829, 2009 U.S. Dist. LEXIS 85163, at *2 (E.D. Cal. Aug. 31, 2009) (requiring parties to comply with initial disclosure provisions even though an action brought by a pro se inmate is exempt from such requirements under Rule 26). In addition, as this Court has emphasized, "[d]istrict courts have broad discretion over matters relating to discovery." *Russell v. Ill. Bell Tel. Co.,* No. 08 C 1871, 2009 U.S. Dist. LEXIS 37300, at *8 (N.D. Ill. Apr. 30, 2009) (Kennelly, J.).

14

Qaeda, and aided individuals, entities and operations associated with al-Qaeda and/or sharing in its terrorist ideology.

\*   \*   \*

17.     Following his return to Saudi Arabia, Al Tayyeb recruited Saudi Arabian residents to join al-Qaeda and its jihadist network.  Al Tayyeb further aided efforts to prepare al-Qaeda recruits.  Al Tayyeb provided financial support to individuals, entities, and organizations associated with al-Qaeda and engaged in jihadist activities.

18.     Al Tayyeb was able to provide financing for al-Qaeda and related jihadist causes with funds he obtained in Saudi Arabia.  Following his return from Afghanistan, Al Tayyeb began raising significant amounts of money through, *inter alia*, a Saudi Arabian-based investment scheme.  Al Tayyeb then used the funds raised, in part, to finance jihadist-related activities.

Relying on these statements, Your Honor recognized that "[g]iven these facts, Al Tayyeb could have been acting as an agent or instrumentality of Al Qaeda when he raised the defendant funds.  Thus, claimants can invoke the provisions of the TRIA in their efforts to execute on the defendant funds."  R. 94 at 8; *see also id.* at 3 ("The **government** alleges that Al Tayyeb raised money in Saudi Arabia and *used it to support Al Qaeda's activity*.") (emphases supplied).

Now, though, the Government bizarrely seems poised to reverse itself and argue that Claimants cannot prove al Qaeda's beneficial interest in the defendant funds because the funds were not formally held in the name of al Qaeda itself, but were instead held in the name of Al Tayyeb, a senior al Qaeda financier.  That argument would be utterly frivolous.

It is especially frivolous coming from the Government because it contradicts *the Government's own prior positions in criminal prosecutions of terrorists*.  The Government's new position expresses doubt on the fact that al Qaeda encourages its members to hide the organization's assets in shell associations, and to hold such funds for eventual distribution to al Qaeda in pursuit of its jihadist activities.  This stands in stark contrast to the positions taken by the Government in its efforts to secure convictions pursuant to 18 U.S.C. § 2339B, which

requires a showing that the defendant knowingly provided material support to a foreign terrorist organization. In many of these cases, the recipient of the support or services was an al Qaeda affiliate, as opposed to the organization of al Qaeda generally. *See, e.g., United States v. Sabir*, No. S4 05 Cr. 673 (LAP) 2007 U.S. Dist. LEXIS 34372, at *1 (S.D.N.Y. May 10, 2007) (addressing Government's claims that doctor who provided medical support to wounded jihadists should be convicted for providing material support and resources to al Qaeda as an organization). Yet the Government's litigating position echoed Claimants' position in this case.

The Government has repeatedly taken the position that material support to high-ranking members of al Qaeda is equivalent to providing support to al Qaeda directly. *See, e.g., United States v. Usair Paracha*, 69 Fed. R. Evid. Serv. (Callaghan) 130 (S.D.N.Y. 2006) (discussing Government's position that Paracha provided material support and resources to al Qaeda by posing as a known al Qaeda associate and holding funds at his place of employment to be used for al Qaeda purposes); *United States v. Warsame*, 537 F. Supp. 2d 1005, 1009 (D. Minn. 2008) (denying motion to dismiss indictment for violation of § 2339B for defendant charged with providing material support and resources to al Qaeda when defendant transmitted money to al Qaeda associate for use by al Qaeda); *cf. Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2725 (2010) (quoting affidavit of State Department official proffered by Government to demonstrate that "[t]errorist organizations do not maintain *organizational* 'firewalls' that would prevent or deter . . . sharing and commingling of support and benefits") (emphasis in original)). In support of its position in these prosecutions, the Government introduced evidence relating to al Qaeda's organizational structure and operational methods *for the express purpose* of drawing a direct line between providing support to an al Qaeda affiliate and providing support to al Qaeda itself. The Government and its expert witnesses in these cases repeatedly argued that taking a

pledge of *bayat* (loyalty) to al Qaeda evinced an intent of an al Qaeda member, and especially a fundraiser like Al Tayyeb, to hold funds for the eventual distribution to al Qaeda in furtherance of terrorist activities.

