**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v. | No. 1:11-CV-4175 |
| ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6,<br><br>Defendant | Judge Matthew F. Kennelly |

**CLAIMANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Claimants, by and through their undersigned counsel, submit their Statement of Undisputed Facts pursuant to Local Rule 56.1(a)(3) as follows:

**Preliminary Statement**

1. Claimants are three groups of property insurers.[1] Claimants provided property damage and business interruption coverage to thousands of corporations, companies, partnerships, trusts and persons that sustained losses as a result of the September 11, 2001 terrorist attacks against the United States (the "September 11th attacks"). R. 53 at 1.[2]

[1] The three groups of insurance Plaintiffs in this case are: (1) OneBeacon Insurance Group; (2) American Alternative Insurance Company, the Princeton Excess & Surplus Lines Insurance Company, and Great Lakes UK Insurance Company; and (3) Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, and Great Northern Insurance Company.

[2] Citations to the record in this forfeiture action, *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, No. 1:11-cv-4175 (N.D. Ill. June 19, 2011), are referenced by an "R." notation, followed by the relevant docket entry number and, where appropriate, a page or paragraph number. Citations to docket entries in *Art Insurance Co., et al v. Al Qaeda*, No. 1:12-cv-1346 (N.D. Ill. Feb. 27, 2012), referred to herein as the "enforcement action," are referenced by an "E.A." notation, followed by the corresponding information.

2. For over a decade, Claimants have engaged in consistent and substantial efforts to obtain and then to enforce judgments against terrorist entities responsible for the September 11th attacks. *Id.*

3. As part of that effort, Claimants engaged in diligent and substantial efforts to identify assets of al Qaeda and its associates from 2003 forward. *See* Claimants' Answers to Plaintiff's First Set of Interrogatories, Nos. 1-6, attached as Exhibit A.[3]

4. On or about June 19, 2011, with prior knowledge of the Claimants' interest in terrorist-related assets, and specifically in al Qaeda assets, the Government instituted a civil forfeiture action in the Northern District of Illinois against certain "defendant funds" then on deposit with R.J. O'Brien & Associates ("RJO") at Harris Bank pursuant to 18 U.S.C. § 981. R. 1; Exhibit B.

5. Though maintained by RJO, the defendant funds constituted property of Muhammad Abdallah Abdan Al Ghamdi, also known as Al Tayyeb, a member of the al Qaeda terrorist organization. *Id.* at ¶ 11.

6. Claimants filed Verified Claims in the forfeiture action alleging that they had priority entitlement to the defendant funds by virtue of a default (later reduced to a final judgment) issued against al Qaeda in the September 11th MDL. R. 10-12; Exhibits C-E.

7. Though the Government continued to contest Claimants' right to enforce their judgment against the funds, in the past year this Court has recognized that Claimants have standing to contest the forfeiture and that the defendant funds are blocked assets of a terrorist party subject to execution pursuant to § 201(a) of the Terrorism Risk Insurance Act ("TRIA"), notwithstanding any other provision of law. R. 94.

[3] Unless otherwise specified, the exhibits cited herein refer to exhibits attached to Claimants' Memorandum in Support of Their Motion for Summary Judgment.

8. Given this Court's prior rulings, the sole potential issue remaining before this Court in determining Claimants' entitlement to the defendant funds is whether al Qaeda has an interest in the defendant funds such that Claimants can attach the funds in satisfaction of their judgment. The Government does not contest this issue that its own Verified Complaint contains facts sufficient to carry Claimants' burden on that issue for purposes of summary judgment.

9. The Government itself affirms that Al Tayyeb was an al Qaeda operative responsible for providing financial support and fundraising to al Qaeda's terrorist operatives who actively participated in the planning of terrorist attacks on United States citizens. R.1 ¶ 13, 18.

10. Moreover, the United States has stipulated that it will not contest the sufficiency of the verified facts in its complaint to satisfy Claimants' burden on this issue, as counsel for the Government confirmed to the Court on the record. R. 110 at 5.

**Jurisdiction and Venue**

11. This Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355(a). This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. 13ff(b)(1)(B), because the defendant funds are found within this judicial district.

