**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| v. | No. 1:11-CV-4175 |
| ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6, | Judge Matthew F. Kennelly |
| Defendant | |

## CLAIMANTS' STATEMENT OF MATERIAL FACTS

Claimants, by and through their undersigned counsel, submit their Statement of Material Facts pursuant to Local Rule 56.1(a)(3) as follows:

**Preliminary Statement**

1.    Claimants hereby incorporate by reference the parties' Stipulation of Undisputed Facts filed contemporaneously herewith as though set forth at length in Claimants' Statement of Material Facts.

2.    Claimants are three groups of property insurers.[1] Claimants provided property damage and business interruption coverage to thousands of corporations, companies,

---

[1] The three groups of insurance Plaintiffs in this case are: (1) OneBeacon Insurance Group; (2) American Alternative Insurance Company, the Princeton Excess & Surplus Lines Insurance Company, and Great Lakes UK Insurance Company; and (3) Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, and Great Northern Insurance Company.

partnerships, trusts and persons that sustained losses as a result of the September 11, 2001 terrorist attacks against the United States (the "September 11th attacks"). R. 53 at 1.[2]

3.     For over a decade, Claimants have engaged in consistent and substantial efforts to obtain and then to enforce judgments against terrorist entities responsible for the September 11th attacks. *Id.*

4.     As part of that effort, Claimants engaged in diligent and substantial efforts to identify assets of al Qaeda and its associates from 2003 forward. *See* Claimants' Supplemental Answers to Plaintiff's First Set of Interrogatories, attached as Exhibit A.[3]

5.     On or about June 19, 2011, with prior knowledge of the Claimants' interest in terrorist-related assets, and specifically in al Qaeda assets, the Government instituted a civil forfeiture action in the Northern District of Illinois against certain "defendant funds" then on deposit with R.J. O'Brien & Associates ("RJO") at Harris Bank pursuant to 18 U.S.C. § 981. R. 1; Exhibit B.

6.     Though maintained by RJO, the defendant funds constituted property of Muhammad Abdallah Abdan Al Ghamdi, also known as Al Tayyeb, a member of the al Qaeda terrorist organization. *Id.* at ¶ 11.

7.     On or about August 19, 2011, Claimants filed Verified Claims in the forfeiture action alleging that they had priority entitlement to the defendant funds by virtue of a default (later reduced to a final judgment) issued against al Qaeda in the September 11th MDL. R. 10-12; Exhibits C-E.

---

[2] Citations to the record in this forfeiture action, *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, No. 1:11-cv-4175 (N.D. Ill. June 19, 2011), are referenced by a "R." notation, followed by the relevant docket entry number and, where appropriate, a page or paragraph number. Citations to docket entries in *Art Insurance Co., et al v. Al Qaeda*, No. 1:12-cv-1346 (N.D. Ill. Feb. 27, 2012), referred to herein as the "enforcement action," are referenced by an "E.A." notation, followed by the corresponding information.

[3] Unless otherwise specified, the exhibits cited herein refer to exhibits attached to Claimants' Memorandum in Support of Their Motion for Summary Judgment.

8.      Though the Government continued to contest Claimants' right to enforce their judgment against the funds, in the past year this Court has recognized that Claimants have standing to contest the forfeiture and that the defendant funds are blocked assets of a terrorist party subject to execution pursuant to § 201(a) of the Terrorism Risk Insurance Act ("TRIA"), notwithstanding any other provision of law. R. 94.

9.      Given this Court's prior rulings, the sole potential issue remaining before this Court in determining Claimants' entitlement to the defendant funds is whether al Qaeda has an interest in the defendant funds such that Claimants can attach the funds in satisfaction of their judgment.

10.     The Government does not contest that al Qaeda had a beneficial interest in the defendant funds and does not contest that its own Verified Complaint contains facts sufficient to carry Claimants' burden on that issue for purposes of summary judgment.

