UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6,<br><br>      Defendant. | No. 11 C 4175<br><br>Judge Matthew F. Kennelly |

**Government's Response to Claimants' Local Rule 56.1 Statement**

The United States, by and through its undersigned attorneys, hereby submits the following response to Claimants' Local Rule 56.1 Statement (R. 128).[1]

    1.    Claimants hereby incorporate by reference the parties' Stipulation of Undisputed Facts filed contemporaneously herewith as though set forth at length in Claimants' Statement of Material Facts.

**Response:**    Response not required.

    2.    Claimants are three groups of property insurers. Claimants provided property damage and business interruption coverage to thousands of corporations, companies,

---

[1] Citations to the record in the forfeiture action, *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 11 C 4175 (N.D. Ill. June 19, 2011), are referenced by an "R." notation, followed by the relevant document number and, if appropriate, a page or paragraph number. Citations to the record in the enforcement action, *Art Insurance Company, et al. v. Al Qaeda*, 12 C 1346 (N.D. Ill. Feb. 27, 2012), are identified by an "E.A." notation.

partnerships, trusts and persons that sustained losses as a result of the September 11, 2001 terrorist attacks against the United States (the "September 11th attacks").

**Response**: Undisputed.

3. For over a decade, Claimants have engaged in consistent and substantial efforts to obtain and then to enforce judgments against terrorist entities responsible for the September 11th attacks.

**Response**: Disputed. This statement is an improper characterization of alleged acts, (*i.e.*, a conclusory opinion), is immaterial and is inaccurate to the extent that it suggests that claimants have had judgments against terrorist entities for a decade. *See* Parties' Stipulation of Undisputed Facts, R. 129, attached hereto as Exhibit A, ¶ 42 (claimants did not obtain judgment against al-Qaeda until January 25, 2012).

4. As part of that effort, Claimants engaged in diligent and substantial efforts to identify assets of al Qaeda and its associates from 2003 forward.

**Response**: Disputed. This statement is an improper characterization of alleged acts, (*i.e.*, a conclusory opinion) and is immaterial.

5. On or about June 19, 2011, with prior knowledge of the Claimants' interest in terrorist-related assets, and specifically in al Qaeda assets, the Government instituted a civil forfeiture action in the Northern District of Illinois against certain "defendant funds" then on deposit with R.J. O'Brien & Associates ("RJO") at Harris Bank pursuant to 18 U.S.C. § 981.

**Response**: Disputed. To the extent that paragraph 5 states that claimants had an interest in terrorist-related assets, that statement constitutes an improper and inaccurate legal conclusion. Further disputed to the extent that paragraph 5 suggests that the government filed this forfeiture action in response to the status of the *In Re: Terrorist Attacks* litigation. There is no evidence to support that assertion, which is incorrect.

6. Though maintained by RJO, the defendant funds constituted property of Muhammad Abdallah Abdan Al Ghamdi, also known as Al Tayyeb, a member of the al Qaeda terrorist organization.

**Response**: Undisputed.

7. On or about August 19, 2011, Claimants filed Verified Claims in the forfeiture action alleging that they had priority entitlement to the defendant funds by virtue of a default (later reduced to a final judgment) issued against al Qaeda in the September 11th MDL.

**Response**: Undisputed that claimants filed verified claims in the forfeiture action on August 19, 2011.

8. Though the Government continued to contest Claimants' right to enforce their judgment against the funds, in the past year this Court has recognized that Claimants have standing to contest the forfeiture and that the defendant funds are blocked assets of a terrorist party subject to execution pursuant to § 201(a) of the Terrorism Risk Insurance Act ("TRIA"), notwithstanding any other provision of law.

**Response**: Disputed. This paragraph constitutes an improper characterization of the Court's prior decisions and an improper legal conclusion. The government specifically disputes this paragraph to the extent that it purports to characterize the Court's resolution of motions relating to the sufficiency the parties' pleadings as a resolution of claims on their merits.

9. Given this Court's prior rulings, the sole potential issue remaining before this Court in determining Claimants' entitlement to the defendant funds is whether al Qaeda has an interest in the defendant funds such that Claimants can attach the funds in satisfaction of their judgment.

**Response**: Disputed. This paragraph consists solely of an improper and incorrect legal conclusion.

10. The Government does not contest that al Qaeda had a beneficial interest in the defendant funds and does not contest that its own Verified Complaint contains facts sufficient to carry Claimants' burden on that issue for purposes of summary judgment.

