## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6, <br><br> Defendant, <br><br> VIGILANT INSURANCE COMPANY; CHUBB CUSTOM INSURANCE COMPANY; CHUBB INDEMNITY INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; CHUBB INSURANCE COMPANY OF NEW JERSEY; CHUBB INSURANCE COMPANY OF CANADA; PACIFIC INDEMNITY COMPANY; AND GREAT NORTHERN INSURANCE COMPANY; AMERICAN ALTERNATIVE INSURANCE COMPANY; THE PRINCETON EXCESS & SURPLUS LINES INSURANCE COMPANY; AND GREAT LAKES UK INSURANCE COMPANY; AND ONEBEACON INSURANCE GROUP <br><br> Claimants. | No. 11 C 4175 <br> Judge Matthew F. Kennelly |

## STIPULATION OF UNDISPUTED FACTS

American Alternative Insurance Company, Princeton Excess & Surplus Lines Insurance Company, Great Lakes UK Insurance Company, Vigilant Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Federal Insurance Company, Chubb Insurance Company of New Jersey, Chubb Insurance Company of Canada, Pacific Indemnity Company, Great Northern Insurance Company and OneBeacon Insurance Group (collectively, "Claimants"), and the United States of America (the "Government") stipulate to the following facts for the purpose of the parties' proposed motions for summary judgment:

*In re: Terrorist Attacks Upon the United States*

1. Claimants are three groups of property insurers.

2. Claimants provided property damage and business interruption coverage to insureds that sustained losses as a result of the September 11, 2001 terrorist attacks against the United States (the "September 11th attacks").

3. Claimants made payments to insureds under policies of insurance for losses incurred as a result of the September 11th attacks.

4. On September 10, 2003, Claimants, along with several other insurance companies, filed suit in the United States District Court for the Southern District of New York against, *inter alia*, al-Qaeda seeking reimbursement for losses paid to insureds as a result of the September 11th attacks. That action was entitled *Federal Insurance Company v. Al Qaida,* 03-CV-6978, R. 1 (S.D.N.Y. Sept. 10, 2003) (hereinafter, "*Federal Insurance*").

5. Several thousand parties, including family members of victims of the September 11th attacks, also initiated suits against al-Qaeda in the Southern District of New York and the District of Columbia asserting claims arising from the September 11th attacks.

6.  On March 10, 2004, the *Federal Insurance* action was consolidated with actions related to the September 11th attacks in the Southern District of New York under the caption *In re: Terrorist Attacks on September 11th, 2001,* 03-MDL-1570 (S.D.N.Y. March 10, 2003) (hereinafter, "*In re: Terrorist Attacks*").

7.  On or about September 29, 2005, Claimants moved for entry of default judgment against al-Qaeda in the *In re: Terrorist Attacks* litigation.

8.  Though Claimants requested that the court grant judgment in a specific liquidated amount, on April 7, 2006, the *In re: Terrorist Attacks* court entered a "default judgment as to liability" against al-Qaeda in favor of certain plaintiffs, including the Claimants.

### Allegations of the Government's Verified Complaint for Forfeiture

9.  On June 19, 2011, the Government instituted the instant civil forfeiture action in the Northern District of Illinois against all funds on deposit with R.J. O'Brien & Associates ("RJO"), held in the name of Bridge Investment, S.L. ("Bridge Investment"), bearing account numbers XXX-X3931 and XXX-X7184, and maintained at Harris Bank in account number XXX-171-6 (hereinafter, the "defendant funds") pursuant to Title 18, United States Code, Section 981(a)(1)(G)(i) and (iv) (hereinafter, the "forfeiture action").

10. The defendant funds are the assets that were maintained in RJO commodities futures trading accounts, the first of which was opened in or about March 2003 in the name of Bridge Investment.

11. From its inception through September 2005, a total of approximately $26,714,356 was deposited into the Bridge Investment account at RJO.

12. Due to poor trading positions, the Bridge Investment trading account decreased in value. By the end of May 2006, the aggregate value of the Bridge Investment account was approximately $6,660,000.

