UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>   v.<br><br>ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6,<br><br>      Defendant. | No. 11 C 4175<br><br>Judge Matthew F. Kennelly |

**UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Claimants remain unable to satisfy the requirements of forfeiture's statutory framework and failed to allege an ownership interest in the defendant *res* sufficient to meet Article III's pleading requirement at the time they filed their claims. Instead, claimants argue that TRIA exempts them from forfeiture's statutory regime and that they satisfied the Constitution's "case or controversy" requirement by alleging that they would acquire an interest in the defendant funds given time. Well-established law, as well as several recent appellate court decisions, undermine these arguments.

First, in *United States v. Holy Land Foundation for Relief and Development,* No. 11-10535, 2013 WL 3197161 (5th Cir. June 25, 2013), the Fifth Circuit Court of Appeals held TRIA inapplicable in forfeiture proceedings. In particular, the court held that once previously frozen

assets are subjected to forfeiture pursuant to a validly obtained license, those funds are no longer "blocked" as defined by TRIA, thereby rendering the statute inapplicable. *Id.* at *5-6. Instead, the *Holy Land* court held that proposed forfeiture claimants, like those in this case, must satisfy the requirements of forfeiture's rules to prevail on their claims. *Id.* As claimants tacitly acknowledge in their response, this is a standard they cannot meet.[1]

Claimants' proposed intervention in this action is similarly belied by two recent Seventh Circuit decisions addressing the constitutional standing requirements of a forfeiture claimant. In *United States v. $196,969*, No. 12-3414, 2013 WL 2507000 (7th Cir. June 11, 2013) and *United States v. $574,840*, No. 12-3568, 2013 WL 2507635 (7th Cir. June 11, 2013), the Seventh Circuit reiterated the maxim that although the requirements to establish constitutional standing in an asset forfeiture action are undemanding, they are not non-existent. The Constitution, like the statutory requirements of Supplemental Rule G, requires that a claimant allege facts that, if taken as true, would establish an ownership or other legal interest in the defendant property. Again, this is a standard claimants have never been able to satisfy because, at the time they filed their claims, they possessed nothing more than an anticipated judgment against al-Qaeda, and certainly not an interest in any of its specific assets.

Accordingly, when the hyperbole of claimants' response is swept aside, what remains is the simple truth that, at the time they filed their claims, claimants lacked the statutory, prudential, and constitutional standing to appear in this forfeiture action. Claimants did not have an ownership interest in the defendant funds and could not then and cannot today qualify as

---

[1] The *Claimants' Memorandum of Law in Support of Their Motion for Summary Judgment and in Opposition to the United States' Motion for Summary Judgment*, R. 141, is referred to herein as claimants' "response." The government's *Memorandum in Support of its Motion for Summary Judgment and in Opposition to Claimants' and Plaintiffs' Motions for Summary Judgment*, R. 136, is referenced as the government's "summary judgment memorandum." The method of citation utilized in the government's summary judgment memorandum is incorporated herein by reference. *See id.* at 2 n.1.

"innocent owners" as required by the forfeiture statute. *See* 18 U.S.C. § 983(d). Moreover, TRIA does not provide claimants a mechanism to bypass forfeiture's fundamental requirements.

Finally, claimants' proposed intervention in this forfeiture action must be rejected because the manner in which they sought to acquire their supposed interest in the defendant funds was not only impermissibly delinquent, but violative of the government's sovereign immunity and the abstention doctrines of prior exclusive jurisdiction and *in custodia legis*. Because claimants' supposed "interest" in the defendant funds was obtained *ultra vires*, it is illusory and cannot support their alleged claims.

## I. TRIA HAS NO APPLICATION IN FORFEITURE.

### A. The Defendant Funds Are Not Blocked From Forfeiture.

From the onset of this litigation through their motion for summary judgment, claimants have predicated their claims on the theory that TRIA supersedes any substantive and procedural impediments to their claims. *See, e.g.*, R. 141. Claimants have argued that TRIA obviates the need for them to adhere to forfeiture's statutory regime because TRIA acts as legal kryptonite, disarming every impediment to their claim. *See, e.g.*, R. 116 at 22-23; R. 141 at 6. Claimants therefore argue that the Court should excuse their admitted failure to meet forfeiture's procedural and substantive requirements and grant their claim to the defendant funds.

