**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 4175** |
| | ) | |
| **ALL FUNDS ON DEPOSIT WITH R.J. O'BRIEN & ASSOCIATES, HELD IN THE NAME OF BRIDGE INVESTMENT, S.L., BEARING ACCOUNT NUMBERS XXX-X3931 AND XXX-X1784, MAINTAINED AT HARRIS BANK, ACCOUNT NUMBER XXX-171-6,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **ART INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12 C 1346** |
| | ) | |
| **AL QAEDA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The United States has filed an *in rem* action (Case No. 11 C 4175) seeking forfeiture of about $6.7 million held in futures trading accounts. The money, the parties agree, belongs to an affiliate of the Al Qaeda terrorist organization. Several insurance companies that paid billions of dollars on their insureds' property damage claims arising

from the September 11, 2001 terrorist attacks have filed verified claims to the funds and answers to the government's *in rem* complaint.

On March 27, 2012, the Court granted the government's motions to strike the insurance companies' claims and answers and denied a motion to intervene by thousands of personal injury claimants. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, No. 11 C 4175, 2012 WL 1032904, at *1 (N.D. Ill. Mar. 27, 2012) (*R.J. O'Brien I*). On September 25, 2012, the Court denied the government's motion to quash a writ of execution and a citation to discover assets issued in Case No. 12 C 1346 and granted claimants' motion to amend their claims in Case No. 11 C 4175. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038 (N.D. Ill. 2012) (*R.J. O'Brien II*). Finally, on December 10, 2012, the Court denied the government's motion under 28 U.S.C. § 1292(b) to certify for interlocutory appeal certain rulings the Court made in the September 25, 2012 order. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, Nos. 11 C 4175 & 12 C 1346, slip op. at 2–7 (N.D. Ill. Dec. 10, 2012) (*R.J. O'Brien III*).

Both the insurance company claimants and the United States have now moved for summary judgment. The government argues that the claimants lack standing to assert their claims to the funds and that their claims violate the government's sovereign immunity. The claimants contend that the Terrorism Risk Insurance Act of 2002 (TRIA), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note) authorizes their claim to the funds, in that it allows them priority over a government forfeiture action. For the reasons stated below, the Court denies the government's motion for summary judgment and grants the claimants' motion for summary judgment.

## Background

After the terrorist attacks of September 11, 2001, insurance companies paid out

billions of dollars in coverage to customers who suffered property and business losses

in the attacks and their aftermath. In September 2003, several of these companies filed

suit against Al Qaeda, seeking reimbursement for their losses. In September 2005, the

companies moved for default judgment on their claims, which were consolidated in the

District Court for the Southern District of New York as *In re Terrorist Attacks*, 03-MDL-

1570 (S.D.N.Y. Mar. 10, 2003). The companies received an order of default in April

2006, but the court did not issue an order specifying a damages amount until December

2011. That amount was $9,351,247,965.99, which included compensatory damages for

the companies over $2.5 billion. The court entered a final judgment in January 2012,

and the companies registered the judgment in this district in February 2012. The

registration-of-judgment matter was randomly assigned to Judge Gettleman. *See*

Registration of Judgment Pursuant to 28 U.S.C. § 1963, *Art Ins. Co. v. Al Qaeda*, No.

12 C 1346 (N.D. Ill. Feb. 27, 2012).

Elsewhere, in 2005, an individual named Mohammad Qasim al Ghamdi  took

control of a commodities futures trading account at R.J. O'Brien & Associates (RJO), a

Chicago company. The account had been opened two years earlier in the name of

Bridge Investment, S.L. By September 2005, the account contained about $26.7

million, but that amount fell to $6.7 million by May 2006. Although Al Ghamdi controlled

the account, the funds belonged to Muhammad Abdallah Abdan Al Ghamdi, a member

of Al Qaeda also known as Abu Al Tayyeb. As the parties now agree, Al Qaeda had a

beneficial interest in these funds. Bridge Investments opened a second account at RJO in November 2006.