Moreover, the fundamental premise of the Government's position — that a diffuse, secretive terrorist organization that encourages its members to hide their public connection to the group should enjoy all of the legal protections of corporate personality — is flawed. Indisputably, the traditional rule is that a judgment against a corporation or organization is generally not enforceable against a shareholder or principal of the organization. This rule, however, is not without exception, and is properly set aside in circumstances such as those in this case. *See, e.g., Esmark, Inc. v. NLRB*, 887 F.2d 739, 751 (7th Cir. 1989) (noting that the corporate veil will be pierced when necessary to protect interests of third party); *Central States, Se. & Sw. Areas Pension Fund v. Carstensen Freight Lines*, No. 96 C 6252, 1998 U.S. Dist. LEXIS 11265, at *5-6 (N.D. Ill. July 16, 1998) (applying case by case analysis to determine whether entity may be disregarded and focusing on respect given by entity to shareholders, degree of injustice visited on litigates, and fraudulent intent of individual shareholder); *Torco Oil Co. v. Innovative Thermal Corp.*, 763 F. Supp. 1445, 1450 (N.D. Ill. 1991) (noting piercing corporate is appropriate where there is an abuse of corporate form); *Macaluso v. Jenkins,* 420 N.E.2d 251, 255 (Ill. Ct. App. 1981) (piercing veil of not-for-profit corporation as an equitable remedy applicable where entity "completely disregards this statutory network creating and supporting corporate structures") (internal citations omitted).

The traditional rule insulating the members of an organization from personal liability has no applicability to al Qaeda and its senior members.[5] A judgment creditor is permitted to reach a

---

[5]     Claimants respectfully urge the Court to press the Government's counsel at the parties' upcoming hearing to confirm that the Government will take this incredible position.

member's personal assets where "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012). As an unincorporated criminal member organization, al Qaeda deliberately operates as a façade for the pursuit of terrorist activities, does not observe any organizational formalities, and does not engage in any positive organizational behavior. It should not enjoy the traditional protections of corporate personality, and it is more than passing strange that the Government is the party apparently urging this notion.

*    *    *    *    *

The Government's efforts to obtain forfeiture of this money, at the expense of victims of terrorism, cannot be supported. Moreover, the incongruity of the Government's position is startling. In suggesting that Claimants *must* establish that the funds seized from Al Tayyeb are al Qaeda assets, the Government necessarily posits that the defendant funds constitute Al Tayyeb's *personal* assets, as opposed to al Qaeda property. [If not, the Government's opposition on this score would be frivolous and sanctionable under Fed. R. Civ. P. 11.] In so arguing, the Government would hobble its own ability to seize terrorist assets in other proceedings and to secure convictions of affiliates of terrorist organizations who murder American citizens.

This Court's September 25th Order relied on established case law and reinforced Congress's objectives in enacting TRIA. The resolution of this litigation is <u>not</u> furthered by the Government's continued attempts to hamper victims of terrorism in their efforts to enforce their judgments pursuant to standard judicial processes.

<u>**Conclusion**</u>

For the foregoing reasons, Claimants respectfully urge this Court to deny the Government's Motions to Certify Interlocutory Appeals.

Respectfully submitted,

COZEN O'CONNOR

Sean P. Carter, Esquire
PA Bar No. 78886
Stephen A. Miller, Esquire
PA Bar No. 308590
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
215-665-2020
scarter1@cozen.com
samiller@cozen.com

*/s/  James I. Tarman, Jr.*
James I. Tarman, Jr., Esquire
Illinois State Bar No. 06274360
Cozen O'Connor
333 West Wacker Drive
Chicago, IL 60606-1293
312-382-3100
jtarman@cozen.com

*Attorneys for Claimants*
Vigilant Insurance Company, Chubb Custom
Insurance Company, Chubb Indemnity Insurance
Company, Federal Insurance Company, Chubb
Insurance Company Of New Jersey, Chubb
Insurance Company Of Canada, Pacific Indemnity
Company, Great Northern Insurance Company,
American Alternative Insurance Company, The
Princeton Excess & Surplus Lines Insurance
Company, Great Lakes UK Insurance Company,
and One Beacon Insurance Group

19

## CERTIFICATE OF SERVICE

I, James I. Tarman, Jr., an attorney, hereby certify that I caused a copy of the foregoing to be served upon the attorneys listed below via the Court's electronic filing system on this 3d day of December, 2012:

Brian Thomas Frutig  bfrutig@motleyrice.com

Jerry S. Goldman  jgoldman@andersonkill.com

Andrew J. Maloney  amaloney@kreindler.com

Timothy S. Tomasik  tst@cliffordlaw.com  jmreasor@cliffordlaw.com

Joel M. Hammerman  joel.hammerman@usdoj.gov, catherine.miller@usdoj.gov  jean.weld@usdoj.gov  kondi.kleinman@usdoj.gov  christine.rekash@usdoj.gov  usailn.ecfausa@usdoj.gov  frederick.reynolds@usdoj.gov


                                                    /s/  James I. Tarman, Jr.