12. Venue is proper within this judicial district pursuant to 28 U.S.C. 1355(b) and 1395(b) because the defendant funds are located within the Northern District of Illinois.

**The September 11th Litigation**

13. The Claimants made payments to policyholders under the applicable policies in excess of *two-and-one-half billion dollars* in compensation for covered losses arising from the September 11th attacks. R. 53 at 3.

14. On September 10, 2003, they, along with several other insurance companies, filed suit in the United States District Court for the Southern District of New York against a number of parties, including the al Qaeda terrorist organization, seeking reimbursement for losses incurred as a result of the September 11th attacks.[4] *Id.* at 4.

15. In addition, a number of wrongful death and personal injury lawsuits were brought against the same defendants in the Southern District of New York and the District of Columbia. *Id.* On March 10, 2004, the Judicial Panel on Multi-District Litigation ordered the consolidation of these actions in the Southern District of New York under the caption *In re: Terrorist Attacks Upon the United States*, 03-MDL-1570 (the "September 11th MDL"), and the matter was assigned to the Honorable Richard C. Casey.[5] *Id.*

16. Importantly, the Government has been on the service list for the September 11th MDL since at least March 26, 2004, has appeared in the action, and has filed briefs and attended hearings. As a result, it has been kept fully advised of all developments in that case. R. 53 at 4.

17. On April 7, 2006, Claimants obtained this Court's equivalent of an order of default against al Qaeda. R. 53 at 4; Exhibit F.

18. For the next five years, they diligently pursued a final judgment in the New York action, which, through no fault of their own, was not entered until January 25, 2012. R. 78 at 4; Exhibit G.

19. Claimants then promptly initiated efforts to perfect a lien against the defendant funds, and they obtained that lien on April 6, 2012. R. 78 at 5; Exhibit H.

[4] The action was captioned *Federal Ins. Co. v. Al Qaida*, 03-CV-6978.

[5] The MDL is captioned *In re Terrorist Attacks on September 11, 2001,* 03-MDL-1570. R.10¶ 9; R.11¶ 11; R. 12¶ 9.

**Claimants' Nine Year Effort to Recover Against al Qaeda**

20. On September 29, 2005, Claimants moved for entry of default judgments in the September 11th MDL against al Qaeda and other defendants. R. 53 at 4; Exhibit I.

21. Though Claimants requested that the court grant judgment in a specific liquidated amount, on April 7, 2006 Judge Casey elected to enter judgment "in an amount to be determined at a hearing." R. 53 at 4; Exhibit J.

22. On February 13, 2007, Claimants filed a Motion for Assessment of Damages Against Defaulting Defendants, supported by affidavit testimony. R. 53 at 4-5; Exhibit K.

23. In the motion for assessment, Claimants requested that the court issue an order assessing damages in the aggregate amount of $9,481,764,208.61 in favor of all of the September 11th MDL plaintiffs. *See* Exhibit K. The matter was fully briefed by March 14, 2007. *Id.*

24. On March 22, 2007, Judge Casey died, and on April 25, 2007, the Chief Judge for the Southern District of New York assigned the September 11th MDL to the Honorable George C. Daniels. R. 53 at 5.

25. At the time of the transfer, approximately one hundred Rule 12 motions to dismiss were fully briefed and awaiting action by the court. *Id.*

26. On May 29, 2007, the September 11th MDL Plaintiffs' Executive Committees ("PEC")[6] and its Defendants' Executive Committee ("DEC") submitted status reports at the court's request, and they advised the Court that the motion to assess damages was ready for disposition. *Id.*

---

[6] Judge Casey designated as co-chairs of the PEC Ronald L. Motley of Motley Rice LLC and James P. Kreindler of Kreindler & Kreindler LLP for the Personal Injury and Death Claims, and Elliott R. Feldman and Sean P. Carter for the Commercial Claims. The Personal Injury and Death Claims co-chairs represent over 9,000 individuals plaintiffs who either lost loved ones or sustained injuries themselves in the September 11th attacks. The Commercial Claims co-chairs represent the Claimants in this suit, along with a number of other insurance carriers.