11.     In its Verified Complaint for Forfeiture, the Government affirms that Al Tayyeb was an al Qaeda operative responsible for providing financial support and fundraising to al Qaeda's terrorist operatives who actively participated in the planning of terrorist attacks on United States citizens. R.1 ¶ 13, 18; Exhibit B.

12.     Moreover, the United States has stipulated that it will not contest the sufficiency of the verified facts in its complaint to satisfy Claimants' burden on this issue, as counsel for the Government confirmed to the Court on the record. R. 110 at 5.

**Jurisdiction and Venue**

13.     This Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355(a). This Court has *in rem* jurisdiction over the defendant funds

pursuant to 28 U.S.C. 1355(b)(1)(B), because the defendant funds are found within this judicial district.

14.     Venue is proper within this judicial district pursuant to 28 U.S.C. 1355(b) and 1395(b) because the defendant funds are located within the Northern District of Illinois.

**The September 11th Litigation**

15.     As described in more detail in the Stipulation of Undisputed Facts, Claimants, along with several other insurance companies, filed suit in the Southern District of New York against, *inter alia*, al Qaeda seeking reimbursement for losses paid to insureds as a result of the September 11th attacks.  The Claimants made payments to policyholders under the applicable policies in excess of $2.5 billion in compensation for covered losses arising from the September 11th attacks.  R. 53 at 3. This suit was consolidated with a number of wrongful death and personal injury lawsuits under the caption *In re: Terrorist Attacks Upon the United States*, 03-MDL-1570 (the "September 11th MDL"), and the matter was assigned to the Honorable Richard C. Casey. *Id.*; *see also* MDL R. 1.[4]

16.     The Government has been on the service list for the September 11th MDL since at least March 26, 2004, has appeared in the action, and has filed briefs and attended hearings.  As a result, it has been kept fully advised of all developments in that case. R. 53 at 4.

17.     On April 7, 2006, Claimants obtained this Court's equivalent of an order of default against al Qaeda.  R. 53 at 4; Exhibit F; *see also* MDL R. 1755.

18.     For the next five years, Claimants diligently pursued a final judgment in the September 11th MDL, which, through no fault of their own, was not entered until January 25, 2012. R. 78 at 4; Exhibit G; *see also* MDL R. 2538.

---

[4] Citations to the record in the September 11th MDL are referenced by a "MDL R." notation, followed by the relevant docket entry number.

**Claimants' Nine Year Effort to Recover against al Qaeda**

19. On February 13, 2007, Claimants filed a Motion to Assess Damages Against Defaulted Defendants, supported by affidavit testimony. R. 53 at 4-5; Exhibit H; *see also* FIC R. 688.[5]

20. In the motion for assessment, Claimants requested that the court issue an order assessing damages in the aggregate amount of $9,481,764,208.61 in favor of certain commercial plaintiffs in the September 11th MDL. *See* Exhibit H. The matter was fully briefed by March 14, 2007. *Id.*; *see also* FIC R. 696.

21. On March 22, 2007, Judge Casey died, and on April 25, 2007, the Chief Judge for the Southern District of New York assigned the September 11th MDL to the Honorable George C. Daniels. R. 53 at 5; *see also* MDL R. 1972.

22. At the time of the transfer, approximately one hundred Rule 12 motions to dismiss were fully briefed and awaiting action by the court. R. 53 at 5.

23. On May 29, 2007, the September 11th MDL Plaintiffs' Executive Committees ("PEC")[6] and its Defendants' Executive Committee ("DEC") submitted status reports at the court's request, and they advised the Court that the motion to assess damages was ready for disposition. *Id.*

24. The PEC reminded the court of the pendency of that motion during a hearing on June 26, 2007 and in correspondence directed to Judge Daniels on August 1 and August 7, 2007. *Id.*

---

[5] Citations to the record in *Federal Ins. Co., et al. v. Al Qaida,* No. 03-6978 are referenced by a "FIC R." notation, followed by the relevant docket entry number.