**Response**: Disputed to the extent that this statement consists of an improper legal conclusion. For purposes of the parties' cross-motions for summary judgment, the government does not dispute that al-Qaeda had a beneficial interest in the defendant funds.

11. In its Verified Complaint for Forfeiture, the Government affirms that Al Tayyeb was an al Qaeda operative responsible for providing financial support and fundraising to al Qaeda's terrorist operatives who actively participated in the planning of terrorist attacks on United States citizens.

**Response**: Undisputed.

12. Moreover, the United States has stipulated that it will not contest the sufficiency of the verified facts in its complaint to satisfy Claimants' burden on this issue, as counsel for the Government confirmed to the Court on the record.

**Response**: Disputed to the extent this statement is unclear. For purposes of the parties' cross-motions for summary judgment, the government does not dispute that al-Qaeda had a beneficial interest in the defendant funds.

13. This Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 and 1355(a). This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. 1355(b)(1)(B), because the defendant funds are found within this judicial district.

**Response**: Undisputed.

14. Venue is proper within this judicial district pursuant to 28 U.S.C. 1355(b) and 1395(b) because the defendant funds are located within the Northern District of Illinois.

**Response**: Undisputed.

15. As described in more detail in the Stipulation of Undisputed Facts, Claimants, along with several other insurance companies, filed suit in the Southern District of New York against, *inter alia*, al Qaeda seeking reimbursement for losses paid to insureds as a result of the September 11th attacks. The Claimants made payments to policyholders under the applicable policies in excess of $2.5 billion in compensation for covered losses arising from the September

11th attacks. This suit was consolidated with a number of wrongful death and personal injury lawsuits under the caption *In re: Terrorist Attacks Upon the United States*, 03- MDL-1570 (the "September 11th MDL"), and the matter was assigned to the Honorable Richard C. Casey.

**Response**: Undisputed.

16. The Government has been on the service list for the September 11th MDL since at least March 26, 2004, has appeared in the action, and has filed briefs and attended hearings. As a result, it has been kept fully advised of all developments in that case.

**Response**: Disputed as immaterial and as misleading and inaccurate to the extent it implies that the government filed this forfeiture action in response to the status of the *In Re: Terrorist Attacks* litigation. There is no evidence to support that assertion, which is incorrect. Undisputed that counsel for the United States is on the service list for the *In Re: Terrorist Attacks* litigation.

17. On April 7, 2006, Claimants obtained this Court's equivalent of an order of default against al Qaeda.

**Response**: Undisputed.

18. For the next five years, Claimants diligently pursued a final judgment in the September 11th MDL, which, through no fault of their own, was not entered until January 25, 2012.

**Response**: Disputed to the extent that this statement is an improper characterization of facts, (*i.e.*, a conclusory opinion) and is immaterial. Undisputed that claimants did not receive a final judgment against al-Qaeda until January 25, 2012.

19. On February 13, 2007, Claimants filed a Motion to Assess Damages Against Defaulted Defendants, supported by affidavit testimony.

**Response**: Undisputed but immaterial.

20. In the motion for assessment, Claimants requested that the court issue an order assessing damages in the aggregate amount of $9,481,764,208.61 in favor of certain commercial plaintiffs in the September 11th MDL. The matter was fully briefed by March 14, 2007.

5

**Response**:     Undisputed but immaterial.

21.     On March 22, 2007, Judge Casey died, and on April 25, 2007, the Chief Judge for the Southern District of New York assigned the September 11th MDL to the Honorable George C. Daniels.

**Response**:     Undisputed but immaterial.

22.     At the time of the transfer, approximately one hundred Rule 12 motions to dismiss were fully briefed and awaiting action by the court.

**Response**:     Undisputed but immaterial.

23.     On May 29, 2007, the September 11th MDL Plaintiffs' Executive Committees ("PEC") and its Defendants' Executive Committee ("DEC") submitted status reports at the court's request, and they advised the court that the motion to assess damages was ready for disposition.

**Response**:     Undisputed but immaterial.

24.     The PEC reminded the court of the pendency of that motion during a hearing on June 26, 2007 and in correspondence directed to Judge Daniels on August 1 and August 7, 2007.

**Response**:     Undisputed but immaterial.

25.     Over the next three years, however, Judge Daniels ruled on only two motions to dismiss and conducted only four case management conferences, and he took no action on the motion to assess damages.