13. In or about November 2006, RJO established a second Bridge Investment futures trading account, assigned RJO account number XXX-31784, that was secured with Bridge Investment's existing margin.

14. The defendant funds constitute property of Muhammad Abdallah Abdan Al Ghamdi, also known as Abu Al Tayyeb ("al Tayyeb"), who was a member of al-Qaeda.

15. Al-Qaeda is an international terrorist organization. Since 1996, al-Qaeda and its affiliates have engaged in, planned and perpetrated federal crimes of terrorism against the United States, citizens and residents of the United States and their property, including the September 11th attacks. Al-Qaeda was designated as a foreign terrorist organization by the United States Department of State pursuant to Section 219 of the Immigration and Nationality Act on or about October 8, 1999, and remains so designated today, and was designated by the Department of the Treasury, pursuant to Executive Order 12947 of January 23, 1995, ("Prohibiting Transactions with Terrorists Who Threaten to Disrupt the Middle East Peace Process") and Executive Order 13224 of September 23, 2001 ("Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism"), on August 21, 1998 and September 24, 2001, respectively. Al-Qaeda is therefore referred to as a Specially Designated National ("SDN").

16. Al Tayyeb was arrested by Saudi Arabian law enforcement authorities in or about June 2006. Prior to his arrest, al Tayyeb was considering various types of terrorist attacks that he

could facilitate against Saudi Arabian government officials, United States military personnel and property, and United States citizens residing in Saudi Arabia.

17. The Government will not contest that al-Qaeda had a beneficial interest in the defendant funds.

18. On or about June 18, 2007, the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), pursuant to Executive Order 13224 of September 23, 2001 ("Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism"), the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Section 1701, *et seq.*, and the Global Terrorism Sanctions Regulations, 31 Code of Federal Regulations, Part 594, blocked the two RJO Bridge Investment accounts pending investigation.

19. In response to the OFAC blocking action, RJO renamed Bridge Investment's two trading accounts from account numbers XXX-23931 and XXX-31784 to account numbers XXX-X3931 and XXX-X1784, respectively.

20. On July 8, 2011, OFAC issued a license to the Department of Justice permitting it to "take all necessary actions in furtherance of the . . . pursuit of [the] civil forfeiture of the [defendant funds]."

21. On July 12, 2011, the Court granted the government's application for warrants of arrest *in rem* for the defendant funds. The government executed the warrants and took possession of approximately $6,226,424.95 on July 12, 2011.

22. The Government provided notice of the forfeiture action to individuals that the Government considered potential claimants by varying means, including telephone, facsimile, electronic mail, common carrier, and through official governmental channels, as appropriate.

5

The government also provided public notice of the civil forfeiture proceeding through an official government internet site for at least 30 consecutive days beginning on June 24, 2011.

23. The Claimants learned of the forfeiture action from a June 21, 2011, newspaper article published in the Chicago Tribune entitled *Al-Qaida Operative Invested With Chicago Brokerage House in 2005* (hereinafter, the "Chicago Tribune article").

24. On or about August 19, 2011, Claimants filed Verified Claims in the forfeiture action. Claimants filed Answers to Plaintiff's Verified Complaint for Forfeiture in the forfeiture action on September 7, 2011.

25. Claimants are the only parties that remain as claimants in the forfeiture action.

### Claimants' Knowledge of the Defendant Funds

26. Prior to the filing of the forfeiture action on June 19, 2011, the Government did not publically disclose its investigation relating to the defendant funds.

27. Prior to the filing of the forfeiture action on June 19, 2011, Claimants were not aware of the existence of the defendant funds, Bridge Investment, S.L., or al Tayyeb.

28. Prior to the filing of the forfeiture action on June 19, 2011, Claimants were not aware of al Tayyeb's interest in the defendant funds, or al Tayyeb's membership in or association with al-Qaeda.

29. Claimants became aware of Bridge Investment, the defendant funds, al Tayyeb's interest in those funds, and al Tayyeb's membership in al-Qaeda on June 21, 2011, through the Chicago Tribune article.

30. Prior to the filing of this forfeiture action on June 19, 2011, Claimants had not served a writ of execution or initiated a citation proceeding as to the defendant funds.