In *Holy Land*, the Fifth Circuit Court of Appeals rejected the same arguments advanced by the claimants in this litigation. *Holy Land,* 2013 WL 3197161. The court held that TRIA's reach did not extend to criminal forfeiture proceedings because the two statutory regimes – TRIA and forfeiture – were not in conflict. *Id.* at *7. As the Fifth Circuit stated, "TRIA specifically limits the definition of 'blocked' assets to those that are seized or frozen under § 5(b) of the Trading with the Enemy Act ["TWEA"] or § 202 or § 203 of the [International Emergency

Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, et seq.)]." *Holy Land*, 2013 WL 3197161, at *5. Assets restrained, or, as they are in this case, arrested for forfeiture, are not "blocked" as that term is defined by TRIA. *See id.* In particular, the court held that when an asset is brought within the district court's jurisdiction pursuant to a license exempting it from otherwise applicable restrictions for the purpose of a pending forfeiture proceeding, the *res* is no longer "blocked." *Id.* at *6. Thus, while the funds at issue in *Holy Land* may have been previously restricted, the prohibition against financial transactions involving those funds was lifted when the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), provided a license allowing for their disposition through forfeiture. *See id.* The funds were therefore no longer "blocked" within the context of the government's forfeiture action, rendering TRIA inapplicable. *See id.* at *5 ("Nor does [TRIA] reach those funds which the government has been given authorization to control through another means.").

Like the assets in *Holy Land*, the defendant funds in this case were removed from TRIA's ambit when they were arrested by the Court pursuant to an OFAC license. *Id.* at *6 ("Once an indictment had been filed and the assets restrained, victims of terrorism could no longer execute against those assets under the TRIA."). Pursuant to the license, the defendant funds were subject to forfeiture and to the third-party claims of any party that could qualify as an "innocent owner" within forfeiture's statutory rubric. *See* 18 U.S.C. § 983(d). Available to any qualifying claimant, the defendant funds were no longer "blocked" within the context of this forfeiture proceeding, thereby eliminating TRIA's application.

Claimants argue that the *Holy Land* court erred in reversing the district court's determination that TRIA's "notwithstanding" clause superseded the rules governing forfeiture. *See* R. 141 at 11. They argue that the district court's vacated decision is more "well-reasoned"

and should be adopted over the appellate court authority that reversed it. *See id.* Although this Court is not bound to accept the Fifth Circuit's judgment, it is (as the only appellate court decision to address this issue) persuasive authority – much more so than the vacated decision upon which claimants ask this Court to rely.

Claimants further assert that the license obtained by the government did not unblock the defendant funds for purposes of TRIA because it represented a specified, limited exemption to OFAC's freeze and not a complete lift of its restrictions. Again, this is an argument considered and rejected by the Fifth Circuit. In *Holy Land*, the court explained that funds subject to an OFAC license are not constrained by IEEPA's prohibitions and therefore cannot be characterized as "blocked," as that term is defined by TRIA. *Holy Land*, 2013 WL 3197161, at *6 (citing 31 C.F.R. § 594.202); *see also Bank of New York v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (per curiam) (Assets subject to a license are not "blocked assets under the TRIA."); *Estate of Heiser v. Iran*, 807 F. Supp. 2d 9, 18 n.6 (D.D.C. 2011) ("Thus, because transactions . . . are undertaken under an OFAC licensing scheme, they are unblocked and not subject to [TRIA] attachment."). Like the assets in *Holy Land*, the defendant funds were arrested by the government pursuant to an OFAC license authorizing the disposition of those funds in this forfeiture proceeding. Thus, parties that wished to file a claim in this action were required to comply with forfeiture's substantive and procedural prerequisites, including the requirement that they establish that they qualified as "innocent owners." *See* 18 U.S.C. § 983(d)(2)(A) & (d)(3)(A).