In June 2006, shortly after the funds had dwindled to the $6.7 million mark, Saudi Arabian authorities arrested Al Tayyeb. It is undisputed that he was considering terrorist attacks against the Saudi and American targets. In June 2007, the United States Department of the Treasury's Office of Foreign Assets Control (OFAC) blocked the two RJO accounts in question. OFAC's authority derived from Executive Order 13224 of September 23, 2011, 31 C.F.R. 594 (the Global Terrorism Sanctions Regulations), and 50 U.S.C. § 1701, also known as the International Emergency Economic Powers Act (IEEPA). Four years later, on June 19, 2011, the United States filed a verified complaint in this Court for forfeiture of the funds, an action *in rem* under 18 U.S.C. § 981(a)(1)(G)(i) and (iv), the civil forfeiture statute.

On June 21, 2011, the Chicago Tribune published an article about the government's decision to block the RJO/Al Ghamdi accounts. The article served as the first notice about the funds for the insurance companies that had obtained the order of default against Al Qaeda in the Southern District of New York. In August 2011, the insurance companies filed verified claims to the RJO/Al Ghamdi funds in the government's forfeiture action. In December, the government moved to strike the claims and answers of the insurance company claimants, and the claimants moved to amend them. At the same time, several thousand individuals asserting personal injury and wrongful death claims arising from the September 11, 2001 attacks moved to intervene in the case.

This Court's order of March 27, 2012 granted the government's motions to strike and denied the personal injury claimants' motion to intervene. The Court did not decide whether the insurance company claimants had constitutional standing, but it granted the government's motion to strike and denied the insurance claimants' motion to amend their claims because they lacked statutory and prudential standing. *R.J. O'Brien I*, 2012 WL 1032904, at *3–7. Because these claimants were unsecured creditors, the Court concluded that they did not qualify as "innocent owners" under 18 U.S.C. § 983(d). As a result, they were outside the zone of interests that the civil forfeiture statute protects and thus could not establish prudential standing. *Id.* at *5–6. The Court then evaluated the claimants' statutory standing. It cited their status as general unsecured creditors who lacked an interest in the specific funds at issue, preventing them from properly stating such an interest under the civil forfeiture rules, specifically Fed. R. Civ. P., Supp. R. G(5)(a)(i)(B). *Id.* at *6–7. For the same reason, the Court decided that the personal injury claimants could not meet the requirements of the forfeiture statute. *Id.* at *6. Finally, the Court denied the insurance claimants' request to amend their claims on the ground that they lacked statutory and prudential standing. The Court noted in particular that the claimants had not served citations to discover assets, which would have created a lien on, and established an interest in, the disputed funds. *Id.* at *8; *see also* 735 ILCS 5/2–1402(a), (m). The Court denied the personal injury claimants' motion to intervene for similar reasons. *Id.* at *7.

As indicated earlier, the claimants registered their judgment in this district on February 27, 2012, and the matter was assigned to Judge Gettleman. They filed a praecipe for a writ of execution in that matter on March 13, 2012 and filed a notice of

citation to discover assets on April 6.  Four days later, Judge Gettleman ordered issuance of a writ of execution.  On April 12, 2012, during a status hearing in the civil forfeiture case, the parties made a joint oral motion seeking a finding that the forfeiture and judgment enforcement matters were related cases under the relevant Local Rule and transfer of the enforcement matter to the undersigned judge.  The Court orally granted the motion and followed that up with a written request to the Executive Committee to transfer the case.  The judgment enforcement matter was reassigned on April 13, 2012.  Since that time, the proceedings in the two cases have been almost entirely intertwined.

In September 2012, five months after the claimants had obtained their writ of execution, this Court denied the government's motion to quash the writ and granted the claimants' motion to amend their claims to reflect the entry of final judgment in the New York litigation.  *R.J. O'Brien II*, 892 F. Supp. 2d at 1041.  The Court found that the language of § 201(a) of the TRIA authorized any claimed intrusion upon sovereign immunity resulting from the claimants' entry into the case.  *Id.* at 1043–45.  That statute's language similarly overrode the doctrines of prior exclusive jurisdiction and *in custodia legis*, the Court found; those doctrines also did not apply because the insurance companies' enforcement proceeding had been transferred to this Court.  *Id.* at 1045–46.