27. The PEC reminded the court of the pendency of that motion during a hearing on June 26, 2007 and in correspondence directed to Judge Daniels on August 1 and August 7, 2007. *Id.*

28. Over the next three years, however, Judge Daniels ruled on only two motions to dismiss and conducted only four case management conferences, and he took no action on the motion to assess damages. *Id*.

29. On June 3, 2010, the September 11th MDL plaintiffs reluctantly filed an Emergency Petition for a Writ of Mandamus, asking that the Second Circuit either order Judge Daniels to surrender the case or direct that the Southern District of New York transfer the matter to another judge. *Id.*

30. Two weeks later, on June 17, 2010, Judge Daniels issued a sixty-page order disposing of the majority of the pending Rule 12 motions to dismiss. *Id.*

31. On September 13, 2010, Judge Daniels issued another decision disposing of the remaining pre-discovery motions to dismiss. *Id.* However, those rulings failed to mention the motion to assess damages.

32. By letter dated May 27, 2011, the PEC again advised Judge Daniels that "Judge Casey entered default judgments as to liability against al Qaeda" in 2006 and explained that "[p]laintiffs urgently need to have at least certain of their default judgments against al Qaeda reduced to a monetary sum," noting specifically the potential that further delays could prejudice their interests in blocked al Qaeda funds. R. 53 at 6; Exhibit L; *see also* Declaration at Exhibit M.

33. The letter further noted that the pending motion to assess damages was accompanied by "detailed affidavit testimony" specifying the insurance company plaintiffs'

damages and that the entry of judgment in an amount certain "will not require significant investment of the Court's time and resources." *Id.* It concluded:

> At this time, the undersigned co-chairs of the Plaintiffs' Executive Committees respectfully request that the Court take up consideration of the *Federal Insurance* Plaintiffs' Motion for Assessment of Damages, *but only insofar as it relates to the al Qaeda terrorist organization itself.* While many of the claims asserted in this litigation have been fiercely contested, Plaintiffs respectfully submit that no party would disagree that the September 11th Plaintiffs are entitled to a judgment against al Qaeda. Any monetary judgment entered against al Qaeda in favor of the *Federal Insurance* Plaintiffs will be used to advance and protect the interest of all plaintiffs in the MDL.[7]

*Id.*

34. In a separate letter to Judge Daniels on June 1, the PEC submitted a copy of the most recent Terrorist Assets Report prepared by the Treasury Department's Office of Foreign Assets Control ("OFAC"). R. 53 at 6; Exhibit N; Exhibit M.

35. This "verifie[d] that OFAC has frozen in excess of $13,000,000 in al Qaeda assets." *Id.*

36. The June 1, 2011 letter also noted that "[p]ursuant to § 201 of the Terrorism Risk Insurance Act, those frozen assets are available to satisfy a judgment against al Qaeda." *Id.*

37. The Government filed the Verified Complaint for Forfeiture *less than three weeks later* on June 19, 2011. R. 1.

38. The Government gave notice of its forfeiture by website publication. R. 53 at 7; Exhibit O. The notice made no mention of al Qaeda, al Ghamdi or Al Tayyeb.

39. Despite its knowledge of Claimants' five-year old default, the long-pending motion to assess damages against al Qaeda, and the September 11th MDL plaintiffs' numerous

---

[7] The "*Federal Insurance* Plaintiffs" are the Claimants in this matter, along with a number of other insurance carriers.

FOIA requests seeking information concerning blocked assets of al Qaeda and its associates, the United States did not provide any direct notice to any of the Claimants, other September 11th MDL plaintiffs, or their counsel. R. 53 at 7.

40. In fact, Claimants were apprised of the filing of the forfeiture proceeding and al Qaeda's relationship to the targeted funds only as a result of a newspaper article published in the Chicago Tribune on June 21, 2011, reporting the details of the Government's Verified Complaint. *Id.*; Exhibit A.

**Claimants' Judgment Against al Qaeda**

41. On July 13, 2011, Judge Daniels referred the motion to assess damages to Magistrate Judge Frank Maas for a damages inquest. R. 53 at 8.

42. On October 14, 2011, Judge Maas issued his Report and Recommendation to Judge Daniels, concluding that "the Court should award the Plaintiffs damages against al Qaeda in the amount of $9,351,247,965.99."[8] *Id.*; Exhibit P.