[6] Judge Casey designated as co-chairs of the PEC Ronald L. Motley of Motley Rice LLC and James P. Kreindler of Kreindler & Kreindler LLP for the Personal Injury and Death Claims, and Elliott R. Feldman and Sean P. Carter for the Commercial Claims. The Personal Injury and Death Claims co-chairs represent over 9,000 individuals plaintiffs who either lost loved ones or sustained injuries themselves in the September 11th attacks. The Commercial Claims co-chairs represent the Claimants in this suit, along with a number of other insurance carriers.

25.     Over the next three years, however, Judge Daniels ruled on only two motions to dismiss and conducted only four case management conferences, and he took no action on the motion to assess damages.  *Id.*

26.     On June 3, 2010, the September 11th MDL plaintiffs reluctantly filed an Emergency Petition for a Writ of Mandamus, asking that the Second Circuit either order Judge Daniels to surrender the case or direct that the Southern District of New York transfer the matter to another judge. *Id.*; *see also* USCA R. 1.[7]

27.     Two weeks later, on June 17, 2010, Judge Daniels issued a sixty-page order disposing of the majority of the pending Rule 12 motions to dismiss. R. 53 at 6; *see also* MDL R. 2252.

28.     On September 13, 2010, Judge Daniels issued another decision disposing of the remaining pre-discovery motions to dismiss.  *Id.*; *see also* MDL R. 2312.  However, those rulings failed to mention the motion to assess damages.

29.     By letter dated May 27, 2011, the PEC again advised Judge Daniels that "Judge Casey entered default judgments as to liability against al Qaeda" in 2006 and explained that "[p]laintiffs urgently need to have at least certain of their default judgments against al Qaeda reduced to a monetary sum," noting specifically the potential that further delays could prejudice their interests in blocked al Qaeda funds.  R. 53 at 6; Exhibit I; *see also* Declaration at Exhibit J.

30.     The letter further noted that the pending motion to assess damages was accompanied by "detailed affidavit testimony" specifying the insurance company plaintiffs' damages and that the entry of judgment in an amount certain "will not require significant investment of the Court's time and resources." *Id.* It concluded:

---

[7] Citations to the record in the Second Circuit appeal of *In re: Terrorist Attacks of September 11th, 2001*, No. 10-2184 are referenced by an "USCA R." notation, followed by the relevant docket entry number.

> At this time, the undersigned co-chairs of the Plaintiffs' Executive Committees respectfully request that the Court take up consideration of the *Federal Insurance* Plaintiffs' Motion for Assessment of Damages, *but only insofar as it relates to the al Qaeda terrorist organization itself.* While many of the claims asserted in this litigation have been fiercely contested, Plaintiffs respectfully submit that no party would disagree that the September 11[th] Plaintiffs are entitled to a judgment against al Qaeda. Any monetary judgment entered against al Qaeda in favor of the *Federal Insurance* Plaintiffs will be used to advance and protect the interest of all plaintiffs in the MDL.[8]

*Id.*

31.     In a separate letter to Judge Daniels on June 1, 2011 the PEC submitted a copy of the most recent Terrorist Assets Report prepared by the Treasury Department's Office of Foreign Assets Control ("OFAC") which "verifie[d] that OFAC has frozen in excess of $13,000,000 in al Qaeda assets." R. 53 at 6; Exhibit K; Exhibit J.

32.     The June 1, 2011 letter also noted that "[p]ursuant to § 201 of the Terrorism Risk Insurance Act, those frozen assets are available to satisfy a judgment against al Qaeda." *Id.*

33.     The Government filed the Verified Complaint for Forfeiture less than three weeks later on June 19, 2011. R. 1.

34.     The Government gave notice of its forfeiture by website publication. R. 53 at 7; Exhibit L. The notice made no mention of al Qaeda, al Ghamdi or Al Tayyeb.