**Response**:     Undisputed but immaterial.

26.     On June 3, 2010, the September 11th MDL plaintiffs reluctantly filed an Emergency Petition for a Writ of Mandamus, asking that the Second Circuit either order Judge

Daniels to surrender the case or direct that the Southern District of New York transfer the matter to another judge.

**Response**: Undisputed but immaterial. To the extent that this statement further indicates plaintiffs filed their petition "reluctantly," that statement is an improper characterization of facts (*i.e.*, an opinion).

27. Two weeks later, on June 17, 2010, Judge Daniels issued a sixty-page order disposing of the majority of the pending Rule 12 motions to dismiss.

**Response**: Undisputed but immaterial.

28. On September 13, 2010, Judge Daniels issued another decision disposing of the remaining pre-discovery motions to dismiss. However, those rulings failed to mention the motion to assess damages.

**Response**: Undisputed but immaterial.

29. By letter dated May 27, 2011, the PEC again advised Judge Daniels that "Judge Casey entered default judgments as to liability against al Qaeda" in 2006 and explained that "[p]laintiffs urgently need to have at least certain of their default judgments against al Qaeda reduced to a monetary sum," noting specifically the potential that further delays could prejudice their interests in blocked al Qaeda funds.

**Response**: Disputed. To the extent this statement suggests that claimants had an "interest in blocked al Qaeda funds," that statement constitutes an improper and incorrect legal conclusion. Otherwise, the statement is undisputed, but immaterial.

30. The letter further noted that the pending motion to assess damages was accompanied by "detailed affidavit testimony" specifying the insurance company plaintiffs' damages and that the entry of judgment in an amount certain "will not require significant investment of the Court's time and resources." It concluded:

> At this time, the undersigned co-chairs of the Plaintiffs' Executive Committees respectfully request that the Court take up consideration of the *Federal Insurance*

> Plaintiffs' Motion for Assessment of Damages, *but only insofar as it relates to the al Qaeda terrorist organization itself*. While many of the claims asserted in this litigation have been fiercely contested, Plaintiffs respectfully submit that no party would disagree that the September 11th Plaintiffs are entitled to a judgment against al Qaeda. Any monetary judgment entered against al Qaeda in favor of the *Federal Insurance* Plaintiffs will be used to advance and protect the interest of all plaintiffs in the MDL.

**Response**: Undisputed but immaterial.

31. In a separate letter to Judge Daniels on June 1, 2011 the PEC submitted a copy of the most recent Terrorist Assets Report prepared by the Treasury Department's Office of Foreign Assets Control ("OFAC") which "verifie[d] that OFAC has frozen in excess of $13,000,000 in al Qaeda assets."

**Response**: Undisputed but immaterial.

32. The June 1, 2011 letter also noted that "[p]ursuant to § 201 of the Terrorism Risk Insurance Act, those frozen assets are available to satisfy a judgment against al Qaeda."

**Response**: Undisputed but immaterial.

33. The Government filed the Verified Complaint for Forfeiture less than three weeks later on June 19, 2011.

**Response**: Undisputed that the government filed its verified complaint on June 19, 2011. The government disputes any implication that the filing of the verified complaint for forfeiture was in any way related to the *In Re: Terrorist Attacks* litigation.

34. The Government gave notice of its forfeiture by website publication. The notice made no mention of al Qaeda, al Ghamdi or Al Tayyeb.

**Response**: Undisputed.

35. Despite its knowledge of Claimants' five-year old default, the long-pending motion to assess damages against al Qaeda, and the September 11th MDL plaintiffs' numerous FOIA requests seeking information concerning blocked assets of al Qaeda and its associates, the

8

United States did not provide any direct notice to any of the Claimants, other September 11th MDL plaintiffs, or their counsel.

**Response**: Disputed and immaterial. To the extent that this statement suggests that the government filed this forfeiture action in response to the status of the *In Re: Terrorist Attacks* litigation, that assertion is inaccurate. Further disputed to the extent that this statement suggests the government was required to provide direct notice of its forfeiture action to claimants. Undisputed that the government did not provide claimants direct notice of the forfeiture action.

36. In fact, Claimants were apprised of the filing of the forfeiture proceeding and al Qaeda's relationship to the targeted funds only as a result of a newspaper article published in the Chicago Tribune on June 21, 2011, reporting the details of the Government's Verified Complaint.