31. Although Claimants were not aware of the defendant funds or al Tayyeb prior to June 19, 2011, Claimants were aware that the United States had blocked property and interests in property of SDNs, including al-Qaeda and individuals and entities related to al-Qaeda.

32. Pursuant to Section 304 of Public Law 102.138, as amended by Public Law 103.236 (22 U.S.C. §2656g), the Secretary of the United States Department of the Treasury in consultation with the Attorney General of the United States and appropriate investigative agencies, is required to provide an annual report to Congress concerning the nature and extent of assets held in the United States by state sponsors of terrorism and organizations engaged in international terrorism.

33. The Secretary of the United States Department of the Treasury has fulfilled these reporting obligations through the issuance of an annual public report bearing the title *Terrorist Assets Report.*

34. Blocked assets referenced in the *Terrorist Assets Report* represent amounts frozen under United States sanctions programs that block all property and interests in property of designated or blocked parties in the United States or in the possession or control of a United States person.

35. Blocked assets referenced in the *Terrorist Assets Report* include assets not actually owned by designated or blocked parties, including assets "relating to" a designated party.

36. The *Terrorist Assets Reports* for calendar years 2007 through 2011 included information concerning blocked assets relating to al-Qaeda.

7

37. The *Terrorist Assets Reports* for calendar years 2007 through 2011 included the defendant funds within the aggregate amount of al-Qaeda-related blocked assets, but did not specifically identify the defendant funds.

### Further Developments as to Claimants' Proceedings Against al-Qaeda

38. On December 22, 2011, the court in the *In Re: Terrorist Attacks* litigation entered an Order awarding certain plaintiffs, including the Claimants, a damage award against al-Qaeda in the amount of $9,351,247,965.99. This amount included a compensatory damage award in favor of Claimants in excess of $2.5 billion.

39. On January 10, 2012, the *In Re: Terrorist Attacks* court issued an Order directing that the judgment against al-Qaeda be made final pursuant to Federal Rule of Civil Procedure 54(b).

40. On January 25, 2012, the Clerk of the Court for the United States District Court for the Southern District of New York entered a final judgment in favor of Claimants and against al-Qaeda.

41. Certain Claimants, along with other insurance companies, registered their judgment against al Qaeda in the Northern District of Illinois on February 27, 2012, by filing an action with the United States District Court for the Northern District of Illinois. That action, which is entitled *Art Insurance Company, et al., v. Al-Qaeda*, Case No. 12 C 1346, was docketed before Judge Gettleman (hereinafter, the "enforcement action").

42. On March 13, 2012, the enforcement action plaintiffs filed a praecipe for a writ of execution in the enforcement action in which they requested that the court direct the United States Marshal to execute their al-Qaeda judgment against the arrested defendant funds.

8

43. The enforcement action plaintiffs also filed a notice of citation to discover assets and citations to discover assets in the enforcement action, which was served on the United States Marshals Service on April 6, 2012.

44. On April 10, 2012, the enforcement action court entered a minute entry ordering the writ of execution to issue.

45. In an April 12, 2012 status conference in the forfeiture action, this Court agreed to assume jurisdiction of the enforcement action as a related matter to the forfeiture action.

*Attorneys for Claimants*
Cozen O'Connor

*/s/ James I. Tarman, Jr.*
James I. Tarman, Jr., Esquire
Illinois State Bar No. 06274360
Cozen O'Connor
333 West Wacker Drive

312-382-3100

jtarman@cozen.com

Sean P. Carter, Esquire
PA Bar No. 78886
Stephen A. Miller, Esquire
PA Bar No. 308590
1900 Market Street
Philadelphia, PA 19103
215-665-2105
scarter1@cozen.com
samiller@cozen.com

*United States Attorney*
Gary S. Shapiro

Joel Hammerman
Assistant United States Attorney
219 South Dearborn, Room 500
Chicago, Illinois 60604

Jaikumar Ramaswamy

Chief, Asset Forfeiture and Money Laundering Section

Jennifer Ambuehl
Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW
Suite 10100
Washington, D.C. 20530