In their response, claimants further erroneously argue that only TRIA's definition of exempted blocked assets can define TRIA's scope.[2] While TRIA may limit its application in

---

[2] As claimants note, TRIA defines the term blocked assets as "any asset seized or frozen by the United States under section 5(b) of the [TWEA] or under sections 202 and 203 of [IEEPA]." 28 U.S.C. § 1610 Note (d)(2)(A), "Definitions." The statute exempts from this definition, "property that – (i) is subject to a license issued by the United States Government for final payment, transfer, or disposition . . .

certain circumstances, those restrictions do not preclude all means by which terrorist assets can become "unblocked." Assets can be released from OFAC restrictions in a number of ways. By way of example, OFAC can rescind the designation of a previously blocked person, resulting in the unblocking of the person's property and property interests, *see* 31 C.F.R. § 501.806, or the blocked property can be confiscated by the United States. *See Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 271 (2d Cir. 2003).

### B. TRIA And Forfeiture Are Not In Conflict.

Irrespective of the defendant funds' "blocked" status, TRIA's "notwithstanding" clause does not operate to obviate the requirements of the civil forfeiture rubric because the two statutory regimes are not in conflict. Thus, once the defendant funds were exempted pursuant to an OFAC license, TRIA became irrelevant. Held by the Court, the only manner in which to assert a claim to the money was through the forfeiture process. *Holy Land*, 2013 WL 3197161, at *6.

As claimants acknowledge in their response, TRIA's "notwithstanding" clause is not unbounded. *See* R. 141 at 6 ("It is not, nor has it ever been, Claimants' contention that TRIA trumps any and all substantive and procedural legal rules and norms."). Rather, as a matter of common sense, the statute's "notwithstanding" clause is limited to the substantive reach of the statutes the provision was designed to address. *See Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1019 (7th Cir. 1995); *see also Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (the "provisions of the 'notwithstanding' section override conflicting provisions of any other section"). TRIA was, of course, enacted to facilitate the execution of judgments obtained by the victims of terrorism against the blocked assets of responsible parties.

---

in connection with a transaction for which the issuance of such license has been specifically required by statute other than [IEEPA] . . . ." 28 U.S.C. § 1610 Note (d)(2)(B).

The provision was never intended to override every conceivable scenario that could frustrate a victim's collection efforts. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 386 (2009) (recognizing the limited scope of Section 201(a)'s "notwithstanding" clause); *Smith*, 346 F.3d at 271 ("the 'notwithstanding' clause applies only when some 'other provision of law' conflicts with TRIA"). The forfeiture laws – which do not immunize or "block" the ability of claimants to execute their judgment against terrorists' assets – do not fit within that class of conflicting laws. TRIA therefore was not intended to limit the government's ability to use forfeiture as a tool to combat terrorist financing. *Holy Land*, 2013 WL 3197161, at *7. Moreover, despite claimants' assertion to the contrary, nothing in the legislative history suggested that Congress intended TRIA as a limitation on the government's attempt to forfeit terrorist assets. *See Smith*, 346 F.3d at 271-72. Rather, as Senator Harkin noted during the consideration of TRIA, "any assets as to which the United States claims ownership are not included in the definition of 'blocked assets' [in TRIA § 201] and are not subject to execution or attachment under this provision." 148 CONG. REC. S11524-01, S11528 (daily ed. Nov. 19, 2002).

Although professing an acknowledgement of TRIA's limitations, claimants still ask the Court to read the statute's "notwithstanding" clause as a litigative cure-all, available to set aside any rule that would operate to preclude their recovery. *See, e.g.*, R. 141 at 6 (stating that "to the extent that a rule of law – whether forfeiture law, sovereign immunity, or common law – conflicts with Claimants' ability to attach the defendant funds . . . TRIA authorizes execution of Claimants' judgments."). In particular, claimants argue that TRIA should be read to trump forfeiture's statutory rules in this case because, without TRIA, they cannot satisfy those rules. *See* R. 141 at 10 ("The forfeiture action . . . cannot coexist with TRIA in determining the proper

7

disposition *of the present case*.") (emphasis added). Claimants' suggestion that TRIA should be read as a case-by-case tool to assure a victim's recovery is an argument that has been rejected by a number of courts. *See Smith*, 346 F.3d at 271-72. The Fifth Circuit refused to adopt such an interpretation in *Holy Land*, rejecting a "sweeping [interpretation of TRIA] that assumes that the 'notwithstanding' clause trumps any other law that has the incidental effect of removing funds from the reach of judgment creditors." *Holy Land*, 2013 WL 3197161, at *8; *see also id.* at *7 (refusing to "grant undue power to the [TRIA] 'notwithstanding' clause."). In particular, the court refused to "find conflict between two statutes where there is none." *Id.* at *7. The Fifth Circuit's decision is correct. The government's forfeiture action is the sole forum to adjudicate claims against the defendant funds and TRIA does not provide claimants with an alternative procedure.