The Court also rejected the government's challenges to the claimants' standing to assert their motion to amend on constitutional, statutory, and prudential grounds. The claimants had Article III standing at the time they filed their claims, the Court held, because they had already acquired a default order against Al Qaeda and would have

lost the ability to execute on the funds had the government been able to forfeit them. *Id.* at 1047–50. Further, the claimants had statutory standing to assert their interest in the funds, because the TRIA supersedes the requirements of the civil forfeiture statute. *Id.* at 1050–52. Finally, the Court concluded that the claimants had prudential standing because their specific interest in the defendant property gave them statutory standing, and because they were at the least within the zone of interests protected by the TRIA, if not the civil forfeiture statute itself. *Id.* at 1052–53.

The government moved pursuant to 28 U.S.C. § 1292(b) to certify for interlocutory appeal certain rulings made in the Court's September 2012 order denying the government's motion to quash. The Court denied that motion, concluding that the request for certification did not fulfill the criteria outlined in *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). *See R.J. O'Brien III*, slip op. at 2–7. The Court held that the government's proposed appeal could not satisfy the standard for interlocutory appeal in section 1292(b)—in particular that such an appeal would not speed up the ultimate resolution of the litigation or present contestable questions of law. *Id.* The Court noted that the government itself had contributed to delays to that point in time, having waited nine weeks after the Court's September order to file its motion to certify its interlocutory appeal. *Id.* at 6–7.

## Discussion

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005) (internal quotation marks omitted).

On cross motions for summary judgment, the court assesses whether each movant has satisfied the requirements of Rule 56.  *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

The parties dispute few facts relevant to the resolution of these motions.  They agree that the defendant funds belonged to Al Tayyeb, and existed for the benefit of Al Qaeda.[1]  Both sides argue that these undisputed facts entitle them to summary judgment.  The government's arguments are otherwise largely focused on its contention that claimants lack standing, which it also presents as a matter of undisputed fact.  The Court's order of Sept. 25, 2012, addressed most of the arguments.  For the most part, the government's briefs simply reiterate arguments the Court has already rejected.  To the extent the parties raise arguments not made in earlier motions, the court addresses them below.  The Court will not repeat in their entirety its rulings on issues it has already decided, but rather adopts the prior rulings.

## 1.    Constitutional standing

The government contends that the claimants did not have a sufficient interest in the defendant funds as of the date on which they asserted their claims and therefore lack constitutional standing to assert claims against the funds.  The claimants argue in response that their interest in, and lien against, the defendant funds is sufficient to establish constitutional standing and that the TRIA permits them to attach the funds to satisfy their judgment against Al Qaeda.  A party can successfully allege Article III

---

[1] The parties do dispute whether the government had prior knowledge of the claimants' potential interest in the disputed assets and whether the claimants provided notice to the government of their enforcement action.  But neither party makes much if any of an argument that these disputes are material to the Court's consideration of the parties' cross-motions for summary judgment.  The parties also argue over whether the claimants' alleged interest in the funds exists, but that dispute is tied up in the questions of law discussed below.

standing at the summary judgment stage if it does not "rest on . . . mere allegations," but instead "set[s] forth by affidavit or other evidence specific facts, Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). Claimants have satisfied this standard.

In its order of September 25, 2012, the Court determined that the claimants in this action had constitutional standing in this matter at the time they filed their claims. The Court relied on the Seventh Circuit's decision in *United States v. 5 S 351 Tuthill Rd.*, 233 F.3d 1017 (7th Cir. 2000), a forfeiture case in which the court noted that a claimant need allege only injury, causation, and redressability to fulfill the standing requirements of Article III. *R.J. O'Brien II*, 892 F. Supp. 2d at 1049–50. In *5 S 351 Tuthill*, the claimant met this "undemanding" standard when he stated that he would lose the opportunity to receive proceeds from the sale of land in which he had an interest but no ownership or control. *5 S 351 Tuthill*, 233 F.3d at 1021–22. This was "more than enough to give him an actual stake in the outcome of the suit, and to make his dispute with the government a genuine 'case or controversy' justifying our exercise of judicial review." *Id.* at 1022.

Applying *5 S 351 Tuthill*, the Court observed that the claimants had already obtained their default order against Al Qaeda at the time they filed their initial claims and answers, and "would have lost the ability to execute on the funds" if the government forfeited them. *R.J. O'Brien II*, 892 F. Supp. 2d at 1049–50. Forfeiture would injure the claimants concretely; it would eliminate their ability to execute on the funds. The court's

decision could redress this injury.  Such a "lost ability to satisfy the default the claimants had already obtained" satisfied the standing requirements of Article III.  *Id.* at 1050.