43. On December 16, 2011, Judge Daniels formally adopted the Report and Recommendation in its entirety. *Id.*; Exhibit Q.

44. On December 22, 2011, the Clerk of Court of the United States District Court for the Southern District of New York entered judgment in favor of Claimants and against al Qaeda in accordance with the December 16, 2011 Order. *Id.*; Exhibit R.

45. On January 22, 2012, Judge Daniels issued an Order directing that the judgment be made final pursuant to Fed. R. Civ. P. 54(b). R. 78 at 4.

[8] Claimants' share of this sum with respect to compensatory damages is in excess of $2.5 billion.

46. On January 25, 2012, the Clerk of the Court for the United States District Court for the Southern District of New York entered a final judgment in favor of Claimants and against al Qaeda. *Id.*; Exhibit G.

47. Following the expiration of the thirty day appeal period, Claimants registered their judgment in the Northern District of Illinois on February 27, 2012. E.A. 1; Exhibit S.

48. Beginning March 13, 2012, Claimants took steps to establish liens against the defendant funds on the basis of the registered final judgments and filed a Praecipe for Writ of Execution in accordance with this Court's procedures. E.A. 5.

49. In view of the delays attendant to the issuance and service of the Writ of Execution, Claimants also initiated parallel efforts to perfect a lien against the defendant funds through the filing of a Notice of Citation to Discover Assets and Citations to Discover Assets, on April 6, 2012, again in accordance with this Court's procedures. E.A. 7.

50. Claimants made service upon the judgment debtor pursuant to 735 ISLS § 1402(b). *Id.* In addition, Claimants served a Citation to Discover Assets on the U.S. Marshals Service on April 6, 2012. *Id.*; Exhibit H.

51. On April 10, 2012, the Courtroom Deputy entered a minute entry before Judge Gettleman ordering the Writ of Execution to issue. E.A. 9.

52. The enforcement action was assigned a miscellaneous action number and assigned automatically to Judge Gettleman. E.A. 1.

53. Claimants apprised Your Honor of their intent to initiate that proceeding in the Motion for Leave to Amend, and again during a status conference on April 12, 2012. On that same day, Judge Kennelly assumed management of the executing proceeding and thereafter presided over the Government's Motion to Quash and subsequent filings. R. 79.

54. Claimants' lien against the defendant funds was perfected as of the date of service of the Citation to Discover Assets. *Id.*

**Efforts to Obtain Information Regarding Assets of al Qaeda**

55. Beginning in 2003 – three years before Claimants obtained an order of default against al Qaeda and fully four years before the defendant funds in the forfeiture case first came to the Government's attention – the Claimants and other plaintiffs in the September 11th MDL (including several thousand family members of those killed in the attacks) regularly and repeatedly attempted to obtain information from the Government relating to the identification and location of any assets of al Qaeda and its affiliates. *See* Exhibit A.

56. These efforts included numerous Freedom of Information Act ("FOIA") requests seeking details concerning frozen assets of al Qaeda and its members and affiliates, as well as subpoenas, Letters Rogatory and formal discovery requests targeted at obtaining that same information and ultimately litigation between the co-chairs of the PEC and the Department of Treasury ("DOT") over the scope of FOIA exemptions invoked to deny the requests. *Id.*

57. The Government consistently opposed disclosure of such asset information. *Id.*

58. At no time did the Government identify the defendant funds, despite the fact that the Government represented that it was evaluating Claimants' requests at the exact time that the Government froze the defendant funds. *Id.* In addition, the Government did not provide Claimants with any information regarding the defendant funds during the pendency of the FOIA litigation, which was also ongoing at the time that the Government froze the defendant funds.

**The Defendant Funds and the Forfeiture Proceeding**

59. The defendant funds were in a commodities futures trading account opened on or about March 2003 and maintained by RJO in a segregated futures customer account (XXX-171-6) at Harris Bank. R.1 ¶ 8.

60. From that time through September 2005, a total of approximately $26,714,356 was deposited into RJO trading accounts by Al Tayyeb, a senior member of al Qaeda. *Id.* ¶ 22.