35.     Despite its knowledge of Claimants' five-year old default, the long-pending motion to assess damages against al Qaeda, and the September 11th MDL plaintiffs' numerous FOIA requests seeking information concerning blocked assets of al Qaeda and its associates, the United States did not provide any direct notice to any of the Claimants, other September 11th MDL plaintiffs, or their counsel. R. 53 at 7.

---

[8] The "*Federal Insurance* Plaintiffs" are the Claimants in this matter, along with a number of other insurance carriers.

36.     In fact, Claimants were apprised of the filing of the forfeiture proceeding and al

Qaeda's relationship to the targeted funds only as a result of a newspaper article published in the

Chicago Tribune on June 21, 2011, reporting the details of the Government's Verified

Complaint. *Id.*; Exhibit A.

## Claimants' Judgment Against al Qaeda

37.     On July 13, 2011, Judge Daniels referred the motion to assess damages to

Magistrate Judge Frank Maas for a damages inquest. R. 53 at 8; *see also* MDL R. 2444.

38.     On October 14, 2011, Judge Maas issued his Report and Recommendation to

Judge Daniels, concluding that "the Court should award the Plaintiffs damages against al Qaeda

in the amount of $9,351,247,965.99."[9] *Id.*; Exhibit M; *see also* MDL R. 2479.

39.     On December 16, 2011, Judge Daniels formally adopted the Report and

Recommendation in its entirety.  *Id.*; Exhibit N; *see also* MDL R. 2502.

40.     On December 22, 2011, the Clerk of Court of the United States District Court for

the Southern District of New York entered judgment in favor of Claimants and against al Qaeda

in accordance with the December 16, 2011 Order.  *Id.*; Exhibit O; *see also* MDL R. 2514.

41.     On January 10, 2012, Judge Daniels issued an Order directing that the judgment

be made final pursuant to Fed. R. Civ. P. 54(b). R. 78 at 4; *see also* MDL R. 2523.

42.     On January 25, 2012, the Clerk of the Court for the United States District Court

for the Southern District of New York entered a final judgment in favor of Claimants and against

al Qaeda.  *Id.*; Exhibit G; *see also* MDL R. 2538.

43.     Following the expiration of the thirty day appeal period, Claimants registered

their judgment in the Northern District of Illinois on February 27, 2012. E.A. 1; Exhibit P.

---

[9] Claimants' share of this sum with respect to compensatory damages is in excess of $2.5 billion.

44.     Beginning March 13, 2012, Claimants took steps to establish liens against the defendant funds on the basis of the registered final judgments and filed a Praecipe for Writ of Execution in accordance with this Court's procedures. E.A. 5.

45.     In view of the delays attendant to the issuance and service of the Writ of Execution, Claimants also initiated parallel efforts to perfect a lien against the defendant funds through the filing and service of a Notice of Citation to Discover Assets and Citations to Discover Assets, on April 6, 2012, again in accordance with this Court's procedures. E.A. 7. Exhibit Q.

46.     Claimants perfected their lien against the defendant funds on April 6, 2012.  *Id.*; *see also* R. 78 at 5.

47.     Claimants made service upon the judgment debtor pursuant to 735 ISLS § 1402(b). *Id.*

48.     On April 10, 2012, the Courtroom Deputy entered a minute entry before Judge Gettleman ordering the Writ of Execution to issue. E.A. 9.

**Efforts to Obtain Information Regarding Assets of al Qaeda**

49.     On July 30, 2003, even before they filed their civil action against al Qaeda, Claimants sent Freedom of Information Act requests to relevant agencies of the federal government, including the Treasury Department and the Department of Justice, seeking "identification of assets belonging to" al Qaeda and approximately 192 other Executive Order 13224 terrorist designees.  *See* Exhibit A, No. 8.