**Response**: Undisputed that claimants learned of the forfeiture action through a newspaper article.

37. On July 13, 2011, Judge Daniels referred the motion to assess damages to Magistrate Judge Frank Maas for a damages inquest.

**Response**: Undisputed but immaterial.

38. On October 14, 2011, Judge Maas issued his Report and Recommendation to Judge Daniels, concluding that "the Court should award the Plaintiffs damages against al Qaeda in the amount of $9,351,247,965.99."

**Response**: Undisputed but immaterial.

39. On December 16, 2011, Judge Daniels formally adopted the Report and Recommendation in its entirety.

**Response**: Undisputed but immaterial.

40. On December 22, 2011, the Clerk of Court of the United States District Court for the Southern District of New York entered judgment in favor of Claimants and against al Qaeda in accordance with the December 16, 2011 Order.

**Response**:  Undisputed but immaterial.

41.  On January 10, 2012, Judge Daniels issued an Order directing that the judgment be made final pursuant to Fed. R. Civ. P. 54(b).

**Response**:  Undisputed but immaterial.

42.  On January 25, 2012, the Clerk of the Court for the United States District Court for the Southern District of New York entered a final judgment in favor of Claimants and against al Qaeda.

**Response**:  Undisputed.

43.  Following the expiration of the thirty day appeal period, Claimants registered their judgment in the Northern District of Illinois on February 27, 2012.

**Response**:  Undisputed that plaintiffs[2] registered a judgment in the Northern District of Illinois on February 27, 2012.

44.  Beginning March 13, 2012, Claimants took steps to establish liens against the defendant funds on the basis of the registered final judgments and filed a Praecipe for Writ of Execution in accordance with this Court's procedures.

**Response**:  Disputed.  This statement is improper to the extent it seeks to characterize the reasons claimants took alleged acts (*i.e.*, those statements are immaterial) or the extent that it suggests those acts were proper or had legal import (*i.e.*, improperly calls for a legal conclusion).  In particular, the government disputes that the plaintiffs' action was in accordance with the court's procedures.  The writ sought by the praecipe was obtained *ultra vires*, contrary to abstention doctrines and in violation of the government's sovereign immunity.  It is undisputed that plaintiffs filed a praecipe for writ of execution in the enforcement action on March 13, 2012.

45.  In view of the delays attendant to the issuance and service of the Writ of Execution, Claimants also initiated parallel efforts to perfect a lien against the defendant funds

---

[2]  To the extent that claimants' Statement of Material Facts, R. 128, attributes actions taken by the plaintiffs in the enforcement action, *Art Insurance Company, et al. v. Al Qaeda*, 12 C 1346 (N.D. Ill), as those of solely the claimants, the government's response does not dispute those assertions, but, instead, notes that they are actions taken by all the "plaintiffs."

through the filing and service of a Notice of Citation to Discover Assets and Citations to Discover Assets, on April 6, 2012, again in accordance with this Court's procedures.

**Response**: Disputed. This statement is improper to the extent it seeks to characterize the reasons claimants took alleged acts (*i.e.*, those statements are immaterial) or the extent that it suggests those acts were proper or had legal import (*i.e.*, improperly calls for a legal conclusion). In particular, the government disputes that the plaintiffs' action was in accordance with the court's procedures. The writ sought by the praecipe was obtained *ultra vires*, contrary to abstention doctrines and in violation of the government's sovereign immunity. It is undisputed that plaintiffs filed a citation to discover assets in the enforcement action on April 6, 2012.

      46.      Claimants perfected their lien against the defendant funds on April 6, 2012.

**Response**: Disputed. This statement constitutes an improper and inaccurate legal conclusion.

      47.      Claimants made service upon the judgment debtor pursuant to 735 ISLS § 1402(b). *Id.*

**Response**: Disputed. This statement constitutes an improper legal conclusion.[3]

      48.      On April 10, 2012, the Courtroom Deputy entered a minute entry before Judge Gettleman ordering the Writ of Execution to issue.

**Response**: Undisputed.

      49.      On July 30, 2003, even before they filed their civil action against al Qaeda, Claimants sent Freedom of Information Act requests to relevant agencies of the federal government, including the Treasury Department and the Department of Justice, seeking "identification of assets belonging to" al Qaeda and approximately 192 other Executive Order 13224 terrorist designees.