### C. Claimants Are Not Innocent Owners.

Claimants are required to adhere to forfeiture's procedural and substantive requirements and this Court has already held that they have failed to do so. In particular, when they first sought to intervene in this forfeiture action, claimants were unable to present claims and answers that alleged an actual ownership interest in the defendant funds. As the Court explained in its September 25, 2012 *Memorandum Opinion and Order,* the forfeiture statute requires that a claimant acquire its interest in the defendant *res* prior to the date that the government files its forfeiture action. R. 94 at 21. Claimants, of course, had no such interest. *See id.* Moreover, claimants have not and cannot satisfy the "innocent ownership" criteria required by Section 983(d). *See generally* 18 U.S.C. § 983(d). Thus, under the forfeiture statute, their claims should be dismissed and judgment should be entered for the government.

## II. THERE IS NO BASIS TO UNARREST THE DEFENDANT FUNDS.

In a tacit acknowledgment that the defendant funds are not blocked for purposes of this case, claimants request that the Court effectively reject the government's forfeiture complaint, by "unarresting" the defendant funds in order to "return" them to TRIA's grasp. *See* R. 141 at 13-14. Claimants argue that this *de facto* dismissal of the government's action is necessary to realize what they characterize as TRIA's legislative intent, which they appear to define as their success. *See id.* at 13-15. Alternatively, claimants request that the Court release the defendant funds to their temporary custody. Claimants, however, fail to cite a rule, regulation, statute or case that would actually support these proposed remedies and none are authorized by Federal Rule of Civil Procedure 56, which is, of course, the Rule governing the parties' cross-motions. *See* Fed. R. Civ. P. 56(a) (setting forth the standards and remedies for summary judgment).

Claimants argue that the defendant funds' arrest was unnecessary and inequitable and that, accordingly, the Court should release the funds. *See* R. 141 at 13 n.2.[3] Their argument is predicated on a mistaken understanding of the nature of these proceedings. A civil forfeiture action is a proceeding *in rem*. To obtain jurisdiction over the government's complaint, the Court was required to take actual or constructive possession of the defendant funds. *See* Fed. R. Civ. P. Supp. G(3)(b) (holding that funds must be arrested unless already subject to a *judicial* restraining order) (emphasis added); *see also United States v. 475 Martin Lane*, 545 F.3d 1134, 1144 (9th Cir. 2008) ("*In rem* jurisdiction is obtained by arrest under process of the court.") (internal quotations omitted); *United States v. All Funds Distributed to or on Behalf of Weiss*, 345 F.3d 49, 55 (2d Cir. 2003) ("When a forfeiture suit is commenced against personalty, the government

---

[3] Claimants' request is, of course, predicated on the unsupported premise that R.J. O'Brien & Associates would accept the money. The implication of available evidence suggests the contrary. As the Court is aware, R.J. O'Brien did not file a claim either on its own behalf or that of its former clients.

must seize the defendant property."). OFAC's unrelated prior restraint of the defendant funds would not have supported the Court's jurisdiction. The assets' arrest was therefore required.