This year, the Seventh Circuit provided clarification on the question of standing at the pleading stage of forfeiture cases.  "[T]he requirement of pleading Article III standing . . . in a case such as this requires no more than alleging that the government should be ordered to turn over to the claimant money that it's holding that belongs to him."  *United States v. $196,969.00 [in] United States Currency*, 719 F.3d 644, 646 (7th Cir. 2013).  Further, the court stated that it "is constitutional law 101" that in forfeiture cases, "[a]ll that must be alleged is an injury, personal to the person seeking judicial relief, that the court can redress, an injury such as the injury inflicted by the government when it has got hold of money that belongs to the person and refuses to return it."  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013).  While these cases may not be precisely on point here—in this case, the claimants are seeking money belonging to a party that injured them, and not their own property back from the government—they are still instructive on the requirements of constitutional standing in forfeiture matters.  The court warned against requiring claimants to actually prove, and not just allege, their stake in the funds.  "Imagine what it would do to federal litigation to require every plaintiff (or claimant in a forfeiture suit, who is like a plaintiff) not only to allege, but to prove, facts establishing the district court's constitutional authority to decide his case.  That is not required."  *$196,969.00*, 719 F.3d at 646 (citing *Lujan*, 504 U.S. at 561–62).

The government cites these Seventh Circuit cases to support its argument that the claimants did not have Article III standing when they filed their claims, thus defeating

their motion for summary judgment and supporting the government's entitlement to summary judgment on this basis. The cases, the government argues, show that the requirements for a claimant to establish constitutional standing in a civil forfeiture action "are not non-existent." Gov't's Surrepl. at 2. Because the Seventh Circuit indicated that claimants must "allege a property interest in the subject funds," the government argues, the claimants lack standing, because "they did not have a legal interest in the defendant funds" at the time of filing. *Id.* at 12.

Yet these new cases do not disturb the Court's prior holding that the claimants possessed constitutional standing when they filed their claims. The government seizes upon the Seventh Circuit's language in that it refers to "money that *belongs to* the person" when discussing standing in forfeiture cases. *See $574,840*, 719 F.3d at 651. The government contends that any change in the status of the claimants' money judgment against Al Qaeda (from pending to final) after the government initiated its forfeiture action here is irrelevant, as the claimants were required to possess standing at the outset of their entry into this case. The Court agrees that this change in status was irrelevant to the claimants' Article III standing at the outset of the case, but not in a way that favors the government's position. As the Court has held previously, and now reaffirms, the claimants possessed Article III standing even before their judgment in New York became final. The default order they had received when the government initiated this action was not yet a final judgment, but it was concrete enough, as "[o]nly the extent of their damages was uncertain." *R.J. O'Brien II*, 892 F. Supp. 2d at 1049. "Forfeiture would have injured the claimants in a sufficiently concrete and particular manner, because they would not have been able to execute on the funds. The

government's action threatened to cause this injury, and the Court could have redressed the injury." *Id.* at 1050.

In sum, the Court reaffirms its holding that the claimants had standing under Article III to bring their claims at the time they brought them.

## 2.    Statutory standing

The government maintains that the claimants lack statutory standing for three reasons:  they did not qualify as owners when they filed their claims, their lien has expired, and their claims violate the doctrines of prior exclusive jurisdiction and *in custodia legis*.  The claimants argue that they complied with procedural rules governing their claims and that the TRIA allows them to proceed with their claims notwithstanding the requirements of other laws.

The TRIA provides:

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Terrorism Risk Insurance Act of 2002 § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note).  Under Rule G(5)(a)(i) of the Supplemental Federal Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions, those filing claims to contest a forfeiture proceeding must "identify the claimant and state the claimant's interest in the property," among other requirements.  The civil forfeiture statute similarly requires that such claims shall "state the claimant's interest in such property."  18 U.S.C. § 983(a)(2)(C)(ii).