61. Due to poor trading positions that he adopted, the value of the RJO account had decreased to approximately $6,600,000 by May 2006. *Id.*

62. On or about June 18, 2007, after the Government learned of Al Tayyeb's al Qaeda affiliation and the defendant funds, OFAC blocked the two RJO investment accounts associated with the customer account number XXX-171-6, pursuant to Executive Order 13224 of September 23, 2001, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"), and the Global Terrorist Sanctions Regulations, 31 C.F.R. 594. *Id.* ¶ 23.

63. These two accounts were renumbered XXX-X3951 and XXX-X1784. The defendant funds today total $6,226,355. *Id.*

64. Although the OFAC blocking order itself barred any movement or dissolution of the defendant funds, the DOJ sought and obtained a license from OFAC on July 8, 2011, permitting it to "take all necessary actions in furtherance of the . . . pursuit of [the] civil forfeiture of the [defendant funds]."[9]

65. The United States then sought and obtained an *in rem* arrest warrant from this Court, and the U.S. Marshals Service has held the funds since July 15, 2011.[10] R. 7.

[9] OFAC License No. SDGT-1597 (July 8, 2011).

[10] Notably, had the United Stated simply allowed the funds to remain blocked pursuant to the OFAC blocking order during the pendency of these proceedings, the United States likely would have had no basis to assert that its

66. After learning of the filing of this forfeiture action from the press on June 21, 2011, Claimants timely filed their Verified Claims on or about August 19, 2011, alleging that they had priority entitlement to defendant funds. R. 10-12.

67. Claimants filed Answers to Plaintiff's Verified Claim for Forfeiture on September 7, 2011. R. 17-18.

*The Court's March 27, 2012 Decision*

68. On December 5, 2011, the Government filed a Motion to Strike Claimants' Verified Claims and Answers. R. 42. At the time of the filing of the motion to strike, Claimants had not yet obtained a final judgment or secured a lien on the subject property, and the Government argued that Claimants were unsecured creditors of al Qaeda with no interest in the specific defendant funds and that, as such, Claimants lacked standing to contest the forfeiture action.

69. On January 27, 2012, Claimants responded by filing both an opposition to the motion to strike and also a Motion for Leave to Amend their Verified Claims and Answers in the forfeiture action, seeking to amend to reflect the final judgment entered in the September 11th MDL two days earlier, on January 25, 2012. R. 59; 60.

70. On March 27, 2012, this Court issued its decision on Plaintiffs' motion to strike and Claimants' motion for leave to amend. R. 74.

71. The Court granted the motion to strike, reasoning that Claimants, as unsecured creditors, lacked statutory and prudential standing to challenge the forfeiture of the defendant

---

sovereign immunity presented a defense to the service of the Writ and Citation and also no basis to argue that the funds at issue no longer represented 'blocked" funds under TRIA.

funds. *Id.* at 9-13.[11] The Court also denied Claimants' motion for leave to amend, reasoning that the proposed amendment would not cure the identified defects in Claimants' standing because, as of March 27, 2012, Claimants had not secured a lien against the defendant funds. *Id.* at 15. In reaching that decision, this Court noted as follows:

> The Court need not consider whether they legally can serve a citation at this time or, if so, whether it would be appropriate then to allow the insurance claimants to amend their claims. Similarly, the Court need not consider the effects of Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, § 201, 116 Stat. 2332, 2337, on the claimants' ability to execute their judgments against the property at issue in this case.

*Id.*

72. At the time of the Court's opinion, Claimants were already engaged in the process of executing their judgment and obtaining a lien against the defendant funds. Claimants' lien against the defendant funds was perfected on April 6, 2012. E.A. 7.

*The Court's September 25, 2012 Decision*

73. On April 11, 2012, Claimants filed a Motion for Leave to File Amended Verified Claims and Amended Answers, seeking to amend to reflect their lien in the defendant funds. R. 77.

74. On June 8, 2012, the Government opposed this motion, arguing that any amendment to the forfeiture pleadings would be futile, and also filed a Motion to Quash the Writ of Execution and Citation to Discover Assets, asserting that the doctrine of sovereign immunity barred the Claimants' proposed writ and citation and that TRIA did not waive sovereign immunity. R. 87.