50.     On or about October 27, 2006, the Treasury Department asserted that responsive documents and information relating to the blocked assets of al Qaeda and other parties within the

scope of Claimants' FOIA request were exempt from disclosure pursuant to FOIA Exemptions 4 and 7(D).  *Id.*

51.     Claimants initiated suit against the Treasury Department relating to a range of FOIA issues in 2005, including Claimants' assertion that they were entitled to the responsive documents and information identifying assets belonging to al Qaeda and the other Executive Order 13224 terrorist designees identified in their 2003 FOIA request.  *Id.*

52.     On or about October 21, 2008, Rena Y. Kim, Chief of the FOIA office of the DOJ-Criminal Division sent a letter to Cozen O'Connor, as counsel for Claimants, in response to the FOIA request seeking information concerning blocked assets of al Qaeda and affiliated parties.  The letter advised that the Department of Justice Criminal Division's Asset Forfeiture and Money Laundering Section ("AFMLS") represented "as of August 5, 2008, the AFMLS has reported that they do not have any records of assets pertaining to the individuals and entities named in your request."  *Id.*

53.     On December 3, 2008, Treasury prevailed at summary judgment in the FOIA litigation on its defense that the responsive documents and information identifying assets belonging to al Qaeda and the other Executive Order 13224 terrorist designees identified in Claimants' 2003 FOIA request were exempt from disclosure pursuant to FOIA Exemptions 4 and 7(D). *Id.*

54.     Due to the classified nature of its investigations concerning the defendant funds and Al Tayyeb, information or documentation identifying the defendant funds, Al Tayyeb's interest in the defendant funds, and Al Tayyeb's membership and role in al Qaeda would not have been subject to disclosure in response to a Freedom of Information Act request, prior to the filing of this forfeiture action on June 19, 2011.

55.     The Government did not provide Claimants with any information regarding the defendant funds during the pendency of the FOIA litigation, which was also ongoing at the time that the Government froze the defendant funds.  *Id.*

**The Forfeiture Proceeding**

*The Court's March 27, 2012 Decision*

56.     On December 5, 2011, the Government filed a Motion to Strike Claimants' Verified Claims and Answers. R. 42. At the time of the filing of the motion to strike, Claimants had not yet obtained a final monetary judgment, and the Government argued that Claimants were unsecured creditors of al Qaeda with no interest in the specific defendant funds and that, as such, Claimants lacked standing to contest the forfeiture action.

57.     On January 27, 2012, Claimants responded by filing both an opposition to the motion to strike and also a Motion for Leave to Amend their Verified Claims and Answers in the forfeiture action, seeking to amend to reflect the final judgment entered in the September 11th MDL two days earlier, on January 25, 2012.  R. 59; 60.

58.     On March 27, 2012, this Court issued its decision on Plaintiffs' motion to strike and Claimants' motion for leave to amend.  R. 74.

59.     The Court granted the motion to strike, reasoning that Claimants, as unsecured creditors, lacked statutory and prudential standing to challenge the forfeiture of the defendant funds. *Id.* at 9-13.[10]  The Court also denied Claimants' motion for leave to amend, reasoning that the proposed amendment would not cure the identified defects in Claimants' standing because, as of March 27, 2012, Claimants had not secured a lien against the defendant funds.  *Id.* at 15.  In reaching that decision, this Court noted as follows:

---

[10] The caption of this case is *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 U.S. Dist. LEXIS 41309 (N.D. Ill. Mar. 27, 2012) ("Kennelly I").

> The Court need not consider whether they legally can serve a
> citation at this time or, if so, whether it would be appropriate then
> to allow the insurance claimants to amend their claims. Similarly,
> the Court need not consider the effects of Terrorism Risk Insurance
> Act of 2002, Pub. L. 107-297, § 201, 116 Stat. 2332, 2337, on the
> claimants' ability to execute their judgments against the property at
> issue in this case.

*Id.*

60.     At the time of the Court's opinion, Claimants were already engaged in the process

of executing their judgment and obtaining a lien against the defendant funds. Claimants' lien

against the defendant funds was perfected on April 6, 2012. E.A. 7.