**Response**: Undisputed but immaterial.

---

[3] To the extent claimants' statement asserts that plaintiffs took action pursuant to "735 ISLS 1402(b)," the government notes that no such provision exists under Illinois law. The government has assumed, however, claimants meant to assert that plaintiffs to action pursuant to 735 ILCS § 2-1402(b). Claimants' statement still constitutes an improper legal conclusion.

11

50. On or about October 27, 2006, the Treasury Department asserted that responsive documents and information relating to the blocked assets of al Qaeda and other parties within the scope of Claimants' FOIA request were exempt from disclosure pursuant to FOIA Exemptions 4 and 7(D).

**Response**: Undisputed but immaterial.

51. Claimants initiated suit against the Treasury Department relating to a range of FOIA issues in 2005, including Claimants' assertion that they were entitled to the responsive documents and information identifying assets belonging to al Qaeda and the other Executive Order 13224 terrorist designees identified in their 2003 FOIA request.

**Response**: Undisputed but immaterial.

52. On or about October 21, 2008, Rena Y. Kim, Chief of the FOIA office of the DOJ-Criminal Division sent a letter to Cozen O'Connor, as counsel for Claimants, in response to the FOIA request seeking information concerning blocked assets of al Qaeda and affiliated parties. The letter advised that the Department of Justice Criminal Division's Asset Forfeiture and Money Laundering Section ("AFMLS") represented "as of August 5, 2008, the AFMLS has reported that they do not have any records of assets pertaining to the individuals and entities named in your request."

**Response**: Undisputed but immaterial.

53. On December 3, 2008, Treasury prevailed at summary judgment in the FOIA litigation on its defense that the responsive documents and information identifying assets belonging to al Qaeda and the other Executive Order 13224 terrorist designees identified in Claimants' 2003 FOIA request were exempt from disclosure pursuant to FOIA Exemptions 4 and 7(D).

**Response**:   Undisputed but immaterial.

54.   Due to the classified nature of its investigations concerning the defendant funds and Al Tayyeb, information or documentation identifying the defendant funds, Al Tayyeb's interest in the defendant funds, and Al Tayyeb's membership and role in al Qaeda would not have been subject to disclosure in response to a Freedom of Information Act request, prior to the filing of this forfeiture action on June 19, 2011.

**Response**:   Disputed.  This statement consists of an improper legal conclusion predicated on speculation.   Claimants have not offered any evidence to support this statement as required by Local Rule 56.1(a).

55.   The Government did not provide Claimants with any information regarding the defendant funds during the pendency of the FOIA litigation, which was also ongoing at the time that the Government froze the defendant funds.

**Response**:   Undisputed.  The defendant funds were not properly included in Treasury's FOIA response, s*ee* Ex. B, ¶¶ 5, 6, and claimants did not submit an updated request regarding additional information concerning blocked al-Qaeda assets, *see* Ex. C, ¶ 7.

56.   On December 5, 2011, the Government filed a Motion to Strike Claimants' Verified Claims and Answers. At the time of the filing of the motion to strike, Claimants had not yet obtained a final monetary judgment, and the Government argued that Claimants were unsecured creditors of al Qaeda with no interest in the specific defendant funds and that, as such, Claimants lacked standing to contest the forfeiture action.

**Response**:   No response necessary.[4]

57.   On January 27, 2012, Claimants responded by filing both an opposition to the motion to strike and also a Motion for Leave to Amend their Verified Claims and Answers in the

---

[4]   The government respectfully submits that paragraphs 56 through 59 and 61 through 67, which summarize the docket entries and *Memorandum Opinion and Orders* issued by the Court, are improper and immaterial.  Docket entries and the Court's *Memorandum Opinion and Orders* speak for themselves.

13

forfeiture action, seeking to amend to reflect the final judgment entered in the September 11th MDL two days earlier, on January 25, 2012.

**Response**: No response necessary.

58. On March 27, 2012, this Court issued its decision on [the government's] motion to strike and Claimants' motion for leave to amend.

**Response**: No response necessary.

59. The Court granted the motion to strike, reasoning that Claimants, as unsecured creditors, lacked statutory and prudential standing to challenge the forfeiture of the defendant funds. The Court also denied Claimants' motion for leave to amend, reasoning that the proposed amendment would not cure the identified defects in Claimants' standing because, as of March 27, 2012, Claimants had not secured a lien against the defendant funds. In reaching that decision, this Court noted as follows:

> The Court need not consider whether they legally can serve a citation at this time or, if so, whether it would be appropriate then to allow the insurance claimants to amend their claims. Similarly, the Court need not consider the effects of Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, § 201, 116 Stat. 2332, 2337, on the claimants' ability to execute their judgments against the property at issue in this case.