Claimants next argue that the Court should purposefully thwart the application of the civil forfeiture rules by releasing the defendant funds to their custody pursuant to Title 18, United States Code, Section 983(f), which, claimants suggest, would effectively "re-block" the defendant funds. Again, this argument suffers from a number of flaws. First, as claimants candidly admit, the plain language of the statute prohibits their request, as Section 983(f) does not apply to arrested electronic funds. *See* 18 U.S.C. § 983(f)(8)(A). Moreover, the purpose of Section 983(f) is to provide a temporary reprieve from the unintended hardship a court's restraint of property may cause, like interfering with a business's operation, preventing an individual from working, or leaving an individual homeless. *See* 18 U.S.C. § 983(f)(1)(C). Section 983(f) is not intended as a tool to influence the strength of litigants' claims. Second, even if the Court were to somehow "unarrest" or otherwise release the defendant funds during the pendency of the forfeiture proceeding, the money would not, once again, become blocked. It is the OFAC license subjecting the defendant funds to forfeiture that removed the money from the restrictions of IEEPA, not the Court's arrest warrant. The defendant funds' arrest was necessary to invoke the Court's jurisdiction. However, the right to access the funds by the government or an innocent owner through the forfeiture process was provided by OFAC's license.

### III. WITH NO INTEREST IN THE DEFENDANT FUNDS AT THE TIME THAT THEY FILED SUIT, CLAIMANTS LACKED CONSTITUTIONAL STANDING.

Referring the Court to its September 25, 2012 *Memorandum Opinion and Order*, claimants argue that they have satisfied the constitutional and statutory standing requirements required by Article III and Rule G. Claimants' arguments, however, do not account for either the

changed posture of the case, the additional cases cited by the government, or the Seventh Circuit's recent forfeiture decisions.

On June 11, 2013, the Seventh Circuit issued two decisions addressing forfeiture's standing requirements. *See $196,969*, 2013 WL 2507000; *$574,840*, 2013 WL 2507635. In those decisions, the court noted the overlap in the standing requirements of Rule G and Article III. *Cf. $196,969*, 2013 WL 2507000, at *2. To establish constitutional standing, a claimant must plead a personal interest in the subject property that would be injured by the forfeiture; "Rule G(5) requires more, but the more is an addition to what is required to plead Article III standing." *$574,840*, 2013 WL 2507635, at *3. Although Article III does not require a claimant to prove it has "a colorable legal interest in the property," it requires, at a minimum, that the claimant *allege* an actual property interest in the defendant *res*. *See $196,969*, 2013 WL 2507000, at *2.

Claimants argue that, under TRIA, they were not required to satisfy the strictures of Rule G. For reasons previously stated, they are mistaken. However, even if one were to adopt claimants' argument, it would not absolve them from the constitutional requirement that they allege a specific interest in the defendant funds. Claimants' inability to allege such an interest at the time they filed their claims therefore remains dispositive.

In their response, claimants assert that they did not need to allege a legal interest in the defendant funds to establish their constitutional standing. Instead, claimants argue they had a stake in this litigation because if the government was allowed to forfeit the defendant funds, they would be deprived of the ability to execute their then-anticipated judgment against those funds. R. 141 at 21. Put differently, claimants argue that their status as al-Qaeda general creditors provided them an interest in the terrorist organization's specific assets, irrespective of whenever

11

and wherever they discovered those assets. In its summary judgment memorandum, the government identified scores of judicial decisions that have held differently, requiring a claimant to identify an ownership interest in the specific defendant *res* in order to satisfy Article III's pleading requirement. *See* R. 136 at 15 n.14. Moreover, the government presented a series of cases stating that general creditors do not have constitutional standing to appear as claimants in forfeiture actions taken against their debtors' assets. *See id.* at 15 n.15.

In *United States v. $196,969* and *United States v. $574,840*, the Seventh Circuit explained that to satisfy the constitutional requirements of Article III, a claimant is only required to allege a property interest in the subject funds. *See $574,840*, 2013 WL 2507635, at *3. The court articulated the type of alleged injury that would suffice – an allegation that "the government should be ordered to turn over to the claimant money that it's holding *that belongs to him*," *$196,969*, 2013 WL 2507000, *2 (emphasis added), or that the government "got hold of money that *belongs to* the [claimant] and refuses to return it," *$574,840*, 2013 WL 2507635, at *3 (emphasis added). Claimants could not articulate such an interest here because, at the time they filed their claims, they did not have a legal interest in the defendant funds. *See* R. 10-12. Rather, claimants' allegations were that, given time, they *would be able* to allege an interest in the subject property. *See* R. 136. This hoped-for future interest is not the type of concrete, particularized injury sufficient to invoke the Court's jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *cf. Hollingsworth v. Perry*, 133 S.Ct. 2652 (June 26, 2013) (parties must have a "judicially cognizable interest of their own" to invoke courts' jurisdiction).