### a.    Interaction of the TRIA, the civil forfeiture statute, and Rule G

In its September 2012 order, the Court held that the claimants have statutory standing to assert claims in this case. The language of the TRIA was critical to the decision, as its "notwithstanding" clause operates to supersede conflicting provisions of law. Although the government had cited to district court cases holding otherwise, the Court did not find them persuasive, concluding "that the TRIA's notwithstanding provision . . . overcomes any barriers that the civil forfeiture statute imposes on claimants' efforts to amend now that they have established an interest in the defendant funds." *R.J. O'Brien II*, 892 F. Supp. 2d at 1051. The question was one of the claimants' pleadings. Both Rule G and the forfeiture statute discuss only what a party must include in its claim. They do not establish substantive or evidentiary requirements.

Despite this holding and this case's progress beyond the pleading stage to summary judgment, the government continues to argue that the TRIA does not override the pleading requirements of Rule G and the civil forfeiture statute, citing such cases as *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016 (7th Cir. 1995). This Court has already ruled that the statute at issue in *Citizens Electric*, the Comprehensive Environmental Response, Compensation, and Liability Act, is distinguishable from the TRIA, which by its terms supersedes the requirements of other statutes. *See R.J. O'Brien III*, slip op. at 4. Furthermore, the court in *Citizens Electric* held that a "notwithstanding" clause must be read in context to determine its scope. *Citizens Elec. Corp.*, 68 F.3d at 1019. In its prior order, the Court determined that the context of the TRIA made clear that Congress intended the statute to "provide a comprehensive way for victims of terrorism to enforce their judgments and eliminate

efforts by the executive branch to hinder execution by judgment holders." *R.J. O'Brien II*, 892 F. Supp. 2d at 1044. The Court reasoned that because the TRIA specifically allows judgment creditors such as the claimants here to execute on blocked assets, the statute would be "effectively meaningless" if other laws and doctrines were permitted to override it. *Id.*

The government also continues to rely on *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191 (D.D.C. 2011), which this Court previously distinguished based on Seventh Circuit authority and a differing interpretation of the TRIA's "notwithstanding any other provision of law" clause. *R.J. O'Brien II*, 892 F. Supp. 2d at 1051. The Court need not rehash its discussion of that case.

The government also cites to a recent Fifth Circuit decision to argue that "the defendant funds in this case were removed from TRIA's ambit when they were arrested by the Court pursuant to an OFAC license." Gov't's Surrepl. at 4 (citing *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677 (5th Cir. 2013)). This argument is based on a provision of the TRIA that excepts property subject to a government-issued license for final payment. *See* 28 U.S.C. § 1610 Note (d)(2)(B). The Court acknowledges that it previously cited favorably to the decision in *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-0240-P, 2011 WL 3703333 (N.D. Tex. Aug. 19, 2011), which the Fifth Circuit overruled.

The Court respectfully disagrees with the Fifth Circuit's ruling. That court decided that the TRIA cannot supersede the forfeiture statute—the criminal forfeiture statute was at issue in *Holy Land*—because to decide otherwise "assumes that the 'notwithstanding' clause trumps any other law that has the incidental effect of removing funds from the

reach of judgment creditors." *Holy Land*, 722 F.3d at 688. But as this Court held previously, that is exactly the intended effect of the TRIA, and to read the statute otherwise would effectively prevent it from having any real effect. As stated earlier, this Court noted that "Congress's purpose in adopting the TRIA was to provide a comprehensive way for victims of terrorism to enforce their judgments and eliminate efforts by the executive branch to hinder execution by judgment holders." *R.J. O'Brien II*, 892 F. Supp. 2d at 1044 (citing *Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 271–72 & n.7 (2d Cir. 2003)).

**b.     Extension of citation proceedings and validity of lien**

In addition to the arguments on the TRIA just discussed, the government alleges that the claimants lack statutory standing because their lien on the defendant funds has expired. Though it does not directly say so, the government contends that the operation of Illinois Supreme Court Rule 277(f) caused the claimants' lien of to expire in April 2013. (The Court had granted a motion to extend the citation proceedings on October 18, 2012.) "Any lien that may have been created by the plaintiffs' enforcement action was predicated on the now expired citation proceeding and is therefore no longer valid." Gov't's Mem. at 32. The claimants contend that their lien was perfected on the day their citation to discover assets was served. They further argue that they filed their initial motion for summary judgment before the expiration of the extension of the lien they requested in October 2012 and voluntarily terminated that motion to allow the government more time to meet deadlines.