---

[11] The caption of this case is *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 U.S. Dist. LEXIS 41309 (N.D. Ill. Mar. 27, 2012) ("Kennelly I").

75. In a September 25, 2012 decision, this Court denied the Government's motion to quash and granted Claimants' motion for leave to amend.[12] R. 94. With regard to the former, the Court explained that Congress waived the Government's sovereign immunity pursuant to TRIA, and it held that the doctrines of prior exclusive jurisdiction and *in custodia legis* did not limit Claimants' efforts because TRIA authorizes Claimants to execute or attach blocked assets notwithstanding any other provision of law. *Id.* at 8, 11. With regard to Claimants' motion to amend, the Court held that the proposed amendment would not be futile. *Id.* at 25.

76. The Court explained that Claimants possessed an interest in the defendant funds sufficient to confer Article III standing and that they should be permitted to amend their claims to satisfy the statutory standing requirement and to reflect their lien against the specific property. *Id.* In addition, the Court held that Claimants had prudential standing to challenge the forfeiture because they were within the zone of interests protected by the civil forfeiture statute, and, in any event, TRIA authorizes execution of their judgment. *Id.*

77. Claimants filed Amended Claims on October 5, 2012. R. 96-98; Exhibits T-V.

*The Court's December 10, 2012 Decision*

78. On November 23, 2012, the Government filed a Motion to Certify Interlocutory Appeals pursuant to 28 U.S.C. § 1292(b), seeking to appeal the principal legal rulings issued in the Court's September 25, 2012 decision. R. 100.

79. On December 10, 2012, the Court denied the Government's Motions to Certify and directed the parties to confer on a discovery plan. R. 110.

80. Indicating that it wished to avoid potentially protracted and difficult litigation over whether the states secrets privilege applied to evidence in the Government's possession that

[12] The caption of this case is *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 U.S. Dist. LEXIS 136648 (N.D. Ill. Sept. 25, 2012) ("Kennelly II").

might be relevant to the question of al Qaeda's interest in the defendant funds, the Government proposed that it would not contest that its Verified Complaint sufficiently demonstrates al Qaeda's interest in the defendant funds for purposes of summary judgment. In turn, Claimants agreed to forgo discovery into the details of the Government's investigation, Al Tayyeb's role in al Qaeda, and al Qaeda's relationship to the defendant funds. The parties reached agreement to proceed on that basis.

Respectfully submitted,

COZEN O'CONNOR

*/s/ James I. Tarman, Jr.*

James I. Tarman, Jr., Esquire
Illinois State Bar No. 06274360
Cozen O'Connor
333 West Wacker Drive
Chicago, IL 60606-1293
312-382-3100
jtarman@cozen.com

Sean P. Carter, Esquire
PA Bar No. 78886
Stephen A. Miller, Esquire
PA Bar No. 308590
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
215-665-2020
scarter1@cozen.com
samiller@cozen.com

*Attorneys for Claimants*
Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company Of New Jersey, Chubb Insurance Company Of Canada, Pacific Indemnity Company, Great Northern Insurance Company, American Alternative Insurance Company, The Princeton Excess & Surplus Lines Insurance Company, Great Lakes UK Insurance Company, and One Beacon Insurance Group

**CERTIFICATE OF SERVICE**

I, James I. Tarman, Jr., an attorney, hereby certify that I caused a copy of the foregoing to be served upon the attorneys listed below via the Court's electronic filing system on this 14th day of March, 2013.

Brian Thomas Frutig bfrutig@motleyrice.com

Jerry S. Goldman jgoldman@andersonkill.com

Andrew J. Maloney amaloney@kreindler.com

Timothy S. Tomasik tst@cliffordlaw.com jmreasor@cliffordlaw.com

Joel M. Hammerman joel.hammerman@usdoj.gov, catherine.miller@usdoj.gov jean.weld@usdoj.gov kondi.kleinman@usdoj.gov christine.rekash@usdoj.gov usailn.ecfausa@usdoj.gov frederick.reynolds@usdoj.gov

*/s/ James I. Tarman, Jr.*