*The Court's September 25, 2012 Decision*

61.     On April 11, 2012, Claimants filed a Motion for Leave to File Amended Verified

Claims and Amended Answers, seeking to amend to reflect their lien in the defendant funds. R.

77.

62.     On June 8, 2012, the Government opposed this motion, arguing that any

amendment to the forfeiture pleadings would be futile, and also filed a Motion to Quash the Writ

of Execution and Citation to Discover Assets, asserting that the doctrine of sovereign immunity

barred the Claimants' proposed writ and citation and that TRIA did not waive sovereign

immunity. R. 87.

63.     In a September 25, 2012 decision, this Court denied the Government's motion to

quash and granted Claimants' motion for leave to amend.[11] R. 94. With regard to the former, the

Court explained that Congress waived the Government's sovereign immunity pursuant to TRIA,

and it held that the doctrines of prior exclusive jurisdiction and *in custodia legis* did not limit

Claimants' efforts because TRIA authorizes Claimants to execute or attach blocked assets

---

[11] The caption of this case is *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 U.S. Dist. LEXIS 136648 (N.D. Ill. Sept. 25, 2012) ("Kennelly II").

notwithstanding any other provision of law. *Id.* at 8, 11. With regard to Claimants' motion to amend, the Court held that the proposed amendment would not be futile. *Id.* at 25.

64.     The Court explained that Claimants possessed an interest in the defendant funds sufficient to confer Article III standing and that they should be permitted to amend their claims to satisfy the statutory standing requirement and to reflect their lien against the specific property. *Id.* In addition, the Court held that Claimants had prudential standing to challenge the forfeiture because they were within the zone of interests protected by the civil forfeiture statute, and, in any event, TRIA authorizes execution of their judgment.  *Id.*

65.     Claimants filed Amended Claims on October 5, 2012. R. 96-98; Exhibits R-T.

*The Court's December 10, 2012 Decision*

66.     On November 23, 2012, the Government filed a Motion to Certify Interlocutory Appeals pursuant to 28 U.S.C. § 1292(b), seeking to appeal the principal legal rulings issued in the Court's September 25, 2012 decision. R. 100.

67.     On December 10, 2012, the Court denied the Government's Motions to Certify and directed the parties to confer on a discovery plan. R. 110.

68.     Indicating that it wished to avoid potentially protracted and difficult litigation over whether the states secrets privilege applied to evidence  in the Government's possession that might be relevant to the question of al Qaeda's interest in the defendant funds, the Government proposed that it would not contest that its Verified Complaint sufficiently demonstrates al Qaeda's interest in the defendant funds.  In turn, Claimants agreed to forgo discovery into the details of the Government's investigation, Al Tayyeb's role in al Qaeda, and al Qaeda's relationship to the defendant funds.  The parties reached agreement to proceed on that basis.

Respectfully submitted,

COZEN O'CONNOR

Sean P. Carter, Esquire
PA Bar No. 78886
Stephen A. Miller, Esquire
PA Bar No. 308590
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
215-665-2020
scarter1@cozen.com
samiller@cozen.com

*/s/ James I. Tarman, Jr.*
James I. Tarman, Jr., Esquire
Illinois State Bar No. 06274360
Cozen O'Connor
333 West Wacker Drive
Chicago, IL 60606-1293
312-382-3100
jtarman@cozen.com

*Attorneys for Claimants*
Vigilant Insurance Company, Chubb Custom
Insurance Company, Chubb Indemnity Insurance
Company, Federal Insurance Company, Chubb
Insurance Company Of New Jersey, Chubb
Insurance Company Of Canada, Pacific Indemnity
Company, Great Northern Insurance Company,
American Alternative Insurance Company, The
Princeton Excess & Surplus Lines Insurance
Company, Great Lakes UK Insurance Company,
and One Beacon Insurance Group

14