**Response**: No response necessary.

60. At the time of the Court's opinion, Claimants were already engaged in the process of executing their judgment and obtaining a lien against the defendant funds. Claimants' lien against the defendant funds was perfected on April 6, 2012.

**Response**: Disputed. This statement constitutes an improper and inaccurate legal conclusion.

61. On April 11, 2012, Claimants filed a Motion for Leave to File Amended Verified Claims and Amended Answers, seeking to amend to reflect their lien in the defendant funds.

**Response**: Disputed. To the extent that this statement asserts that claimants had obtained a lien against the defendant funds, that assertion constitutes an improper and inaccurate legal conclusion. It is undisputed that claimants filed a motion for leave to file amended verified claims and amended answers on April 11, 2012. The filing of that motion is, however, immaterial.

62. On June 8, 2012, the Government opposed this motion, arguing that any amendment to the forfeiture pleadings would be futile, and also filed a Motion to Quash the Writ of Execution and Citation to Discover Assets, asserting that the doctrine of sovereign immunity barred the Claimants' proposed writ and citation and that TRIA did not waive sovereign immunity.

**Response**: No response necessary. The government filed a memorandum in opposition to claimants' motion to amend on June 8, 2012. The government filed a motion to quash writ of execution and citation to discover assets in the enforcement action on April 27, 2012.

63. In a September 25, 2012 decision, this Court denied the Government's motion to quash and granted Claimants' motion for leave to amend. With regard to the former, the Court explained that Congress waived the Government's sovereign immunity pursuant to TRIA, and it held that the doctrines of prior exclusive jurisdiction and *in custodia legis* did not limit Claimants' efforts because TRIA authorizes Claimants to execute or attach blocked assets notwithstanding any other provision of law. With regard to Claimants' motion to amend, the Court held that the proposed amendment would not be futile.

**Response**: No response necessary.

64. The Court explained that Claimants possessed an interest in the defendant funds sufficient to confer Article III standing and that they should be permitted to amend their claims to satisfy the statutory standing requirement and to reflect their lien against the specific property. *Id.* In addition, the Court held that Claimants had prudential standing to challenge the forfeiture

because they were within the zone of interests protected by the civil forfeiture statute, and, in any event, TRIA authorizes execution of their judgment.

**Response**: No response necessary.

65. Claimants filed Amended Claims on October 5, 2012.

**Response**: Undisputed.

66. On November 23, 2012, the Government filed a Motion to Certify Interlocutory Appeals pursuant to 28 U.S.C. § 1292(b), seeking to appeal the principal legal rulings issued in the Court's September 25, 2012 decision.

**Response**: No response necessary.

67. On December 10, 2012, the Court denied the Government's Motions to Certify and directed the parties to confer on a discovery plan.

**Response**: No response necessary.

68. Indicating that it wished to avoid potentially protracted and difficult litigation over whether the states secrets privilege applied to evidence in the Government's possession that might be relevant to the question of al Qaeda's interest in the defendant funds, the government proposed that it would not contest that its Verified Complaint sufficiently demonstrates al Qaeda's interest in the defendant funds. In turn, Claimants agreed to forgo discovery into the details of the Government's investigation, Al Tayyeb's role in al Qaeda, and al Qaeda's relationship to the defendant funds. The parties reached agreement to proceed on that basis.

**Response**: For purposes of the parties' cross-motions for summary judgment, the government does not dispute that al-Qaeda had a beneficial interest in the defendant funds. The parties agreed to a discovery plan that limited discovery.

## Government's Additional Facts

Pursuant to Local Rule 56.1(b)(3)(C), the United States hereby submits the following additional response to Claimants' Local Rule 56.1 Statement (R. 128).[5]

1. In addition to the claimants in the forfeiture action, AXA Art Insurance Company, AXA Global Risks (UK) Ltd., AXA CSA UK Branch, AXA Insurance Company, AXA Reinsurance Company, AXA Re, AXA Re Canadian Branch, AXA Re UK Plc, AXA Versicherung, and SPS Re are named as plaintiffs in the enforcement action. E.A. 1, 5.