Moreover, as the undisputed facts now demonstrate, claimants' purported injury was even more tenuous than they first alleged, as claimants did not know anything about the defendant funds at the time the government filed this forfeiture action. Claimants did not know

12

who Muhammad Abdallah Abdan Al Ghamdi was, had never heard of Bridge Investment, S.L., and were unaware of the accounts maintained by R.J. O'Brien & Associates. S.F. ¶¶ 27-29.[4] Accordingly, the only alleged "injury" that claimants would have incurred as a result of the government's forfeiture action is that it would have reduced the amount of al-Qaeda assets available for them to discover and pursue. That is not a sufficiently concrete injury to confer standing.

In its memorandum, the government also noted that, at the time claimants sought to intervene in this litigation, their claimed interest in the defendant funds was too speculative to satisfy Article III's pleading requirements. To demonstrate that speculative nature, the government identified various possible outcomes of claimants' then on-going litigation against al-Qaeda which would have delayed, if not precluded their proposed recovery. *See* R. 136 at 20-21 (describing various outcomes). Claimants dismiss these arguments as "hypothetical scenarios" that should be ignored because they did not come to fruition. R. 141 at 23. This criticism misses the mark. In analyzing constitutional standing, a court is not permitted to look at the dispute a plaintiff was able to manufacture after the fact. Rather, questions of standing are assessed at the time of filing. Accordingly, the numerous unknowns that existed at the time claimants filed their claims are relevant to the analysis of whether they presented allegations of a particularized and imminent injury.

---

[4] In their reply, claimants argue that the fact that they did not know anything about the defendant funds should not diminish their claims because they had previously inquired about al-Qaeda assets maintained by the government without success. Claimants specifically assert that their earlier inquiries absolved them of the need to inquire again about the terrorist assets frozen by the government. R. 141 at 24. Despite claimants' assertion to the contrary, each Freedom of Information Act ("FOIA") request receives separate review. Whether or not an inquiry concerning the nature, source, and location of the assets blocked by the government in 2007 would have been fruitful is simply unknown. That is why the United States District Court for the Eastern District of Pennsylvania instructed that if claimants wanted to inquire about newly restrained terrorist assets, it was their obligation to serve a new FOIA request. *See Cozen O'Connor v. Treasury,* 2:05-cv-4332-TJS, 2008 WL 5093379, *2 (E.D. Pa. Dec. 2, 2008).

Finally, claimants argue that, perhaps, they need not actually establish constitutional standing because it is the government that has sought to invoke the Court's jurisdiction by initiating this litigation. *See* R. 141 at 19.[5] The Seventh Circuit entertained a variant of this argument in its recent *United States v. $196,969* decision, albeit without answering the question. *See $196,969*, 2013 WL 2507000, at *2. However, in addressing the issue, the court noted that the constitutional standing analysis differs in an asset forfeiture matter because of the fact that a claimant is not a defendant, but is, instead, effectively a plaintiff anew, hidden within the existing litigation. It is because of this "wrinkle" that a claimant must present a dispute in which it will be injured in order to invoke a forfeiture court's jurisdiction. *Id.*[6] Indeed, it is because of this unique characteristic that federal courts consistently require claimants to allege facts constituting a case or controversy requiring judicial resolution. *See, e.g., United States v. 5 S 351 Tuthill Road,* 233 F.3d 1017, 1022 (7th Cir. 2000) (analyzing whether claimant has Article III standing); *United States v. $103,387.27*, 863 F.2d 555, 561 n.10 (7th Cir. 1988) ("There are two different forms of standing in a forfeiture case such as this: Article III standing and statutory standing."); R. 136 at 15 n.15 (citing cases); *see also* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 10-3 (2013) (citing cases); *cf. Chicago v. FEMA*, 660 F.3d 980, 984 (7th Cir. 2011) (intervenor must have independent Article III standing irrespective of the district court's jurisdiction to adjudicate the original parties' suit). Thus, despite claimants' suggestion to the contrary, they were required to allege facts that would establish a controversy capable of this court's resolution. They failed to do so.