Federal Rule of Civil Procedure 69(a) governs the enforcement of writs of execution on money judgments, and provides that the procedure for such execution

"must accord with the procedure of the state where the court is located." In Illinois, Supreme Court Rule 277 governs citation proceedings, and section (f) of the rule states as follows:

> A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.

It is true that, as the government observes, a lien created as the result of a citation proceeding "is valid only for six months after the citation respondents' first personal appearance." *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997). The statute, however, allows extensions. *See Windcrest Dev. Co. v. Giakoumis*, 359 Ill. App. 3d 597, 602, 834 N.E.2d 610, 614 (2005). "Even a cursory reading of Supreme Court Rule 277(f) reveals that the supplementary proceeding does not, in every case, automatically terminate after the six months [sic] time limit has elapsed," because of the rule's provision permitting trial courts to "grant extensions . . . as justice may require." *Kirchheimer Bros. Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 363, 426 N.E.2d 1110, 1115 (1981).

The Seventh Circuit extensively addressed Rule 277(f) in *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189 (7th Cir. 2008). There, a party argued that the district court's allowance of more than six months' time to elapse between the respondent's first appearance and its ruling in the case meant that the district court lost its jurisdiction to hear the case. *Id.* at 193. Rejecting the party's argument, the Seventh

Circuit observed that "[c]ourts have adopted a flexible approach to the rule" and that "[w]e have not found examples of cases where a reviewing court found that a lower court's ruling was invalid as a result of Rule 277(f)'s operation." *Id.* at 194–95. "Since the rule does not affect the federal court's jurisdiction, its benefits could be forfeited or waived." *Id.* at 194. Implying that the complaining party's "active participation in the district court proceedings long after the asserted 'expiration date'" defeated its argument, the court held that the party had not suffered prejudice, and that the lower court had the power to grant extensions "as justice may require" regardless of whether any party had sought an extension. *Id.* "MAT Leasing is simply incorrect to say that the 'plain language' of Rule 277(f) requires the plaintiffs to seek an extension, and its attempt to graft such a requirement onto the rule is without merit." *Id.* at 195.

As an initial matter, the government urges an inaccurate reading of Rule 277(f) in light of the Court's prior order granting the claimants' motion to extend the citation proceedings. The rule does not say that *extensions* of citation proceedings automatically expire after six months. While the default course of action is for citation proceedings to expire six months after a respondent's appearance, the rule provides its own exception to that default—that a "court may, however, grant extensions beyond the 6 months, as justice may require." The rule therefore allows courts to place a stop on the six-month clock for such extensions. It is true that, in this case, the claimants asked the court to extend the proceedings until April 2013. But the rule does not deal with automatic expiration of such motions, and the court's order on that motion did not specify a time for the extension to expire. Nor did it need to, as the overall proceedings

in the case, including motions and briefing by both parties, have continued to this point,

well after April 2013.

Second, in light of the Seventh Circuit's ruling in *Laborers' Pension Fund*, it is

clear that the Court may grant an extension at any other time, regardless of whether any

party has requested such an extension.  Indeed, the rule does not require that parties

request extensions; it simply allows the court to extend the proceedings "as justice may

require."  The Court has already recognized that the government has contributed to the

delay in the resolution of this litigation.  *R.J. O'Brien III*, slip op. at 2–7 ("[T]he long and

the short of it is that the government waited over nine weeks from the Court's decision

before filing its 1292(b) motion. . . . [T]he delay was an inordinate one by a litigant that

now contends that an interlocutory appeal will speed up the litigation.").

Given the ongoing nature of these proceedings, and the government's

contribution to the time they have taken to resolve, the Court's decision to extend the

citation proceedings remains in effect.

### c.    Prior exclusive jurisdiction and *in custodia legis*

Finally, though they are not obviously part of a statutory standing argument, the

government contends again that the citation proceedings in this case violate the

abstention doctrines of prior exclusive jurisdiction and *in custodia legis*.  These similar

doctrines hold that "the first court to obtain in rem jurisdiction has exclusive jurisdiction

of the res."  *United States v. Howell*, 354 F.3d 693, 695 (7th Cir. 2004).  The

government argues that the "claimants' efforts to obtain a lien were *ultra vires*," Gov't

Mem. at 29, because the claimants asked another judge of this district to issue a writ of

execution and citation to discover assets against the funds in this case when the government had already initiated this action in this Court.