2. On August 12, 2005, Cozen O'Conner ("Cozen"), as counsel for various plaintiffs, including claimants, "prosecut[ing] various civil litigation claims against individuals, organizations and nations it believes were responsible for assisting al Qaida with the attacks on America on September 11, 2001," filed suit against the Treasury Department in U.S. District Court for the Eastern District of Pennsylvania, seeking responses to Freedom of Information Act inquiries previously submitted to the government by Cozen. Affidavit of Marshal H. Fields, Jr., attached hereto as Exhibit B, ¶ 4; *Cozen O'Connor v. Treasury*, Case No. 2:05-CV-4332-TJS (E.D. Pa. Aug.12, 2005).

3. The district court overseeing the *Cozen* litigation issued an order on January 12, 2006, requiring the Department of the Treasury to process and produce records responsive to Cozen's FOIA request by November 3, 2006. Ex. B, ¶ 4.

4. The deadline in the court's January 12, 2006 order was subsequently extended to December 1, 2006. Ex. B, ¶ 4.

5. Between January 12, 2006, and December 1, 2006, Treasury completed its search for and processing of responsive documents. Ex. B, ¶ 4.

---

[5] As set forth in its response to claimants' statement of material facts, the government submits that a number of claimants' statements are immaterial. Nevertheless, in an abundance of caution, the government addresses a number of those statements in its additional facts.

6. On December 1, 2006, Treasury sent Cozen a final letter informing Cozen that Treasury had completed the processing of its FOIA request. Ex. B, ¶ 5.

7. The district court overseeing the *Cozen* litigation subsequently upheld both the adequacy of Treasury's search for responsive records, as well as its application of certain FOIA exemptions to withhold, in whole or in part, particular records. The court granted summary judgment in favor of Treasury. Ex. B, ¶ 5; *Cozen O'Connor v. Treasury,* 2:05-cv-4332-TJS, 2008 WL 5093379, *2 (E.D. Pa. December 2, 2008).

8. In upholding the adequacy of Treasury's search, the district court overseeing the *Cozen* litigation held that Treasury was under no obligation to update its response to Cozen's request after December 1, 2006. The district court held that Treasury had appropriately used December 1, 2006, as the "cut-off" date for its FOIA response. Ex. B, ¶ 5; *Cozen O'Connor*, 2008 WL 5093379 at *2.

9. The defendant funds at issue in the instant forfeiture proceeding were blocked pending investigation on June 18, 2007. Parties' Stipulation of Undisputed Facts, R. 129, attached hereto as Exhibit A, ¶ 18; Ex. B, ¶ 6.

10. Information relating to the defendant funds did not exist in OFAC's aggregate database of blocked assets at the time that Treasury conducted its search of the database for records responsive to Cozen's FOIA request. Information relating to the defendant funds was not included in Treasury's production to Cozen. Ex. B, ¶ 6.

11. As the defendant funds were not blocked pending investigation until after the December 1, 2006, cut-off date that the district court overseeing the *Cozen* litigation had approved as the "cut-off" date Treasury's review, Treasury was under no obligation to process records relating to the defendant funds in response to the FOIA request. Ex. B, ¶ 6.

18

12. Though the claimants were aware that the Department of the Treasury had blocked additional al-Qaeda associated funds in 2007, they did not submit an updated request to Treasury requesting additional information concerning blocked al-Qaeda assets. *See* Claimants' Amended Answers to Plaintiff's First Set of Interrogatories, attached hereto as Exhibit C, ¶ 7.

13. The claimants failed to provide notice of their enforcement action, which was docketed before Judge Gettleman, to the government or this Court. *See* generally, *Art Insurance Company v. Al Qaeda*, 12 C 1346 (N.D. Ill.).

14. Claimants informed the forfeiture court of its enforcement action only after serving the citation and procuring Judge Gettleman's issuance of the writ. R. 77.

Respectfully submitted,

GARY S. SHAPIRO
United States Attorney

By: s/ Joel Hammerman /
JOEL HAMMERMAN
Assistant United States Attorney
219 South Dearborn, Room 500
Chicago, Illinois 60604

JAIKUMAR RAMASWAMY
Chief, Asset Forfeiture and Money Laundering Section

By: s/ Jennifer Ambuehl /
JENNIFER AMBUEHL
Trial Attorney
U.S. Department of Justice, Criminal Division
1400 New York Ave., NW, Suite 10100
Washington, D.C. 20530