---

[5] In support of this argument, claimants cite *United States v. $557,993.89*, 287 F.3d 66 (2d Cir. 2002). *$557,993.89*, however, held differently, stating that a claimant is required to allege a "facially colorable interest" in the defendant *res* to establish standing. *Id.* at 79, n.10 (citation omitted).

[6] That is especially so in a case such as this where claimants have never contested, that absent TRIA, the defendant funds are forfeitable.

## IV. CLAIMANTS' SUPPOSED INTEREST IN THE DEFENDANT FUNDS WAS IMPROPERLY OBTAINED AND HAS LAPSED.

As set forth in the government's summary judgment memorandum, to the extent claimants predicate their claims to the defendant funds on the alleged lien obtained against those funds as a result of the enforcement action, those claims must fail because the manner in which claimants sought to obtain that lien was improper. Moreover, any lien that was temporarily obtained has expired. Claimants' efforts to pursue the defendant funds through an ancillary procedure violated the government's sovereign immunity. Again, looking to TRIA, claimants allege that the "notwithstanding" clause waived the government's sovereign immunity in connection with *any action* to enforce a judgment against a terrorist party. *See* R. 141 at 15. The statute states differently. To the extent that it provides a waiver of the government's sovereign immunity, it does so for blocked assets, which are specifically defined as assets seized by the government pursuant to TWEA and IEEPA. *See* 28 U.S.C. § 1610 Note, 116 Stat. at 2337. Claimants fail to cite any case in which TRIA's "notwithstanding" clause has been interpreted to allow a suit against the government for assets acquired and maintained under statutory provisions other than TWEA or IEEPA. *See* R. 141 at 15-16. In fact, TRIA's reach is simply not that broad. Claimants' enforcement action therefore violates the government's sovereign immunity.

Claimants' enforcement action also violated the abstention doctrines of prior exclusive jurisdiction and *in custodia legis*. Claimants dismiss these doctrines as "antiquated" and subservient to congressional efforts to provide relief to terrorist victims. R. 141 at 26. Although long-standing, the important jurisdictional principles the doctrines protect have not been diminished by time. To the contrary, they are axioms of restraint that have been consistently respected by the courts and remain good law. *See, e.g., United States v. $79,123.49*, 830 F.2d 94, 96 (7th Cir. 1987); 13F CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 3631, at 271–

72 (3d ed. 2012) (noting the "abundance of federal decisional law, including an impressive array of Supreme Court decisions" adhering to the doctrines).

Finally, claimants criticize the government for noting that the citation upon which they have predicated their claims in this action has lapsed and that any alleged lien against the defendant funds was extinguished with it. In particular, claimants argue that their citation proceeding lapsed because of government delay. R. 141 at 28. This allegation rings hollow. Nothing in the government's pursuit of its right to the defendant funds precluded claimants from seeking a second extension of their citation proceeding.[7] That proceeding lapsed because claimants forgot to seek its extension. That procedural error is claimants' failure and its effect is clear: any alleged interest in the defendant funds has been extinguished and, with it, whatever standing (constitutional, statutory and prudential) claimants may have had to challenge the government's forfeiture proceeding.

### *Conclusion*

For all of the foregoing reasons, the United States respectfully asks this Court to grant its Motion for Summary Judgment.

                                            Respectfully submitted,

| | |
|---|---|
| GARY S. SHAPIRO | JAIKUMAR RAMASWAMY |
| United States Attorney | Chief, Asset Forfeiture and Money Laundering Section |
| | |
| By: s/ Joel Hammerman / | s/ Jennifer Ambuehl / |
| JOEL HAMMERMAN | JENNIFER AMBUEHL |
| Assistant United States Attorney | Trial Attorney |
| 219 South Dearborn, Room 500 | Department of Justice, Criminal Division |
| Chicago, Illinois 60604 | Washington, D.C. 20530 |
| | 1400 New York Ave., NW, Suite 10100 |

---

[7] As the Court is aware, the government did not oppose claimants' initial request for an extension of its citation proceeding.