The Court has previously held that the "notwithstanding" provision of the TRIA superseded the operation of these doctrines. *R.J. O'Brien II*, 892 F. Supp. 2d at 1045–46. The Court cited authority from the Supreme Court that "notwithstanding" clauses are generally interpreted to "supersede all other laws," and that "[a] clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (internal quotation marks omitted). The government has not offered new arguments to the contrary. The government also argues that, because the claimants sought a writ of execution and citation to discover assets from Judge Gettleman, they violated "this Court's exclusive prior *in rem* jurisdiction over the defendant funds." Gov't Mem. at 30. The government contends that what they characterize as an attempt to "utiliz[e] a court's jurisdiction to act upon property that is already in the custody of another court" violated both prior exclusive jurisdiction and *in custodia legis. Id.* at 31. The Court reiterates its observation that this district is all one court, and in any event, the claimants' enforcement action is now before the undersigned judge, not Judge Gettleman, having been transferred because of its interrelationship with the government's forfeiture action. Furthermore, as the court has previously noted, it would have acted just as Judge Gettleman did vis-à-vis the judgment enforcement matter. In any event, the government does not point to any cases in which the doctrines it cites were considered to prevent a judge from ruling in a case after the case was transferred from another judge of the same district court. The Court affirms its holding that the claimants have statutory standing to assert their claims against the defendant funds.

### 3.      Prudential standing

The government continues to argue that the claimants in this case lack prudential

standing to proceed with their claims because "they cannot establish that they qualify as

'owners' of the defendant funds."  Gov't's Mem. at 34.  The claimants argue that

because the government cannot prove the funds are subject to forfeiture in the first

place, it does not matter the claimants are not "innocent owners" under the forfeiture

statute.  They further observe that this Court already held that the claimants are within

the zone of interests that the TRIA protects, and thus have prudential standing under

that law.

Under 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not

be forfeited under any civil forfeiture statute."  The statute defines an "owner" as one

who "an ownership interest in the specific property sought to be forfeited," but not one

who has "only a general unsecured interest in, or claim against, the property," or "who

exercises no dominion or control over the property."  *Id.* § 983(d)(6)(A)–(B).  The

government cites one out-of-circuit case, and one district court case, as authority for the

notion that a claimant's status as an "innocent owner" determines whether the claimant

has prudential standing.  *See United States v. $500,000 in U.S. Currency*, 591 F.3d

402, 404 (5th Cir. 2009); *United States v. $746,198*, 299 F. Supp. 2d 923, 932–33 (S.D.

Iowa 2004)).

In its September 2012 order, the Court noted several ways in which the claimants

possess prudential standing to bring their claims.  It observed that the Seventh Circuit

has labeled the zone of under protection of the forfeiture statute to be "rather

expansive."  *R.J. O'Brien II*, 892 F. Supp. 2d at 1052 (citing *5 S 351 Tuthill Rd.*,

233 F.3d at 1023). It further noted that other circuits—though not all—have treated the "innocent owner" question as one of the elements of an innocent owner's claim on the merits, and not a standing question. *Id.* (citing *United States v. One 1990 Beechcraft,* 619 F.3d 1275, 1277 n. 3 (11th Cir.2010) (statutory definition of ownership does not affect standing but instead is an element of merits); *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1014 (8th Cir. 2003) (observing that "many cases refer" to a claimant's status as an innocent owner "as part of the 'standing' inquiry, it is in fact an element of the innocent owner's claim on the merits")); *but see $500,000*, 591 F.3d at 404.

Noting the split in circuit authority and citing *5 S 351 Tuthill Rd.*, the Court ruled in its September order that "a claimant who has statutory standing because it possesses a specific interest in the defendant property" also has prudential standing, even if the claimant does not meet the definition of "innocent owner" in the forfeiture statute. *O'Brien II*, 892 F. Supp. 2d at 1052. Furthermore, even if the claimants are not within the "zone of interests" under § 983, they are undoubtedly within the zone of interests of the TRIA, providing them with statutory standing. That law's terms, including its "notwithstanding" provision, permits the claims the insurance companies allege here. *Id.* The government has not advanced new arguments calling these holdings into question, and the Court affirms them.

### 4.  Sovereign Immunity

The claimants argue that the language of the TRIA "plainly waives" any claim to sovereign immunity on the government's part, authorizing claimants, "notwithstanding any other provision of law" to execute against assets like those at issue here. Cls.'

Repl. at 15. The government maintains that sovereign immunity "precludes a party from obtaining a writ of execution against or attachment to any asset possessed by the United States or its agencies." Gov't's Mem. at 45. It contends that any waiver of such immunity must be specific in the text of the statute in question.

As before, the Court disagrees. The Supreme Court has "never required that Congress use magic words" to effect a waiver of sovereign immunity within a statute; "Congress need not state its intent in any particular way." *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012). To be sure, the TRIA does not contain the phrase, "Sovereign immunity is hereby waived." Yet labored interpretation is not required to discern its unequivocal waiver. As the Court noted in its September 2012 order, the TRIA specifically permits claimants to execute against blocked assets. The law defines those blocked assets as "any asset seized or frozen by the United States" under two different statutory regimes. Terrorism Risk Insurance Act of 2002 § 201(d)(2)(A). It does not allow execution against assets seized by any other entity. And, as noted above, such execution is permitted "[n]otwithstanding any other provision of law." Considering these provisions, as the Court noted previously, "if the statute does not waive the government's sovereign immunity, it is effectively meaningless in this regard." *R.J. O'Brien II*, 892 F. Supp. 2d at 1044. The Court sees no basis to disturb that holding now.

**5.    Claimants' execution of judgment against the defendant funds**

It remains for the Court to decide whether the insurance companies are entitled to summary judgment on their claim to execute on the disputed funds under the TRIA. In this case, it is undisputed that the claimants have "obtained a judgment against a

terrorist party on a claim based upon an act of terrorism"—in this case, against Al

Qaeda for damages resulting from the attacks of September 11, 2001.  As the Court

noted in its September 2012 order, it is undisputed that the assets in question are

"blocked," a status that is essential for a TRIA claim to go forward; the government

labeled the assets as such in its complaint.

The government argues that the claimants are not entitled to summary judgment

on their enforcement action in this case, as they "attempt[ed] to use the enforcement

action to improperly bypass the statutory criteria established for filing a claim to assets

subject to a pending civil forfeiture proceeding."  Gov't's Mem. at 38.  The Court has

already addressed this argument.  As the Court observed in its prior order, the

claimants in this case did initiate a separate action to register their judgment against Al

Qaeda, after which they filed a citation to discover the assets at issue here.  Yet the

claimants also sought to participate in the government's forfeiture action, not bypass it;

they filed claims and answers, which the Court struck, and  then filed new claims and

answers after serving their citation.  The government argues that the "TRIA does not

provide claimants a mechanism to bypass forfeiture's fundamental requirements."

Gov't's Surrepl. at 3.  The Court has already addressed the argument, concluding that

the TRIA allows claimants to assert their interest in the disputed funds notwithstanding

any other provision of law.

In light of this discussion, the RJO/Al Ghamdi funds in question are "subject to

execution or attachment in aid of execution in order to satisfy such judgment to the

extent of any compensatory damages for which such terrorist party has been adjudged

liable."   Terrorism Risk Insurance Act of 2002 § 201(a), 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note).

## Conclusion

For the foregoing reasons, the Court grants the claimant insurance companies' motions for summary judgment [docket no. 127 in Case No. 11 C 4175; docket no. 55 in Case No. 12 C 1346] and denies the government's motion for summary judgment [docket no. 134 in Case No. 11 C 4175].  The Clerk is directed to terminate both cases. Claimants are directed to provide a proposed form of judgment for each case by no later than October 31, 2013, after first providing a draft to the government's counsel.  The Court notes, in this regard, that it is setting a longer-than-usual deadline due to the current government shutdown (though the government's attorney, who is generally assigned to the criminal side of the United States Attorney's Office, appears to still be on the job).  The Court also notes in that regard that because no judgment or final order has yet been entered, the time to appeal has not yet begun to run.  The case is set for a status hearing on November 5, 2013 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 9, 2013